**NO. 21-10038**

---

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

**JOHN YODER,**

Appellant

V.

**UNITED STATES OF AMERICA,**

Appellee

---

On appeal for the United States District Court for the District of Nevada
(District Court Case No. 2:13-cr-00368-JAD-VCF)

The Honorable Judge Jennifer A. Dorsey,
United States District Judge

---

# EXCERPTS OF RECORD
Volume 1 of 1

---

CHRISTOPHER R. ORAM, ESQ.
Nevada State Bar No. 4349
520 South Fourth Street, Second Floor
Las Vegas, Nevada 89101
(702) 384-5563
Attorney for Appellant
JOHN YODER

# INDEX


**Page**

Post Sentence Response to Government's Response to Defendant's Memorandum to Aid in Sentencing, Docket No. 210 (filed January 29, 2021) ..........3

Judgment in a Criminal Case, Docket No. 207 (filed January 22, 2021) ..........12

Reporter's Transcript of Proceedings Sentencing and Disposition January 11, 2021, Docket No. 226 (filed June 02, 2021) ..........24

Government's Response to Defendant's Sentencing Memorandum, Docket No. 203 (filed January 09, 2021) ..........69

Defendant's Memorandum in Aid of Sentencing, Docket No. 202 (filed January 08, 2021) ..........80

Binding Plea Agreement Under Fed. R. Crim. P. 11(c)(1)(A) and (C), Docket No. 173 (filed October 28, 2019) ..........111

Reporter's Transcripts of Proceedings Change of Plea, October 28, 2019 Docket No. 225 (filed June 02, 2021) ..........135

Superseding Criminal Indictment, Docket No. 14 (filed February 11, 2015) ..........173

Amended Notice of Appeal, Docket No. 214 (filed February 04, 2021) ..........187

Notice of Appeal, Docket No. 211 (filed February 03, 2021) ..........193

Criminal Docket Sheet ..........196

JOHN DAVID YODER
Defendant, Attorney pro se
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, Nevada 89060-3427
Federal Number 53352048

FILED — ENTERED — RECEIVED — SERVED ON
COUNSEL/PARTIES OF RECORD
JAN 29 2021
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, Plaintiff, vs. John David Yoder, Defendant. | Case No.: 2:13-cr-00368-JAD-VCF<br>POST SENTENCING RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM TO AID IN SENTENCING<br>(Ambiguity Elimination)<br>in forma pauperis |

NOW COMES HUMBLY before this honourable Court, solely to document and preserve objectively known perspective of the defendant, John David Yoder ("Yoder"), as reflected in his binding Plea Agreement, Points and And Authorities available from Dolan Law Offices, APC that are now herewith made line-by-line in "translation" of the Government's often misleading account to the

Case 2:21-cr-00368-2/A/13/2021 ... Filed 01/28/21 Page 4 of 9

Court. Yoder does not present this/his present Response in any way to thwart or challenge his sentence or modify his plea or vacate measures imposed. In the interests of documenting an accurate, truthful, impartial, more dispassionate (factual) account alone Yoder herewith beseeches the Court record relevant facts and not record an exclusively drawn account of hearsay and uncorroborated evidence.

To this end alone, the record would show a better truth to the Government's Response Page 2, lines 1-11:

"Defendant John David Yoder, a hebephile who sought like-minded people through the website "boylover.org," found solace and cultivated an online longdistance friendship with Philip Neri. Mr. Neri, Known to Yoder as a felon convicted of a Count of "Child Endangerment" visited Yoder's California home. While visiting, Mr. Neri invited Mr. Yoder's entire household to a later co-defendant's beach house villa of Mr. Thompson. Mr. Yoder claims Thompson, a year later, came to Desert Hot Springs, CA, where he persuaded him to rent out an apartment Thompson paid for and had Yoder register a car for him. Several months later, Mr. Thompson brought his "client" Mr. Monsivais (a co-defendant), and Mr. Harper (a co-defendant) to Desert Hot Springs, CA."

Court testimony well establishes there was sexual activity between Yoder's co-defendants and minors at the rented apartment as well as indecent photography. Court testimony also reflects that Yoder was never present nor does, any ~~testimony~~ evidence reflect that Yoder ever 'lured' or 'recruited' -- all victims refute having given any statements under **sworn oath** to Officer Matthew Remmers who "appears" to have perjured himself and presented 5 exact word cut-and-paste dialogues from the 5 refuting victims of differing cultural background. There is absolutely ZERO evidence Yoder ever received, shared, or distributed, let alone produced, any child pornography. None was found at all during the "Yoder" search warrant. The allegation by victim "D.A." (unfounded) that Yoder had recorded E.S. masturbating witnessed by son Cody Yoder and ward Anthony Ruiz was denied under oath by Officer Matthew Remmers who interviewed these supposed (proposed) witnesses. No video exist.
The alleged counts of lewd and lascivious conduct with Yoder's guardianship son, said to have been limited strictly to two (2) times only in February of 2014 -- but never before starting with his care in early 2013 and into 2015 -- were at age **12** with an impulse control disorder, verbal, child receiving in-home behavioural coach 4 hour therapy three times a week, therapy at Childhelp (his full-time private school for the Sexually Abused), a Therapist, a Psychiatrist, social workers visiting him at home and at school, had graduated from Christopher's

Clubhouse (a Predator Prevention and Awareness Program Yoder had enrolled him in), and an ad litem attorney visiting him at home. As a result of the egregious crimes, Yoder, by way of a theory of implied agreement, and irrevokeable failure to report his co-conspirators the moment he found out what they were doing -- being a twice mandated reporter should be sentenced to twenty years' incarceration, followed by supervision.

Furthermore, the Government's Response would be more accurately recorded:

"Shortly after returning from a Summer abroad in Italy with his adopted sons in August 2012, Mr. Neri visited the Yoder home. Mr. Neri extended his own invitation to visit Mr. Thompson in Dana Point, CA to include Mr. Yoder's household. Mr. Yoder had met Mr. Neri in 2011 on Boylover.org, but did not know Mr. Thompson. Neither Mr. Thompson nor other co-defendants were members. Mr. Neri and Mr. Thompson were business partners. A year later, in September 2013, Yoder claims, Mr. Thompson arrived in Desert Hot Springs, CA where he (Thompson) had Yoder lease an apartment for him that Thompson himself paid for in cash or PayPal reimbursement. He later had Yoder register a car for him that Thompson bought. Yoder claims he was unaware of Thompson's State charges or Federal Indictment (dated one day before the lease was signed). Mr. Monsivais' claim that Yoder cut off Mr. Thompson's ankle bracelet is uncorroborated. Mr. Yoder claims

Thompson persuaded him to lease the apartment and register a car in Yoder's own name so as to hide from Thompson's estranged wife. Thompson went under the alias of "Jason Brock" (even though he was known as William Thompson to several of the model victims' parents when he visited in 2012 and signed contracts doing legal business with his wife Melanie Thompson by Company "Storybook Studios of Las Vegas, Nevada") (Some later knew he was a fugitive)."

Pg 2, Line 20: Thompson recruited boys at the local skate park, but no boys testified that Yoder had approached anyone attempting to recruit them or provide gifts or incentives. Yoder did introduce "Jason" to "D.A." but did not introduce him other than to say hello, and used out-of-context "he doesn't bite." Yoder did not provide or buy a vehicle for Thompson; at Thompson's demand he registered one.

Pg. 3, Line 7: Thompson reimbursed Yoder for the rented apartment.

Pg. 3 Line 8: Yoder denies this and objects. Hearsay. Grounds the alleged victim was not-cross examined and the individual testifying this was found caught lying (often crying caught lying and excused to rehabilitate/re-compose before continuing; his very testimony was refuted by Yoder's own arresting officers who said his testimony kept changing or never was before told / contradictory ("D.A.") - (on file with Dolan Law Offices, APC)).

Pg. 3, Line 9 Yoder denies this and objects: "Yoder also assisted in the distribution of child pornography images that Thompson produced". Yoder never was found with any child pornography and several emails state his disinterest in it. Yoder did forward an email of TruBoyModels.com of clothed models received from Mr. Neri of an advertisement of that site. TruBoyModels.com was not known to have any nudes. Yoder, back in 2011 and until August 2012 did not know Mr. Thompson produced TruBoyModels.com. This is hardly "assisting" by forwarding one email advertisement.

Pg 3, Lines 10, 11 Uncorroborated, Plea Bargained Testimony, taken out-of-context given by Mr. Monsivais, a co-defendant, states Yoder "offered up his own home as a 'safe place' for his co-conspirators to sexually abuse their victims." Yoder herein clarifies he told Monsivais that he would not be judged and to feel at home -- he, Yoder, never told Monsivais to sexually abuse anyone! Let alone others.

Pg 3, Lines 12-16 and Page 4, Page 5 lines 3-9 NO CHANGE

Pg 5, lines 10 through Page 7 line 14 Yoder will only comment his firm belief that there is a strong likelihood of ineffective assistence of counsel in explaining the SPIRIT of his Plea and the obvious implication given at arms length negotiation with AUSA Roohani was I, Yoder, would be serving an equal Federal Term (regardless) of legal semantics, with the same release.

Pgs. 7 - 10. Yoder strongly objects to the innuendoes and projections drawn from blatent opinion and not relevant fact based data. From the outset, the Government contends and asserts that an entire population -- including his theoretically improbable unborn natural children are at extreme RISK despite STATE reports of low recidivism (6.x%) hands-on, for under age 18. A pedophile exhibits attraction towards prepubescent children, mostly under 8 years of age.' There is zero testimony, evidence, or authority to even suggest Yoder's affliction is below hebephilia. There is ZERO record of any allegation from his adopted children of any form of sexual abuse. Yoder's home was buzzing with social workers 2002-2015. Children in foster placements were routinely interviewed in private both at home and at school. At state trial, Yoder was found to be an undisputted highly qualified and vetted Therapeutic Foster Family Home. Foster sons and students were interviewed and none were called to testify for reason of nothing substantive. The reports Defense furnished to this Court are relevant as Yoder DID not participate hands on nor was present in the Enterprise Conspiracy Exploitation of "child pornography." Yoder does admit he did nothing to stop his co-conspirators, certainly by legal definition, and had been an accessory after-the-fact, in essence an aider-and-abettor, having by all objective senses lit the "fuse upon Fertile ground," deserves punishment and a prison sentence and did not deserve

the trust others openly gave by his station in life and outward appearance.

I DO clearly adore teenage boys and eagerly await repairitive therapy to function well within society while still able to achieve a modicum of reasonable comfort and happiness as an elder in the community.[1]

Yoder wishes to thank the Court for this opportunity to reflect and record his response to that of the Government's and wishes to reiterate no intent to sway or motion any change to the status quo.

Dated this 28th day of January 2021.

Respectfully Submitted,

[signature]

JOHN DAVID YODER

Defendant, Attorney pro se

---

[1] Of special note is Yoder's recorded long-term adult registered domestic partnership relationships, documented and provided in interview by Milt Sheetz to the Probation Department in report form wherein his longest 7½ year partner (Snider) commended Yoder's work with youth and apparent appropriate conduct around them. Indeed, another partner, (Matthews) was interviewed by investigators with similar finding. Yoder finds it somewhat peculiar no mention has been made of this to the Court.

Davide Yoder
53352048, G4 48 B
NSDC, il cappannone
2190 East Mesquite Avenue
Pahrump, NV 89060-3427

Legal Mail
la posta legale

INDIGENT




FILED / RECEIVED
ENTERED / SERVED ON
COUNSEL/PARTIES OF RECORD

This correspondence originated from a detention facility. The facility is not responsible for the contents herein.

JAN 29 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

X-RAYED U.S. MARSHALS SERVICE

Clerk, U.S. District Court
Case No.: 2:13-cr-00368-JAD-VCF
District of Nevada
333 Las Vegas Boulevard South
Las Vegas, NV 89101

89101$8514 C075

AO 245B (Rev. 09/20) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Nevada

UNITED STATES OF AMERICA
v.
JOHN DAVID YODER

## JUDGMENT IN A CRIMINAL CASE

Case Number: 2:13-cr-00368-JAD-VCF-2

USM Number: 53352-048

John Patrick Dolan, Esq.
Defendant's Attorney

## THE DEFENDANT:

☑ pleaded guilty to count(s) 1 and 5 of the Superseding Indictment [ECF No. 14]

☐ pleaded nolo contendere to count(s) ______ which was accepted by the court.

☐ was found guilty on count(s) ______ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252A(g) | Child Exploitation Enterprise | 1/28/2015 | 1 |
| 18 U.S.C. §§ 2252A(a)(3) and (b)(1) | Conspiracy to Distribute Child Pornography | 1/28/2015 | 5 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) ______

☑ Count(s) all remaining ☐ is ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/11/2021
Date of Imposition of Judgment

Signature of Judge

Jennifer A. Dorsey, U.S. District Judge
Name and Title of Judge

1/21/2021
Date

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF-2

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
240 MONTHS, per count, concurrent; concurrent to case no. RIF1501674.

☑ The court makes the following recommendations to the Bureau of Prisons:
The court strongly recommends that the Bureau of Prison accept any request from the California Department of Corrections (CDC) to allow the defendant to serve his federal and state concurrent sentences in a Bureau of Prisons facility. It is further recommended that if the Bureau accepts the CDC's request, that defendant be designated to serve his sentences at FCI Englewood, Colorado , or if FCI Englewood is unavailable, then FCI Seagoville, Texas. The Court makes this recommendation because both facilities have Sex Offender Management Programs which the Court recommends he be placed in.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ______________ ☐ a.m. ☐ p.m. on ______________ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ______________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on ______________ to ______________

at ______________ , with a certified copy of this judgment.

______________
UNITED STATES MARSHAL

By ______________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF-2

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

LIFE

and must comply with the following standard conditions, mandatory conditions, and special conditions:

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the specific risks posed by your criminal record and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the specific risks posed by your criminal record.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF



## MANDATORY CONDITIONS OF SUPERVISION

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court, not to exceed 104 tests annually.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. You must cooperate in the collection of DNA as directed by the probation officer.
5. You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.
6. You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________________ Date ______________

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF-2

## SPECIAL CONDITIONS OF SUPERVISION

1. Alcohol Abuse Treatment – You must participate in an outpatient alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

2. Alcohol Testing – You must submit to substance abuse testing to determine if you have used a prohibited substance. Testing shall not exceed 104 tests per year. You must not attempt to obstruct or tamper with the testing methods.

3. No Alcohol – You must not use or possess alcohol.

4. Mental Health Treatment – You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

5. Access to Financial Information – You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office will share financial information with the U.S. Attorney's Office.

6. Debt Obligations – You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

7. Minor Prohibition – You must not have direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

8. Place Restriction – Children Under 18 – You must not go to, or remain at, any place primarily used by children under the age of 18, unless you have the express prior permission of your Probation Officer. Examples of such prohibited places include parks, schools, playgrounds, and childcare facilities.

9. Search and Seizure – You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

10. No Pornography - You must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256(5)), or any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined by 18 U.S.C. § 2256(2)) involving children , or "actual sexually explicit conduct" (as defined by 18 U.S.C. § 2257(h)(1)) involving adults, that would compromise your sex offense-specific treatment. These restrictions do not apply to materials necessary to, and used for, any future appeals, or materials prepared or used for the purposes of sex-offender treatment.

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF-2

## SPECIAL CONDITIONS OF SUPERVISION

11. Sex Offender Treatment – You must participate in a sex offense-specific treatment program, and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

12. Polygraph Testing – You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

13. Computer Monitoring – You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

14. Computer Search – You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

15. Computer Search – Monitoring Software – To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct periodic, unannounced searches of any computers (as defined in 18 U.S.C. § 1030 (e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF-2

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 5,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until ____________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Restitution List attached | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the ☐ fine ☑ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: JOHN DAVID YODER
CASE NUMBER: 2:13-cr-00368-JAD-VCF-2

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ 5,200.00 due immediately, balance due

☐ not later than ____________, or
☑ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within ________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
Any unpaid balance must be paid at a monthly rate of not less than 10% of any income earned during incarceration and/or gross income while on supervision, subject to adjustment by the Court based upon ability to pay.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
Final Order of Forfeiture attached.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Case 2:13-cr-00368-JAD-VCF Document 207 Filed 01/12/21 Page 1 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAVID YODER,<br>Defendant. | 2:13-CR-368-JAD-VCF<br>**Final Order of Forfeiture** |

The United States District Court for the District of Nevada entered a Preliminary Order of Forfeiture pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2) and 18 U.S.C. § 2253(a)(1) and 2253(a)(3) based upon the plea of guilty by David Yoder to the criminal offenses, forfeiting the property set forth in the Plea Agreement, the Bill of Particulars, and the Forfeiture Allegations of the Superseding Criminal Indictment and shown by the United States to have the requisite nexus to the offenses to which David Yoder pled guilty. Superseding Criminal Indictment, ECF No. 14; Bill of Particulars, ECF No. 34; Change of Plea, ECF No. 171; Preliminary Order of Forfeiture, ECF No. 172; Plea Agreement, ECF No. 173.

This Court finds that the United States may amend this order at any time to add subsequently located property or substitute property to the forfeiture order pursuant to Fed. R. Crim. P. 32.2(b)(2)(C) and 32.2(e).

This Court finds the United States published the notice of forfeiture in accordance with the law via the official government internet forfeiture site, www.forfeiture.gov, consecutively from November 21, 2019, through December 20, 2019, notifying all potential third parties of their right to petition the Court. Notice of Filing Proof of Publication, ECF No. 187.

This Court finds no petition was filed herein by or on behalf of any person or entity and the time for filing such petitions and claims has expired.

This Court finds no petitions are pending with regard to the property named herein and the time for presenting such petitions has expired.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that all possessory rights, ownership rights, and all rights, titles, and interests in the property hereinafter described are condemned, forfeited, and vested in the United States pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); Fed. R. Crim. P. 32.2(c)(2); 18 U.S.C. § 2253(a)(1) and 2253(a)(3); and 21 U.S.C. § 853(n)(7) and shall be disposed of according to law:

1. Dell computer tower, Model No. Vostro 400, Serial No. D2CXRF1, containing a Seagate 1 TB SATA hard drive, Model No. ST1000DM003, Serial No. SlD0MRJQ;
2. Hitachi 2TB external hard drive, Model No. HT0LDNB20001BBB, Serial No. F31G2NXD;
3. Western Digital 1TB hard drive, Model No. WD10EADS, Serial No.WCAV5M930266.
4. San Disk Card Reader;
5. San Disk 16GB Compact Flash Card;
6. Panasonic Video Camera, Model No. SDR-H85P, Serial No. J01Al8002;
7. 2 micro video cassettes;
8. Proof of residence documents;
9. Compaq Presario laptop computer, Model No. CQ57, Serial No. 5CB2174R1P, containing a Seagate 320GB SATA hard drive, Model No. ST9320325AS, Serial No. 6VDFR10V;
10. Canon Mark II digital camera, Serial No. 4252102526;
11. Emachines desktop computer, Model No. EL1850, Serial No. PTNBK02012040038589600, containing a 500GB SATA hard drive, Model No. HDS721050CLA362, Serial No. HElBIMMT;

/ / /

12. Gateway desktop computer, Model No. DX4860-UB33P, Serial No. PTGCPP200420400EF66300, containing a Western Digital 1TB SATA hard drive, Model No. WD10EARX, Serial No.WMC0T0032462;
13. Compaq Presario desktop computer, Model No. SR5034X, Serial No. MXX71406PP, containing a Samsung 160GB SATA hard drive, Model No. HD160JJ/P, Serial No. S0DFJ1GP107611;
14. Apple iPhone 4S, Model No. A1387, Serial No. CBPH20MGDTDW, IMEI No. 99000110136386, containing a Sprint mini SIM card. No. 89010100088311266638F;
15. 100 CDs and DVDs;
16. 13 CDs and DVDs;
17. Hitachi DVD Cam, Serial No. 50320241;
18. Sony Digital Camera, Model No. MVC-FD100, Serial No. 500023containing a 3.5 inch floppy diskette with 128MB of memory;
19. Kodak digital camera, Model No. Easyshare Z710, Serial No. KCXGG64336528;
20. Kodak digital camera, Model No. Z981, Serial No. KVYMN02061276;
21. Black HP laptop model, G6-2237US, Serial No. 5CD2490UMC;
22. Toshiba Satellite C655D-S5209 laptop, Serial No. 7B231863Q;
23. Toshiba Satellite C55D-A5304 laptop, Serial No. YD280824Q;
24. Black Seagate Expansion Desktop Drive, P/N 1D7AP3-500, Serial No. NA4K688Y;
25. Apple iPhone in black case, model number A1332;
26. Apple iPhone without a case, model number A1387;
27. Black Samsung cellular flip phone, model SPH-M270;
28. Black digital Canon EOS camera, Serial No. 3211600699, Model DS126201;
29. Cannon Rebel XSi camera, model number DS126181, Serial No. 0670215963, containing 2 GB SD card;
30. Nikon D700 digital camera, Serial No. 3114091, containing 2 SD cards, (1) 8 GB, (1) 16 GB;
31. Apple iPhone 4, FCC ID: BCG-E2422A;

32. Apple iPhone 4S, FCC ID: BCG-E2430A;

33. A Toshiba External Drive, Serial No. 23EAPV0ZTRE8

34. HP Pavilion Computer, Serial No. 5CD249WMC;

35. Kodak 2GB SD card;

36. PNY 16GB SD card;

37. 2 SanDisk 8GB Compact Flash cards

38. SanDisk 8GB SD card; and

39. iPhone, FCC ID: BCG-E23808

(all of which constitutes property).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any and all forfeited funds, including but not limited to, currency, currency equivalents, certificates of deposit, as well as any income derived as a result of the government's management of any property forfeited herein, and the proceeds from the sale of any forfeited property shall be disposed of according to law.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Clerk send copies of this Order to all counsel of record.

Check the Preliminary Order of Forfeiture and the Plea Agreement for any special language or offers to make sure the documents match.

DATED: January 11, 2021.

HONORABLE JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

UNITED STATES OF AMERICA, ) Case No. 2:13-cr-00368-JAD-VCF
Plaintiff, ) Las Vegas, Nevada
vs. ) January 11, 2021
) 11:19 a.m. - 12:38 p.m.
JOHN DAVID YODER (2), ) Courtroom 6D
) SENTENCING AND DISPOSITION
Defendant. )

***CERTIFIED COPY***

REPORTER'S TRANSCRIPT OF PROCEEDINGS CONDUCTED VIA ZOOM
BEFORE THE HONORABLE JENNIFER A. DORSEY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government: ***CHRISTOPHER BURTON, AUSA***
***ELHAM ROOHANI, AUSA***
*UNITED STATES ATTORNEY'S OFFICE*
*501 Las Vegas Boulevard South, Suite 1100*
*Las Vegas, Nevada 89101*
*(702) 388-6336*

(Appearances continued on page 2.)

Court Reporter: Amber M. McClane, RPR, CRR, CCR #914
United States District Court
333 Las Vegas Boulevard South, Room 1334
Las Vegas, Nevada 89101
(702) 384-0429 or AM@nvd.uscourts.gov

Proceedings reported by machine shorthand. Transcript produced by computer-aided transcription.

APPEARANCES CONTINUED:

For the Defendant:

***JOHN PATRICK DOLAN, ESQ.***
***KELLI McDOWELL***
*DOLAN LAW OFFICES*
*45-290 Fargo Street*
*Indio, California 92201*
*(760) 775-3739*

-AND-

***ALAN ELLIS, ESQ.***
*LAW OFFICES OF ALAN ELLIS*
*35501 South Highway 1, Unit 150*
*Gualala, California 95445*
*(415) 235-9058*

Also Present:

*Sunny Cascio, USPO*

* * * * *

LAS VEGAS, NEVADA; MONDAY, JANUARY 11, 2021; 11:19 A.M.

--o0o--

P R O C E E D I N G S

**COURTROOM ADMINISTRATOR:** Now's the time set for an imposition of sentence in Case Number 2:13-cr-368-JAD-VCF, United States of America versus John David Yoder.

Counsel, please state your appearances.

**MR. DOLAN:** John Patrick Dolan on behalf of Mr. Yoder. He is present online before the Court.

**MR. BURTON:** Good morning, Your Honor. Christopher Burton and Ellie Roohani on behalf of the United States.

**THE COURT:** All right. And we have a probation officer?

**PROBATION OFFICER:** Yes, Your Honor. Sunny Cascio, U.S. Probation. Good morning.

**THE COURT:** Good morning.

All right. And I see Mr. Yoder on the video. We are conducting this hearing via videoconference via Zoom because of the COVID-19 pandemic. This Court's general orders and the CARES Act permit the Court to postpone hearings, but if I find that I cannot further delay this hearing without risking serious harm to the interests of justice, then the Court can proceed by video hearing if the defendant provides his consent.

Danielle, do we have a written waiver of consent in

Case 2:13-cr-00368-JAD-VCF Document 226 Filed 06/02/21 Page 4 of 45



this case?

**COURTROOM ADMINISTRATOR:** No, Your Honor.

**THE COURT:** No written waiver of consent. Okay.

So let me ask defense counsel then, Mr. Dolan, does your client consent to -- to have this hearing conducted and have his appearance be by video instead of in person?

**MR. DOLAN:** I believe so. We've discussed this on numerous occasions.

**THE COURT:** Okay. Let me ask the Government first, why can I not postpone this hearing further without risking serious harm to the interests of justice, Mr. Burton or Ms. Roohani?

**MR. BURTON:** Thank you, Your Honor.

Your Honor, as is clear in the pleadings in preparation for this sentencing, the parties are agreeing to, as part of the -- the sentencing negotiation in this case, a substantial amount of credit from the time that the defendant has been in state custody in Pahrump. That equates to a mandatory minimum sentence, and so we ask that sentencing proceed at this time so that the defendant can start receiving credit on his federal sentence.

**THE COURT:** Mr. Dolan, do you have anything to add as to why I cannot further delay this hearing without risking serious harm to the interests of justice?

**MR. DOLAN:** No, I do not.

**THE COURT:** All right. And this is a binding plea agreement, is that right, Mr. Burton?

**MR. BURTON:** That is correct, Your Honor.

**THE COURT:** Okay. All right. Well, based on counsels' representations, I do find that I cannot further delay this hearing without risking serious harm to the interest of justice based on the defendant's custodial status and the length of that custodial status and the relationship between the amount of time he's already spent in state custody without getting federal credit for it and also based on the relationship between that amount of time and the statutory mandatory minimum 20-year sentence for Count 1 in this case.

So we will proceed with this hearing via videoconference instead of having the defendant appear in the -- in the courtroom if I'm provided with his consent.

So I'm going to turn to you now, Mr. Yoder. Good morning.

**THE DEFENDANT:** Good morning, Your Honor.

**THE COURT:** Do you understand, sir, that you have a right to appear in person in court for this hearing, but you can waive that right and consent instead to appear via videoconference as we're doing right now?

**THE DEFENDANT:** I do.

**THE COURT:** And has your attorney advised you about that right and about the waiver of it?

**THE DEFENDANT:** He has, and I have heard us continue to discuss it now presently.

**THE COURT:** And did your attorney answer all of the questions you had about waiving your right to an in-person sentencing hearing and consenting instead to attending by video?

**THE DEFENDANT:** Yes.

**THE COURT:** And do you feel that you fully understand your rights and that waiver and that consent?

**THE DEFENDANT:** Yes.

**THE COURT:** All right, sir. Do you consent to proceeding with this hearing via videoconference waiving your right to be present in person?

**THE DEFENDANT:** Yes, I do.

**THE COURT:** All right. I do find that waiver and consent to be knowing, intelligent, and voluntary, and I accept it.

Sir, if at any time you need to confer with your attorney in private, please let us know and we will accommodate that. Okay?

**THE DEFENDANT:** I appreciate that offer. Yes.

**THE COURT:** All right. Before we get started with this hearing in earnest, let me hear from counsel. Is there anything that I need to be advised of upfront? I'll ask the Government first.

**MR. BURTON:** No, Your Honor.

**THE COURT:** All right. How about defense counsel?

**MR. DOLAN:** I don't think there's anything additional, what you have in writing. We entered in a plea agreement. We have given our objections and corrections to Probation, and they have dealt with them. We have two sentencing memorandum; one from the defense, and one from the Government. And I think that material should be sufficient.

**THE COURT:** All right. Thank you very much.

So this is the hearing set for the imposition of sentence upon Mr. Yoder in this case. Back in October of 2019 -- so about 15 months ago -- he appeared before the Court and entered a plea of guilty to Counts 1 and 5, child exploitation enterprise and conspiracy to distribute child pornography based on a written binding plea agreement with the Government. The Court deferred accepting that guilty plea and adjudicating him guilty of this charge to review the PSR and the sentencing materials before deciding whether to accept that binding plea.

In the plea agreement, the parties agreed that they -- or agreed on a sentence of 288 months followed by -- an aggregate sentence of 288 months followed by lifetime supervised release to be concurrent with his state court case, and they also agreed that he would receive credit via a variance for time spent in state custody for which he is not

going to be getting federal credit. At this time, that length of time is 69 months. So five years and almost nine months. And butting up against that, however, we have mandatory statutory minimum 20 years for Count 1. So, in effect, that variance can't take it down below that floor for Count 1.

Have I adequately summarized -- briefly but summarized the parties' binding plea agreement?

**MR. BURTON:** Yes, Your Honor.

**MR. DOLAN:** I believe so. I think there's a joint agreement that the net sentence that should be imposed is 240 months because that's the precise minimum mandatory.

**THE COURT:** Sure. So both sides have submitted to me some late sentencing memos, but I have reviewed and considered them nevertheless. And in both sentencing memos the parties ask for a sentence of 240 months followed by lifetime supervised release, and that 240 months is essentially to account for the amount of a variance I can provide for that extra time -- or the time spent in state custody for which he would not be getting BOP credit.

All right. So let's go ahead then, let me ask, has -- so, Mr. Dolan, have you reviewed the Presentence Investigation Report carefully with your client?

**MR. DOLAN:** I've done so. I have made our additions and corrections known to Probation, and they have dealt with them.

**THE COURT:** Okay. So at this time right now are there any unresolved objections to the PSR?

**MR. DOLAN:** Nothing that is unresolved at this time.

**THE COURT:** Thank you.

Does the Government have any unresolved objections to the PSR?

**MR. BURTON:** No, Your Honor.

**THE COURT:** All right. Then let's go ahead and turn to the guideline calculation in the PSR. It starts at page 11. Probation used the 2018 guidelines manual incorporating all guideline amendments. And then as each count is a separate act committed separate from one another involving different victims or on different occasions, none of the counts of conviction group with one another under Chapter 3 of the sentencing guidelines. So the multiple-count adjustment is applied in accordance with Chapter 3, Part D. That's the note that we have in the PSR at paragraph 40.

Do we agree that those methods and that version of the guideline manual are accurate?

**MR. DOLAN:** Yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** All right. So Count 1, Group 1, the child exploitation enterprise count, Probation applied a base level of 35. Then Probation applied a four-level increase because a victim had not attained the age of 12 years.

Probation then applied a two-level increase because an interactive computer service was utilized in furtherance of the offense, and that gives us an adjusted offense level for Count 1, Group 1, of 41.

Do we agree that's all accurate?

**MR. DOLAN:** Yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** And do we agree that those specific offense characteristics in paragraphs 42 and 43 are supported by a preponderance of the evidence?

**MR. BURTON:** Yes, Your Honor.

**MR. DOLAN:** Yes. Yes.

**THE COURT:** Thank you.

Turning to Count 5, Group 2, conspiracy to distribute child pornography, Probation calculated the base offense level to be a 22. And then we have a number of specific offense characteristics that were applied in paragraphs 49 through 53.

In paragraph 49, Probation applied a two-level increase because the material involved a prepubescent minor or a minor who had not attained the age of 12 years. In paragraph 50, Probation applied a five-level increase because the offense involved distribution for a pecuniary gain, but a retail value could not be determined. In paragraph 51, Probation applied a five-level increase because the defendant engaged in a pattern of activity involving the sexual abuse or

exploitation of a minor. In paragraph 52, Probation applied a two-level increase because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material. And then, in paragraph 53, Probation applied a five-level increase because the offense involved 600 or more images. That gives us an adjusted offense level of 41.

Do we all agree that that is accurately calculated?

**MR. DOLAN:** Yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** And do we agree that the specific offense characteristics in paragraphs 49 through 53 are supported by a preponderance of the evidence?

**MR. DOLAN:** Yes. On a conspiracy basis, yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** Turning to the multiple-count adjustment, we have two units. The greater of the adjusted offense levels is 41, so the increase in the offense level is a plus two under 3D1.4, which then gives us a combined adjusted offense level of 43.

Do we all agree that's all accurate?

**MR. DOLAN:** Yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** Then we have a Chapter 4 enhancement in

paragraph 62. Because the offense of conviction is a covered sex crime, neither 4B1.1 nor (a) of 4B1.5 applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct. So the defendant is deemed here a repeat and dangerous sex offender against minors, so the offense level shall be a 5 and the offense level determined under Chapters 2 and 3. In this case, the applicable offense level is 48 under 4B1.5(b)(1).

Do we agree that is all accurate?

**MR. DOLAN:** Yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** Probation then applied a three-level decrease for acceptance of responsibility. Does the Government move for the third point? And, Mr. Burton, if so, why?

**MR. BURTON:** Yes, Your Honor. Because of the defendant's timely acceptance of plea negotiations, the Government was able to conserve resources in preparing for trial.

**THE COURT:** All right. Then I do find that all of the factors under 3E1.1(a) and (b) are satisfied by a preponderance of the evidence, and I apply the three-level decrease. And that gives us a total offense level of 43.

Do we agree that's correct?

**MR. DOLAN:** Correct.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** Okay. And I do find that all of these specific offense characteristics in this calculation are supported by a preponderance of the evidence based on the information admitted in the plea agreement and the -- sorry, not "and." So based on the information contained in the plea agreement and during the plea colloquy.

So turning to the criminal history computation, that's at the bottom of page 15. The criminal convictions result in a criminal history score of zero which establishes a criminal history category of I. But because of 4B1.5(a)(2), the defendant is a repeat and dangerous sex offender against minors; therefore, the criminal history category shall be the greatest of the criminal history category determined under Chapter 4, Part B, which is 1, or a criminal history category V. So here we are applying a criminal history category V.

Do we agree that's all correct?

**MR. DOLAN:** Correct.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** The minimum term of imprisonment for Count 1 is 20 years, and the maximum term of imprisonment is life. For Count 5, the minimum term is five years, and the maximum term is 20 years. For both counts the Court must impose a term of supervised release of five years to life per

count. The maximum fine for each count is $250, and a... and the statute requires a 100-dollar-per-count penalty.

Based on a total offense level of 43 and a criminal history category of V, the guideline imprisonment range is life, the guideline supervised release term is five years to life, and the fine range is $50,000 to $250,000.

And I misspoke. The $100, it's a special assessment, not a penalty. A special assessment, which is mandatory.

Do we agree all of those are accurate?

**MR. DOLAN:** Yes.

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** All right. I do find Probation's guideline calculations to be accurate, and I adopt them.

Probation recommends for Count 1 a term of life, for Count 5 a term of 20 years, for -- and supervised release as to all counts, no fine but $5,000 per victim, and the JVTA assessment of $5,000.

All right. Let me hear from the Government on the recommended sentence. And if you could also talk about restitution for me, Mr. Burton.

**MR. BURTON:** Certainly, Your Honor. Thank you.

And I will try and talk slowly because of the technology, but if I'm too slow or too fast, please just let me know.

**THE COURT:** Got it.

**MR. BURTON:** Your Honor, as you summarized at the beginning of this hearing, based on the negotiations and the math that needs to be calculated as a result of those negotiations, the Government is recommending a sentence of 240 months, which is the statutory mandatory minimum for Count 1 and the statutory maximum for Count 5. The Government is also recommending a lifetime term of supervised release.

Your Honor, the -- the law contemplates a separate punishment for conspiracy offenses as compared to the substantive offense, and at least one of the policy considerations underlying that rationale is that it's more dangerous for two or more people to agree on committing a crime than it is for one person to actually commit the crime. And the facts of this case are a very clear demonstration of that principle.

Mr. Yoder went beyond the solitary collection or receipt or distribution of child pornography. He sought out like-minded individuals first online through boylover.org and then in person. He then agreed with those individuals to commit hands-on sexual offenses on children.

And the association continues to this day that started with a conspiracy clear back in 2016. Your Honor has on the docket a letter written by Phillip Neri, N-e-r-i. That is someone who, according to accounts and -- and witnesses, was associated with this case, was present during some of the

sexual abuse, has corresponded with Mr. Yoder throughout his state court proceedings, and reached out to this Court to write a letter on behalf of Mr. Yoder.

And you also see, Your Honor, the conspiracy between Mr. Yoder and his co-defendants, Mr. Thompson and Noland Harper, were exponentially more dangerous and exponentially more harmful than had Yoder simply acted alone in this case. Indeed, Mr. Thompson and Mr. Yoder even went so far as to use their victims to target still other children. This is not a case of one plus one equals two. This is a case of one plus one equals ten times the damage caused to the children that were targeted by the sexual deviance that Your Honor has seen before it.

And you can look at the facts of the state supreme court case proven beyond a reasonable doubt in Mr. Yoder's state proceedings to confirm the prevalence of the conspiracy and the damage that it did to every victim that got entangled in it.

And this Court can also rely on what it has seen firsthand as witnessed and ruled over Mr. Thompson's sentencing and saw and heard from the victims of this conspiracy and saw the pain and the humiliation on their faces as they spoke or at least were present for Mr. Thompson's sentencing. And that harm continues to this day as a series known as "Surfer Hair" is still actively traded, created

during the course of this conspiracy and still actively traded throughout the child pornography community.

And so what is to be done with people like this? And that's where the Government asks this Court to consider Mr. Yoder's sentencing as it compares to the sentences of his co-defendants, Mr. Thompson having received 354 months, Mr. Harper receiving 292 months. And I'll represent it's the Government's understanding that the third co-conspirator, Mr. Eric Monsivais, is looking at approximately 40-plus years in state custody.

And so, when comparing Mr. Yoder's egregious offensive conduct to that of Mr. Thompson, it's clearly less culpable, although certainly not as minimized as Mr. Yoder's self-serving letter indicates.

But it is the Government's position that a sentence of 240 months, the mandatory minimum, takes into account the comparative culpability of Mr. Yoder and the harm of his actions within that conspiracy as it relates to that of his co-defendants.

The last thing that I will add as to the substantive sentence, Your Honor, is a -- in addition to the reasons provided in the Government's response regarding the risk assessments that were provided to this Court, we ask that the Static-99R that was provided to this Court also be rejected as it is inappropriate given that it was not submitted recently

after his conviction for the hands-on offense in California.

Now, Your Honor, in turning to restitution, there has been one request for restitution submitted to our office. I believe Your Honor should have that. It is for $5,000. And per the terms of the plea agreement, we ask that that be imposed, and I will confirm that that is -- it's my understanding that is for the "Surfer Hair" series that I referenced in my argument.

**THE COURT:** I do have that, and I have reviewed it.

**MR. BURTON:** Unless Your Honor has any further questions, I'll submit it.

**THE COURT:** So the Government would be requesting restitution for the "Surfer Hair" series in the amount of $5,000 based on the submission.

And how about any additional funds under the -- let's see. So Probation recommended $5,000 under the JVTA. Is that --

**MR. BURTON:** Yes, Your Honor. We would ask that --

**THE COURT:** Go ahead.

**MR. BURTON:** I apologize, Your Honor.

We would ask that that be imposed as well, as well as the special assessment of $100 per count.

**THE COURT:** Okay. Mr. Dolan.

**MR. DOLAN:** Yes.

**THE COURT:** Your argument regarding sentence, sir.

**MR. DOLAN:** Your Honor, the first thing I would say is the reference to Mr. Neri is not well taken. I have had -- I've represented Mr. Yoder for quite some time in -- in the federal case. Mr. Neri has sought to involve himself in this case since the beginning. He is not welcome. I think if you looked at Mr. Yoder's letter that was included in the presentence report, he disavows having anything to do with Mr. Neri, doesn't want to have anything to do with Mr. Neri.

I understood what the People said about the respective sentences. I can represent to the Court out here in California that Mr. Thompson and Mr. Monsivais, as far as I know, have not been sentenced because Mr. Thompson has withdrawn the plea, as he has done, I understand, repeatedly in the Federal Court there in Las Vegas.

So I think that the 240 months, which represents the mandatory minimum minus the understood variance, is the appropriate sentence given everything that's before the Court.

As far as the Static-99 report, I'll let the Court decide what it wants to do with that. I just show that it demonstrates Mr. Yoder has a very low to moderate risk of reoffending, and I think the Court should take that into consideration.

So I would ask the Court to sentence Mr. Yoder to 240 months that the matter nets out to. I'd ask the Court to urge that the Bureau of Prisons put him in a program where there's

sex offender treatment. And I want to thank the Court and the People, the Government, for allowing us to appear.

And he has no funds for fines or restitution. He's indigent as he's been in custody for quite some time. Those are the things that I think are relevant that I expressed to the Court.

**MR. BURTON:** Your Honor, may I address the claim of indigency?

**THE COURT:** Yes.

**MR. BURTON:** Thank you, Your Honor.

And let me start with, I need to correct the record as the -- to the JVTA assessment. That should be imposed per count. So it's an assessment that is $5,000 per count.

And as far as a claim of indigency, the courts have treated the JVTA assessment similar to a fine, which is why it should be per count. But in determining indigency, Your Honor would need to find that the defendant is indigent for all future purposes, not just indigent as it stands today. And I don't think that the defense has provided Your Honor with a sufficient basis to find that the defendant is indigent for all future purposes.

**THE COURT:** Mr. Dolan, any response to that?

**MR. DOLAN:** Well, I would just indicate the reasonable reference -- the inference, rather, is that he will not have the ability to earn a meaningful living because he

has been a schoolteacher and it is extremely doubtful that he will be able to regain employment in that area. So I can't -- I can't predict, but I can say that the inferences is his chosen course of employment will not be available to him in the future.

**THE COURT:** All right. So, Mr. Yoder, this is also your opportunity to speak to the Court directly and to tell me anything else that you think I should consider when deciding what sentence to give you in this case. Is there anything else you would like to add, sir?

Oh wait. Hold on one second.

**COURTROOM ADMINISTRATOR:** I just have to wait until he gets unmuted.

**THE COURT:** Yeah, it takes us a second to unmute you. So hold on one minute.

**MR. DOLAN:** And, Your Honor, I wanted to point out to the Court that co-counsel, Alan Ellis, is on the -- the Zoom call in case he wishes to say anything to the Court.

**THE COURT:** I don't think I have a record of Mr. Ellis being co-counsel in this case. Has he made an appearance in this case, a formal appearance in this case?

**MR. DOLAN:** I don't believe he has. He just joined our defense team within the last six months.

**THE COURT:** Okay.

**MR. ELLIS:** Your Honor, I've been brought on as a

consultant in the case. I'm an attorney, but I'm not counsel of record [indiscernible] only.

*(Reporter clarification.)*

**THE COURT:** I'm sorry, sir. You broke up. I didn't hear your last sentence.

**MR. ELLIS:** I was retained solely as a consultant not to be counsel of record and specifically to deal with prison placement designation, which I guess I would do at the end -- if I can, at the end of the imposed sentence.

**THE COURT:** Okay. All right. So then I will turn to Mr. Yoder.

Is he unmuted now, Danielle?

**COURTROOM ADMINISTRATOR:** Yes, Your Honor.

**THE COURT:** Okay. So, Mr. Yoder, this is your opportunity to speak to the Court directly and to tell me anything that you think I should consider in deciding what sentence to give you in this case. Is there anything you would like to add, sir?

**THE DEFENDANT:** Yes, indeed. Thank you for this opportunity.

First, I would like to certainly appreciate Mr. Burton's perspective, and I do take every word he just mentioned quite soberly, though I will have to defer to some salient points which are not entirely accurate from his point of view. I will reserve them and not comment other than to

say I do take his perspective very soberly. I... wish my counsel to only comment after I speak here about the absolute non-presence and non-participatory nature and the fact that I never had pornography. That's all I'm going to say on that matter. I wish that my counsel will put that in a better phraseology because I'm not here today to discuss innocence.

I have prepared a few words. And, again, I'll turn that over to my counsel to discuss because I'm not here today for that.

As for an allocution and what have you, I would like to take this opportunity. I've submitted two letters before this Court both truthful and from the heart. I'm not here today asking for pardon or to offer excuse. I only want everyone's understanding so that when fair, impartial measures rightfully and proportionately executed -- and that's why I really appreciate Mr. Burton's perspective -- it be carried without the weight levied, polluted by inflammatory rhetoric and deliberate hyperbole and embellishment... and I'll strike the rest of this sentence other than to say I was headline news for a year and a half, so I'm not going to point the blame.

Taking insight from one of the books of wisdom in the *Bible*, here *Ecclesiastes*, Chapter 7, Verse 20, there is no one on earth who does what is right all the time and never makes a mistake. I am surely such a person who has made a mistake, a

Case 2:13-cr-00368-JAD-VCF Document 226 Filed 06/02/21 Page 24 of 45



terrible one, certainly in judgment, certainly a sin in omission. Many harms and damages to adolescents' lives could have been lessened and shortened had I been courageous and trusting in the authorities who would have helped and captured Thompson sooner. My failure to report him delayed all that, and I remain and always shall remain in the victims' debt of agony and pray them restoration and healing. I do realize their situation, my situation, their family's situation is not like a choose-your-own-adventure-series book where they, we, can simply select an alternate ending by skipping and fast-forwarding over the sad and difficult parts we don't want to experience.

All of the disingenuous and specious predictions regarding me contrary to psychologists' and sociologists' expert specialist reports aside which have been cast by our local Probation Department.

I was heartened to come across a letter written by my late father in support of my character. My father always considered me quite kindhearted and very passionate about my career helping troubled youth. I had never given my parents any indication I could be responsible for what has happened. He told one interviewer they never considered me anything but a positive influence on those who have known me.

I have clearly let down such perceptions. I have let down my two adopted sons, a very profound responsibility. My

younger son, now 20, is alone in the world it seems. I'm not available as a resource he was counting on for his needs my family is unable to meet emotionally. Indeed, no foster family was able to either. Fortunately, my older adopted son, 24, is reunited with his birth mother.

As I've recounted, lives will continue to be impacted by my mistakes here. I've expressed my part in my letters to the Court delving with fair greater detail than in the plea agreement. I do ask this Court to consider the zeal and language with which I was prosecuted against the truth of my actual involvement and measure my sins proportionate to my co-defendants' roles. I pray that all involved, especially the victims and their families, may find peace and healing to lead healthy and productive lives. Thank you.

And as an aside, separate from any consideration, if you would order me to stay around in any way I can be helpful for Monsivais' upcoming trial or -- or proceedings, I will be more than cooperative to help. And as I've told my counsel, I've learned that -- as of a year ago I learned that Thompson had involvement all the way back in 2007. My counsel can inform you of that -- just outside Needles, where he was captured, evidently there were seven victims then, too. So my counsel can provide that to whoever needs to know about it. I found out about a year ago his history predates me. Thank you.

**THE COURT:** Thank you, Mr. Yoder.

Mr. Burton, were there any victims on the -- on the line or with you in your office today who wanted to speak?

**MR. BURTON:** No, Your Honor. Thank you.

**THE COURT:** All right. Mr. Dolan, anything else to add?

**MR. DOLAN:** Your Honor, would this be an appropriate time for Mr. Ellis to address the Court regarding a location of sentencing, et cetera?

**THE COURT:** No, not yet. Are we just talking about an appropriate facility? Is that what we're talking about?

**MR. DOLAN:** That's one of the things we're talking about.

**THE COURT:** What else are we talking about?

**MR. DOLAN:** I'd have to defer to Mr. Ellis to tell you that.

**THE COURT:** Mr. Ellis -- let me understand what it is that you intend to speak to, Mr. Ellis, before I decide where that's going to be in this hearing.

**COURTROOM ADMINISTRATOR:** He needs to unmute himself, Your Honor.

**THE COURT:** You need to unmute yourself, Mr. Ellis.

**MR. ELLIS:** Okay. Thank you.

I have prepared a written individual BOP recommendation for counsel to submit to the Court, and I

wanted to speak to that and answer the questions the Court might have about the recommendation.

**THE COURT:** Okay. Hold on a second.

So do I have something, Mr. Dolan, that was prepared by Mr. Ellis that was submitted in the record?

**MR. DOLAN:** I believe we submitted it to Mr. Burton but not to the Court.

**THE COURT:** Okay. Mr. Burton, did you get something?

**MR. BURTON:** Your Honor, I did. It looks like it is language relating to designation, and that's what I have.

**THE COURT:** All right. So as in which facility he should be designated to for the best programming; is that basically what you have, Mr. Burton?

**MR. BURTON:** That's a large part of it. It also involves a recommendation that the defendant serve his time in federal prison as opposed to state prison. Per the terms of the plea agreement, we agreed not to oppose that.

And in looking and reviewing this proposed language -- and I'll let Mr. Dolan and Ms. McDowell speak to or Mr. Ellis -- there's a clause -- the final clause of it that would be the only thing that the Government would have issues with, which is that, if BOP does not follow your recommendation for designation, they're ordered essentially to provide a written response, which I've never seen before and I don't think it appropriately included in the recommendation.

Case: 21-10038, 12/13/2021, ID: 12314726, DktEntry: 12-2, Page 28 of 45



**THE COURT:** Okay. All right. Well, we'll get to that piece in just a few minutes. So let me ask both parties, is there any -- oh. And I'm sorry. Does Probation have anything else to add? Ms. Cascio, I failed to ask you.

**PROBATION OFFICER:** Nothing -- oh. No, Your Honor. Thank you very much. Nothing to add. Thank you.

**THE COURT:** Okay. All right. Is there any reason, legal or just, why the Court should not proceed with sentencing at this time?

**MR. DOLAN:** No legal cause on the part of the defense.

**MR. BURTON:** None on the Government, Your Honor.

**THE COURT:** All right. All right. Just to reiterate, we're here on a binding plea agreement. I have not yet decided -- I have not yet stated on the record whether I'm accepting that binding plea agreement, and I have not yet adjudicated the defendant guilty. So that's part of what we need to accomplish here today, those determinations.

This is based on the calculations in the -- in the PSR and as I have found the -- this is a guideline level 43 with a criminal history category V, which gives us a lifetime range both for custody and supervision. And the guidelines, of course, are only advisory. So I base my sentence entirely upon an analysis of the factors under § 3553(a) but also considering the statutory mandatory minimum in this case for

Count 1 which is 20 years.

So, again, we have a lot to consider here in applying the 3553(a) factors. The crimes that Mr. Yoder has pled guilty to are undeniably egregious. He sought out like-minded individuals on a platform called boylover.org and assisted his cohorts, including co-defendant William Thompson, resulting in the production and distribution of thousands of images of child pornography that are still in circulation. To do this, these predators ingratiated themselves to the minor victims and their parents. This was a shocking breach of trust, and the victims' statements and the information, for example, both from the statements that were given at Thompson's sentencing and certainly in the restitution materials, reveal a textbook case of grooming and child exploitation for this scheme.

Society and its laws require that such conduct be severely punished, which is why Count 1 here imposes a mandatory statutory minimum sentence of 20 years. But Mr. Yoder has pled guilty to these crimes eliminating the need for a trial and admitting various facts. His letters do show that he is remorseful, but it does also appear that he continues to minimize in some ways his own role in this scheme.

I do acknowledge, as Mr. Yoder stresses, that no pornography was found on his devices, and Mr. Yoder's role was more peripheral and less direct and less culpable, as the

Government also acknowledges, than Mr. Thompson, for example, who received an aggregate sentence of nearly 30 years in prison.

Before this conviction, Mr. Yoder had no criminal record. He has family support, has been a model inmate, he's eager to participate in programming provided by the BOP, and a 2016 test placed him in the low to moderate risk assessment level for recidivism.

This negotiated binding plea agreement gives Mr. Yoder effectively 24 years in prison -- it's 288 months -- which is a significant sentence. But it also eliminates for the victims the experience of having to relive these events by testifying about them at a public trial. I do not want to put Mr. Yoder's victims in the position of having to tell their stories and relive these terrible details in order to reach a potentially longer custodial sentence for a man who's already nearly 50 years old now.

He's already been in custody for 69 months, which is nearly six years, and the plea agreement contains the agreement that he be given credit for that time against his negotiated 288-month sentence by way of a variance. 288 months minus 69 months is 219 months, but the statutory floor mandatory minimum 240 months means that I can't vary below that floor for Count 1. So both sides asked me to sentence Mr. Yoder to 240 months to be served concurrent with his state

court sentence.

At this time, I do accept the binding plea. I adjudicate Mr. Yoder guilty of the offenses in Counts 1 and 5, and having considered all of the factors under § 3553(a), I vary down to a sentence of 240 months per count concurrent and concurrent with his state court sentence in Case RIF1501674 followed by a lifetime term of supervised release, and I find that this sentence is sufficient but not greater than necessary to accomplish the goals and objectives of sentencing.

I believe that this sentence takes into account the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range, and the policy statements of the Sentencing Commission. I believe it reflects the seriousness of the crime, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, will help protect the public from further crimes of this defendant, will allow for needed education or training or rehabilitation or programming, will avoid sentencing disparities, and is consistent with the public policy favoring enforcement of negotiated plea agreements.

So the defendant is committed to the Bureau of Prisons for a term of 240 months.

Let's talk about supervised release. When Mr. Yoder

gets out, he will be on supervised release for a term of life, and there will be terms and conditions that apply to his supervised release.

In the PSR, Probation recommends a number of proposed conditions. Those conditions begin on page 30 of the PSR.

Mr. Dolan, do you have any objections to any of those proposed supervised release conditions?

Oh. Mr. Dolan, you're muted, sir.

**MR. DOLAN:** I'm so sorry. No, I don't have any objections. Obviously all this is subject to future modification if and when there's appropriate factual basis for that. So no objections.

**THE COURT:** All right. Then I will impose the -- so on supervised release -- while on supervised release, the defendant will be required to comply with the standard conditions of supervision recommended by the Sentencing Commission. He'll have to comply with the mandatory conditions 1 through 6 on page 30 except that the drug testing condition in Number 3 is suspended based on the Court's determination that this defendant poses a low risk of future drug abuse.

And then the special conditions 1 through 14 will apply. So that includes the alcohol abuse treatment condition, alcohol testing, no alcohol, mental health treatment, the access to financial information condition, the

debt obligations, the minor prohibition, the place restriction, the search and seizure condition, the no pornography condition, the sex offender treatment condition, the polygraph testing, the computer monitoring, and the computer search condition. I'm sorry. And there's Number 15 also, the computer search monitoring software on page 33.

I do find that all of these conditions are reasonably related to the goals of deterrence, protection of the public, or rehabilitation; that they involve no greater deprivation of liberty than is reasonably necessary to achieve those goals; and that they are consistent with the pertinent policy statements issued by the Sentencing Commission.

And, Ms. Cascio, I will ask that you can provide a copy of these conditions to Mr. Dolan so he can provide them to his client immediately.

**PROBATION OFFICER:** Yes, Your Honor.

**THE COURT:** Thank you.

A mandatory penalty --

**MR. BURTON:** Your Honor?

**THE COURT:** Yes, Mr. Burton?

**MR. BURTON:** I apologize, Your Honor. I wanted to flag for Your Honor special condition Number 7, the minor prohibition. As recommended by the Probation Office and by just imposed -- excuse me, as imposed by Your Honor just now, it includes Mr. Yoder's own children. And under *Wolf Child*,

the Court is required to make a specific factual finding that that is appropriate and meets the factors listed under Title 18 United States Code § 3583(d)(1).

And, Your Honor, we would submit that that is appropriate here based on the fact that Mr. Yoder sexually abused an 11-year-old autistic child for which he was the temporary guardian and used that child to lure children in this case for purposes of the child exploitation enterprise.

**THE COURT:** So he has no minor children currently; correct?

**MR. DOLAN:** Correct.

**MR. BURTON:** That is correct, Your Honor, as it stands right now. He does have two children. He referenced in his allocution that he has two adult children that he has adopted. But in order to impose this condition, even if there are no natural children as it stands today, Your Honor still needs to make that factual finding.

**THE COURT:** Mr. Dolan, do you have any response?

**MR. DOLAN:** No response other than to concur that there are no minor children next to him.

**THE COURT:** Okay.

**MR. DOLAN:** And, Your Honor, there is one other issue.

**THE COURT:** I'm sorry, who just said that?

**MR. DOLAN:** Mr. Dolan. John Dolan.

**THE COURT:** Oh. Thank you, Mr. Dolan. Sorry, I wasn't looking at the screen. I was -- I was --

**MR. DOLAN:** That's quite all right.

**THE COURT:** -- looking at my paper.

**MR. DOLAN:** On page 36 it addresses the question of whether or not he received sex offender treatment during his time of incarceration. I would hope that the Court would find -- and I'll defer to Mr. Ellis on this -- the appropriate recommendation to the Bureau of Prisons and that the treatment not follow his incarceration but be consistent with his incarceration.

**THE COURT:** Understood. Thank you.

In light of the fact that Mr. Yoder does not currently have minor children, I guess I have to know -- acknowledge that there's certainly the potential that he could have children in the future during his supervised release and in light of the information that Mr. Burton has just reminded me of, the additional details of this case that I think merit the specific findings here under *Wolf Child*. So I must make specific factual finding that -- that this prohibition of contact -- sorry, the minor prohibition also include his own children as stated currently as Number 7 is -- is stated or written -- and, Mr. Burton, do you have that list of factors in front of you?

**MR. BURTON:** Your Honor, the list of factors that are

found in 3583(d)(1) essentially fold into the factors this Court should consider in imposing all conditions of supervised release.

Brief indulgence, Your Honor. I apologize.

And, Your Honor, under § 3583(d)(1), Your Honor can impose any condition that is reasonably related to the factors set forth in § 3553(a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant; as well as (a)(2)(B), to afford adequate deterrence to criminal conduct; and (a)(2)(C), to protect the public from further crimes of the defendant.

So those are the factors that we think would apply under the factual findings that are specific to this case.

**THE COURT:** And I agree that those factual findings are present here, and the Court makes those findings that you've just articulated with respect to the extension of that condition, Number 7, to Mr. Yoder's -- any of Mr. Yoder's potential own children.

**MR. BURTON:** Thank you, Your Honor.

**THE COURT:** All right. Thank you.

Let's see. No fine. Let's see. Did I -- I don't think I did the mandatory penalty assessment. So the mandatory penalty assessment of $200, which is $100 per count, is required by statute. It's hereby imposed, and it is due immediately. No fine will be imposed based on a demonstrated

inability to pay.

Turning to restitution, I do order the defendant to make restitution to the "Surfer Hair" series in the amount of $5,000. I find based on the submission on behalf of that series that this is the amount of actual loss sustained by that victim as a result of the offense. Any unpaid balance must be paid at a monthly rate of not less than 10 percent of any income earned during incarceration or gross income while on supervision subject to adjustment based on ability to pay. I do not order interest to accrue on the restitution judgment.

I also have here a proposed Final Order of Forfeiture. Mr. Dolan, have you had an opportunity to review that proposed Final Order of Forfeiture?

**COURTROOM ADMINISTRATOR:** Sir, you're muted.

**THE COURT:** Sorry, you're muted again.

**MR. DOLAN:** Sorry. Yes, we reviewed because Mr. Yoder has very little claim -- or no claim known of. So we've agreed to that in the plea agreement as well. No problem with that.

**THE COURT:** All right. Then I do find that the Final Order of Forfeiture is consistent with the plea agreement, and I will -- I will sign it and order that the items listed here be forfeited. Because I don't find on this record that the defendant is indigent for all future purposes, I also impose the JVTA assessment of $5,000 per count for a total of

$10,000.

All right. Mr. Yoder, in your plea agreement you waived most of your rights to appeal, but some appellate rights cannot be waived. To the extent that you've retained some rights to appeal in limited and narrow circumstances, I'm advising you that you have 14 days to file a notice of appeal. If you cannot afford an attorney to handle your appeal, one will be appointed to represent you. If you cannot afford a transcript of record in this case, one will be prepared for appeal at the Government's expense.

Do you understand that, Mr. Yoder?

Oh. Sorry. You're muted. Give us just a minute to unmute you.

All right. Mr. Yoder, do you understand your rights?

**COURTROOM ADMINISTRATOR:** Your Honor, he's still muted.

**THE COURT:** Sorry. Still muted.

**THE DEFENDANT:** Yes.

**THE COURT:** Yes. Thank you very much, sir.

Mr. Burton, do we need to dismiss any charges as I have accepted the binding plea agreement?

**MR. BURTON:** Yes, Your Honor. Brief indulgence.

Your Honor, the Government would move to dismiss the remaining charges against the defendant. I thought I had it in front of me, but I don't at this very moment.

**THE COURT:** I think it's just Count 3. Would you agree with me, Mr. Dolan?

You're muted, Mr. Dolan.

**PROBATION OFFICER:** Your Honor, that is -- this is Probation. That is correct.

**MR. DOLAN:** Sorry, Your Honor. Yes.

**THE COURT:** Yes. All right. Just Count 3. All right. So Count 3 will be --

**MR. DOLAN:** I think we're fine with that.

**THE COURT:** Thank you. Count 3 will be dismissed.

Okay. Now we're on to the recommendation that the defendant be designated to serve his sentence at a specific facility.

I'm going to tell you, Mr. Ellis, we're having a real hard time understanding you each time you've spoken. So I'm going to turn to you now for a moment. But if for some reason we can't understand you well, I don't know if maybe it's because you're on a cell phone, maybe going through a tunnel. I don't know. Something -- something was very challenging there. And if we can't hear you, I'll just have Mr. Burton, who apparently has this information that you've prepared -- which I don't have -- I'll ask him to summarize it.

So, Mr. Ellis, I'll turn to you. And what is your request, sir, with respect to a recommendation that the defendant be designated to serve his sentence at a specific

facility or at a facility with a particular type of program?

**MR. ELLIS:** It's a little more than that, Your Honor. Can you hear me better now?

**THE COURT:** A little bit.

**MR. ELLIS:** The problem is I am up in a remote part of California on the northern coast in Mendocino County, and I have Wi-Fi and it comes and goes up here unfortunately.

But I can e-mail you the language to your clerk. If you give me the e-mail address, I can send it out right now.

**THE COURT:** Okay. Danielle, can you provide -- is -- he's just attending by...

**COURTROOM ADMINISTRATOR:** Yeah, Mr. Burton, can you forward me that language?

**MR. BURTON:** I can also read it into the record. And I received it this morning from Mr. Dolan's office, which I believe Mr. Ellis originally sent it to.

**COURTROOM ADMINISTRATOR:** Okay.

**MR. ELLIS:** Yes.

**THE COURT:** Okay. Let's do this. Mr. Burton, since I seem to be able to hear your best, why don't you go ahead and read to me into the record this proposed language.

**MR. BURTON:** Certainly, Your Honor.

The proposed language that I received this morning is: The Court strongly recommends that the Bureau of Prisons accept any request from the California Department of

Corrections to allow the defendant to serve his federal and state concurrent sentences in a Bureau of Prisons facility. It is further recommended that if the Bureau accepts the CDC's request, that defendant be designated to serve his sentences at FCI Englewood in Colorado or, if FCI Englewood is unavailable, then FCI Seagoville, Texas. The Court makes this recommendation because both facilities have sex offender management programs which the Court recommends he be placed in. Should the Bureau be unable to accord with this Court's recommendations, a written response is requested.

**THE COURT:** Okay. Thank you very much. I -- I'm fine with the language and I agree up to the point where a written response is requested. Unfortunately, the BOP and I don't really get to communicate, and I can't ask them or the California folks to comply with an order like that. So I -- I would strike that last sentence, but I don't have a problem with the rest of it.

Any objection to that, Mr. Dolan?

**MR. DOLAN:** No objection.

**THE COURT:** Okay. Mr. Burton, any objection to that?

**MR. BURTON:** I have no objection to the remaining language, Your Honor.

**THE COURT:** Okay. All right. And, Mr. Burton, if you could forward that to Danielle so that she can make sure that that precise language, save for that last sentence, gets

into judgment?

**MR. BURTON:** Yes, Your Honor. I just did forward the e-mail with defense counsel cc'd.

**THE COURT:** Wonderful. Thank you very much.

Then, Mr. Ellis, is there anything else you need to add?

**MR. ELLIS:** No, Your Honor.

**THE COURT:** Okay.

**MR. ELLIS:** Beg your pardon, Your Honor. One last thing. I contacted the California Department of Corrections and, in particular, the state prison where Mr. Yoder was being housed prior [indiscernible] Nevada. And on Friday morning I sent a letter to [indiscernible] contact the Bureau of Prisons and make arrangements, if they could, for [indiscernible] in a federal facility [indiscernible]. And on Friday I got a phone call from the official [indiscernible] at the Bureau of Prisons [indiscernible] Yasco, I think Yasco [indiscernible] and I have to call her back this morning, but it's in the works.

**THE COURT:** So what you're telling me is it's your understanding that the California Department of Prisons is -- seems to be amenable to be this, and so they might be working on that?

**MR. ELLIS:** Yes.

**THE COURT:** Okay.

**MR. ELLIS:** Call them back and find out what the process and [indiscernible] --

**THE COURT:** Okay.

**MR. ELLIS:** It's up to the Bureau of Prisons whether they'll accept him.

**THE COURT:** Okay. Of course. Of course. Okay. All right. Well, thank you for that update.

All right. Let me ask the Government, is there anything else that I need to address?

**MR. BURTON:** The only last request the Government would have, Your Honor, is given that Mr. Ellis has appeared on record, we ask that he file a notice of appearance after this hearing for habeas purposes.

**THE COURT:** All right. Mr. Ellis, if you could please file a notice of appearance so that we have your -- your appearance for habeas -- potential habeas purposes.

Let me ask, Mr. Dolan, anything else to add? Anything else we need to --

**MR. DOLAN:** Nothing to add. Nothing to add. No objection to what you requested from Mr. Ellis.

**THE COURT:** Okay.

**MR. ELLIS:** Your Honor?

**THE COURT:** And nothing else to address; correct?

**MR. DOLAN:** Nothing else. Thank you.

**MR. ELLIS:** Your Honor, you want me to file a *pro hac*

*vice* motion also?

**THE COURT:** I'm sorry, I didn't understand you, Mr. Ellis. Say that again.

**MR. ELLIS:** -- file a *pro hac vice* motion? I'm not --

**MR. DOLAN:** I can't hear him.

**MR. ELLIS:** -- a Nevada attorney. I'm a California attorney.

**THE COURT:** At this point just a notice of appearance, please.

**MR. ELLIS:** Sure. I'll take care of it. Thank you, Judge.

**THE COURT:** Thank you.

Does Probation have anything else to add or anything to tell me that I missed?

**PROBATION OFFICER:** No, Your Honor. I believe you -- you have covered everything. Thank you very much.

**THE COURT:** All right, thank you.

All right. Mr. Yoder, I wish you the best of luck, sir.

**THE DEFENDANT:** I appreciate your willingness to listen to me and to understand the situation.

**THE COURT:** All right, sir. Good luck. Thank you, everyone. Defendant is remanded to the custody of the Marshal to await designation by the Bureau of Prisons. We are

adjourned.

**MR. DOLAN:** Thank you, Your Honor.

**THE COURT:** Thank you.

**MR. BURTON:** Thank you, Your Honor.

*(Proceedings adjourned at 12:38 p.m.)*

--o0o--

COURT REPORTER'S CERTIFICATE

I, AMBER M. McCLANE, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, do hereby certify that pursuant to 28 U.S.C. § 753 the foregoing is a true, complete, and correct transcript of the proceedings had in connection with the above-entitled matter.

DATED: 6/2/2021

/s/ Amber M. McClane
AMBER McCLANE, RPR, CRR, CCR #914

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
CHRISTOPHER BURTON
Nevada Bar Number 12940
ELHAM ROOHANI
Nevada Bar Number 12080
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Christopher.Burton4@usdoj.gov
Elham.Roohani@usdoj.gov

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DAVID YODER,<br><br>Defendant. | Case No.: 2:13-cr-00368-JAD-VCF<br><br>**Government's Response to Defendant's Sentencing Memorandum (ECF No.** |

**CERTIFICATION: The undersigned counsel acknowledges that this response is untimely**.[1]

## I. Introduction

[1] Defendant's sentencing memo was filed on January 8, 2021, less than five court days prior to the sentencing hearing scheduled for January 11. *See* LCR 32-1(d). Despite defendant's sentencing memo being untimely, the government does not move to strike it or request a continuance of the currently scheduled hearing, but instead requests only that this Court consider this untimely response to the same extent it considers defendant's sentencing memo. The government also reserves the right to supplement its written response with oral argument at the scheduled sentencing hearing.

Case 2:13-cr-00386-… Document 203 Filed 01/08/21 Page 2 of 11

Defendant John David Yoder, a pedophile who sought like-minded people through the website "boylover.org," found William Thompson, Noland Harper, and Erick Monsivais. The four individuals then conspired to establish a child exploitation enterprise whereby they would lure young prepubescent boys to an apartment, paid for by Yoder and inhabited by Thompson, to sexually abuse them and produce child pornography. The defendants then distributed the child pornography they produced online via paid websites. During this same time, Yoder sexually abused an autistic 11-year-old child over whom he had been granted a temporary guardianship. As a result of these egregious crimes, and pursuant to the binding plea agreement, Yoder should be sentenced to twenty years' incarceration, followed by lifetime supervision with all of the conditions listed in the presentence investigation report to be imposed.

## II. Factual Background

In 2013, Yoder met his co-defendant Thompson over the "boylover.org" website, an internet site that is dedicated to various discussions related to pedophilia.[2] At the time they met, Thompson was charged with various child pornography offenses in the District of Nevada and had been placed on house arrest.[3] Yoder helped Thompson break off his ankle bracelet and abscond to California, where Yoder paid for Thompson to stay in an apartment under the assumed name "Jason Brock."[4] Yoder also provided a vehicle to Thompson.[5]

Thompson, together with Yoder, then began attempting to recruit underage boys at a local skate park to join a fictitious competitive scooter club that Thompson claimed he

---

[2] *People v. John David Yoder*, 2018 WL 3062233, *1 (Cal. 2018).
[3] Presentence Investigation Report ("PSR") at ¶ ¶ 11-14.
[4] *Id.* at ¶ 15; *Yoder*, 2018 WL 3062233 at *1.
[5] PSR at ¶ 17.

intended to sponsor.[6] Yoder introduced Thompson to at least one of the friends of an autistic child for whom Yoder maintained a guardianship.[7] In an act of ultimate betrayal, Yoder sexually abused the child in his care.[8]

The underage boys who agreed to join Thompson's "team" would then go to Thompson's apartment, where they were sexually abused by Thompson, Monsivais, and Noland Harper.[9] Child pornography images and videos were also produced at the same apartment.[10] Throughout this time, Yoder continued to pay for Thompson's apartment. On at least one occasion, Yoder was present and engaged in sexual acts with a child while recording it.[11] Yoder also assisted in the distribution of child pornography images that Thompson produced.[12] In addition to paying for Thompson's apartment, Yoder offered up his own home as a "safe place" for his co-conspirators to sexually abuse their victims.[13]

As a result of these offenses, all of the above-named co-conspirators were arrested. Yoder was placed into state custody and proceeded to trial.[14] After being found guilty, he was sentenced to 24 years in prison. [15] He appealed his conviction and lost.[16] He was transported to this District to stand trial for his federal crimes. Erick Monsivais was likewise placed into state custody.[17] He pleaded guilty and agreed to cooperate against all

---

[6] *Yoder*, 2018 WL 3062233 at *1-2.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at *2, PSR at ¶ 21.
[12] *Id.* at *1-2, PSR at ¶ 22.
[13] *Id.*
[14] *Yoder*, 2018 WL 3062233, at *1.
[15] *Id.*
[16] *Id.*
[17] *Id.* at *1-2.

of the co-defendants charged in the State case.[18] Thompson was arrested federally and ultimately pleaded guilty to various federal child pornography offenses, including child exploitation enterprise, pursuant to a binding plea agreement and received a sentence of 354 months (29½ years), followed by lifetime supervision.[19] Noland Harper was arrested federally and pleaded guilty to child exploitation enterprise in the Eastern District of Virginia and received a sentence 292 months, followed by five years of supervised release.[20]

**III. Points and Authorities**

Pursuant to the binding plea agreement in this case, the government recommends that Yoder be sentenced to 240 months, to run concurrent with his sentence in RIF1501674, and a lifetime term of supervised release to follow with all of the terms listed in the presentence investigation report to be imposed. This sentence is "sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment."[21] This sentencing recommendation is also based on a consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants,

---

[18] All of the co-conspirators identified above are charged in the California state case. *See People v. John David Yoder*, Case No. RIF1501674.
[19] ECF Nos. 141, 155. Thompson was thereafter transported to California to face the state charges.
[20] *United States v. Noland Anthony Harper*, Case No. 3:15cr36-001, ECF Nos. 63, 223. Harper was thereafter transported to California to face the state charges.
[21] *United States v. Carry*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

and the need for victim restitution.[22] After analyzing these relevant factors, the Court should impose a 240-month sentence.

First, a 240-month sentence, concurrent with Yoder's state sentence, fulfills the intent of the parties as expressed in the written plea agreement. The parties agreed to jointly recommend a sentence of 288 months (in itself a substantial variance from the guidelines range of life imprisonment) and also agreed to recommend that Yoder receive federal credit for the time he has spent in state custody as a further variance.[23] Accounting for that credit reduces Yoder's sentence to the mandatory statutory minimum sentence for child exploitation enterprise: 240 months.[24]

Although Yoder contends, multiple times, that the parties intended that his federal sentence be "coterminous" with his State sentence, he conveniently elides relevant context to give a clear picture of the parties' intentions.[25] From early on in the case, the government negotiated in good faith with defendant in an effort to reach an agreement that would not result in Yoder serving any additional federal time beyond his state sentence. Repeatedly, the government advised Yoder prior to entering his guilty plea that it would not and could not recommend a sentence lower than twenty years. Indeed, Yoder himself acknowledged in the very plea agreement he now asks this Court to follow that he "**understands that he cannot and will not receive a sentence that is lower than 20 years**

---

[22] 18 U.S.C. § 3553(a).
[23] ECF No. 173, pp. 13-14.
[24] *See* 18 U.S.C. 2252A(g) ("Whoever engages in a child exploitation enterprise shall be fined under this title and imprisoned for any term of year *not less than 20* or for life.") (emphasis added).
[25] The government does not provide the facts concerning negotiations in an effort to involve this Court in the plea discussions that occurred in this case (*see* Fed. R. Crim. P. 11(c)(1)), but instead feels compelled to correct the record pursuant to its duty of candor to the Court.

**in prison.**"[26] Repeatedly, the government advised Yoder that it was in his best interest to plead guilty early in the case and to move to sentencing in short order. But instead of taking heed of the government's advice, Yoder chose to delay negotiations to quibble with the facts supporting his guilty plea over the course of several months.

Then, because he had wasted so much time, after Yoder entered his guilty plea, the government advised him numerous times that it was in his best interest to proceed to sentencing in this case expeditiously, given the terms of the plea agreement and the mandatory minimum sentence he faced. Instead, Yoder again chose to nitpick through the presentence investigation report, making unfounded objections bordering on breaching the plea agreement. Only because of extensive conversations between the government and his counsel has Yoder thus far narrowly avoided breaching the terms of his agreement.[27] As a result, through Yoder's own actions and decisions, he now bemoans the fact that his sentence in this case will certainly result in his serving additional federal time. Any blame lies squarely with Yoder, and Yoder's unilateral mistake is not within this Court's capacity to remedy. However, to give meaning to the parties' intent as expressed in the written plea agreement, this Court should sentence Yoder to 240 months, and a lifetime term of supervised release.

Secondly, following the parties' recommendations in this case would also give appropriate weight to sentences imposed on the other co-conspirators in this case.

---

[26] ECF No. 173, p. 12 (emphasis in original).

[27] The desire to spare the victims in this case the humiliation of having to testify at trial about their sexual exploitation animated the government's unending patience in this case. This Court already saw at Thompson's sentencing the destructive effect the actions of the co-conspirators has had on the children involved. The children are still taunted by pedophiles owning pictures of their darkest days. The agreement in this case carefully balanced all these considerations.

Thompson was the ringleader of the child exploitation enterprise at issue and the most culpable. This is especially true when this Court considers that Thompson led the child exploitation enterprise while absconding from another criminal case in which he produced child pornography.[28] This Court sentenced Thompson to 354 months (29½ years), followed by lifetime supervised release.[29] Harper, who was 61 at the time of his sentencing and primarily handled the distribution of the child pornography that Thompson produced and also sexually abused some of the victims, was sentenced to 292 months, followed by five years of supervised release.

In comparing Yoder's conduct in this case with Thompson and Harper, the parties negotiated sentencing recommendation of 288 months custody (before the credit for state custody) is appropriate and avoids sentencing disparities. Further, the parties' agreement to credit Yoder's federal sentence for the time he has spent in state custody to the extent it is possible is consistent with the guidelines.[30] As such, the negotiated term of imprisonment should be imposed in this case.

Yoder provides as an exhibit a report completed in connection with his state hands-on prosecution.[31] That report includes a summary of Yoder's Static-99R assessment. However, this Court should not consider that assessment in this case. In the Coding Rules of the Static-99R, the authors indicate the Static-99R is not recommended in child pornography cases.[32] Additionally, the other significant problem with the Static-99R assessment is that it is calibrated on an absurd definition of recidivism. The same Coding

---

[28] *See* PSR at ¶ ¶ 11-14.
[29] ECF No. 155.
[30] *See* USSG 5G1.3(b).
[31] ECF No. 202, Ex. C.
[32] *See Static-99R Coding Rules Revised - 2016,* pp. 12-13.[32]

Rules define recidivism as "a new charge or conviction for a sex offense."[33] The criterion also indicates that half of the samples included in the normative data to develop the Static-99R scale was taken solely from convictions. As Judge Posner has noted, "[e]stimates of recidivism are bound to be too low when one is dealing with underreported crimes such as sex offenses."[34] Determining recidivism from charges and convictions misses the point, as the concern is and should be with *commission* of subsequent sex crimes, whether or not the offender is caught.[35] As such, the Static-99R on which Yoder relies is deeply flawed and should not be considered by this Court in imposing sentence.

Because Yoder has failed to meet his burden to show that these reports and the tests they rely upon have any indicia of reliability to support its probable accuracy, the Court should disregard or give no weight to any of the reports.[36] For example, Yoder includes a "Psycho-Social" Report written by a "veteran" with of the San Bernardino Probation Department which was submitted as part of his state case.[37] The report at Exhibit D concludes that Yoder is a "low risk" to reoffend.[38] However, the report is wholly devoid of any explanation as to the author's qualifications to come to such a conclusion based solely on his review of the trial transcripts, Yoder's work performance evaluations, interviews with Yoder and his family and friends, and an unspecified "psychologist's report." Interestingly, the report included as Yoder's Exhibit C specifically states that "[a]ccurate prediction of the risk of reoffense requires use of a risk assessment instrument based on research studies

---

[33] *Id.* at p. 7.
[34] *United States v. McIlrath*, 512 F.3d 421, 425 (7th Cir. 2008) (J. Posner).
[35] *Id.*
[36] USSG § 6A1.3.
[37] ECF No. 202, Ex. D.
[38] *Id.*

which followed released sex offenders and identified factors associated with those who reoffended," and "[r]esearch shows that the opinion of a professional after interviewing an offender is not an accurate way to predict whether a sex offender will reoffend."[39] In a normal case, the government would demand Yoder produce the underlying material associated with these reports as well as the make the people who prepared the reports available for cross-examination so that the government could lay bare the utter uselessness of these tests in this type of case. However, because these reports are so patently useless on their face, and given the parties are both recommending the Court impose the mandatory statutory minimum sentence, the government only requests that the Court disregard or give them no weight at the time of sentencing.

The government also requests this Court imposed the agreed-upon lifetime term of supervised release. Given Yoder's conduct in this case, it is important that he remain supervised for the rest of his life following any release from custody. Yoder's involvement in the pedophilia culture and his successful efforts to identify and conspire with other like-minded individuals is especially concerning and warrants a lifetime term of supervised release. Moreover, Yoder's propensity to lure children with developmental disabilities under the guise of providing those children with care only to sexually abuse them demands that Yoder be monitored closely for the remainder of his natural life.

The government also asks that this Court impose all of the proposed conditions of supervised release included in the PSR. The government notes that proposed condition seven prohibits Yoder from having direct contact with any child he knows or reasonably should know to be under the age of 18, including his own children, without the permission

[39] ECF 202, Ex. C.

of his probation officer. To prohibit Yoder's contact with his own children, this Court must make specific factual findings that the condition is appropriately tailored to accomplish one or more of the factors listed under 18 U.S.C. 3583(d)(1).[40] Here, the government submits that the fact that Yoder sexually abused an 11-year-old autistic child and used that child to help lure and entice other minor children all while Yoder was the victim's legal guardian warrants imposition of the condition as proposed. This is especially appropriate given Yoder's letter to this Court, in which he minimizes his involvement in this case and even unabashedly attempts to paint himself as a savior who sought to help society's "throw away" children and "troubled" boys.[41] In fact, Yoder is every parent and child's worst nightmare. Given Yoder's conduct in this case, he should not have unmonitored access to even his own natural children.[42]

---

[40] *United States v. Wolf Child*, 699 F.3d 1082, 1091-92 (9th Cir. 2012).
[41] ECF No. 202, Ex. B.
[42] The government notes and acknowledges that as of this time, Yoder does not have any natural children, but has two adult children whom he adopted. PSR at ¶ 84-87.

Case 2:21-cr-00038 Document 23 Filed 01/09/21 Page 11 of 11

**IV. Conclusion**

An examination of the factors under 18 U.S.C. 3553(a), including the nature and circumstances of the instant offense, the history and characteristics of Yoder, the applicable sentencing guideline range, any pertinent policy statement, and sentences imposed on other similarly situated defendants, warrants imposition of the sentence recommended by the parties in this case. Thus, the government asks that this Court accept the binding plea agreement and sentence Yoder to 240 months incarceration, concurrent with his state case, with a lifetime term of supervised release to follow.

Dated this the __9th____ day of January 2021.

Respectfully Submitted,

NICHOLAS A. TRUTANICH
United States Attorney

/s/ *Christopher Burton*
CHRISTOPHER BURTON
Assistant United States Attorney

**John Patrick Dolan**
45-290 Fargo Street
Indio, CA 92201
760-775-3739
dolanlawoffices@gmail.com
Attorney for Defendant
JOHN DAVID YODER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOHN DAVID YODER,<br>Defendant. | CASE NO. 2:13-CR-000368-JAD-VCF<br><br>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING** |

Defendant JOHN DAVID YODER, by and through undersigned counsel, hereby provides this honorable Court with the instant Memorandum in Aid of Sentencing. For the reasons set forth below, and consistent with the Plea Agreement, Mr. Yoder respectfully requests that this Court sentence him to no greater than 240 months' imprisonment, as calculated with the variance credits, to run concurrent with his current California state sentence, a lifetime of supervised release, restitution as agreed upon in the Plea Agreement, and no fine.

Dated: January 7, 2021

JOHN PATRICK DOLAN

[signature]

JOHN PATRICK DOLAN
Attorney for Defendant
JOHN DAVID YODER

## MEMORANDUM IN AID OF SENTENCING

As set forth on page 14 of the Plea Agreement,

> [T]he parties make a binding recommendation that the defendant be sentenced to 288 months in custody. The parties also agree to recommend this sentence be served concurrently with the sentence the defendant is currently serving in *People v. David Yoder*, Riverside Superior Court case no. RIF1501674. Additionally, the parties agree to jointly recommend that the defendant be given credit for the time he has been in custody starting from April 14, 2015, and that ***any credit be accounted for pursuant to a variance***. The USAO agrees to not oppose the defendant's request to serve both his state and federal sentences in federal prison.

(Emphasis added).

As of January 11, 2021, Mr. Yoder will have accumulated **5 years, 8 months, 29 days (69.0 months)** of credit under this provision of the Plea Agreement none of which will be credited toward Mr. Yoder's federal sentence. *See* 18 U.S.C. § 3585(b)(2) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed[] *that has not been credited against another sentence*.") (Emphasis added); *see also* Hank Sadowski, Former BOP Regional Counsel, *Federal Sentence Computation Applied to The Interaction of Federal and State Sentences*, Champion 38 (Apr. 2014) ("Section 3585(b) prohibits prior custody credit when the time in custody was awarded towards another sentence. . . . Location of presentence detention (federal, state, or foreign) is not relevant in deciding whether prior custody credit will be awarded.") (Footnotes omitted). To account for this, the parties stipulated to a downward variance. However, to fully account for Mr. Yoder's prior custody credit against the 288-month sentence—as the parties intended—would require the Court to vary below the 20-year (240-month) mandatory minimum sentence, which this Court might not have the authority to do. Accordingly, while an imperfect resolution of what the parties intended, this Court should impose no more than the 20-year mandatory minimum term of imprisonment.

**To be sure, the Court should be aware that in negotiating the Plea Agreement, the parties intended that Mr. Yoder's federal sentence would be served concurrently with his state sentence *and* co-terminate with the same.** Unfortunately, despite the fact that Mr. Yoder's state offense is relevant conduct to his federal matter, he is precluded from receiving any credit toward his federal sentence for the time he has been serving on the state matter. *See* 18 U.S.C. § 3585(b)(2); Sadowski, *supra*. Per the California Department of Corrections, Mr. Yoder's state sentence is projected to terminate in March 2034. Thus, should this Court impose a 20-year sentence concurrent with his state sentence, Mr. Yoder will still be required to serve approximately 3.6 additional years in federal custody over and above the expiration of his state sentence—and that is so even assuming Mr. Yoder receives full good conduct time credit. He will thus have served a total of over 22.7 years in state and federal custody for his offense conduct,[1] inclusive of good conduct time credit. This, again, is not the result the parties intended; they intended that the sentences run concurrently *and be coterminous.*[2]

A 20-year sentence is, of course, a significant sentence, but is not greater than necessary to achieve the statutory purposes of sentencing (even if it results in a greater length of total imprisonment than what the parties intended) and does not create an unwarranted sentencing disparity. The graph below illustrates the sentencing distribution in select sentencing ranges for similarly situated individuals and was derived from the U.S. Sentencing Commission's publicly available datafiles spanning fiscal years 2006 through and including 2019.[3] According to the Commission's sentencing data, there were 209 individuals sentenced under USSG §2G2.2, with a Total Offense Level (TOL) of

[1] This calculation takes into account that Mr. Yoder was first arrested on January 30, 2015 (PSR at 2) and assumes he will be released on or about November 2, 2037 with full good conduct time credit.

[2] In point fact, upon information and belief, in order to achieve the intent of the parties the federal sentence would have to be no greater than 184 months in order to be conterminous with the state sentence.

[3] *See* U.S. Sentencing Commission, Datafiles (2006-2019), available at https://www.ussc.gov/research/datafiles/commission-datafiles.

43, and who did *not* receive government-sponsored motion for a departure.[4] As indicated by the yellow column, exactly 35 of the 209 individuals received a sentence of at least 240 months but no greater than 300 months. Exactly 37 received a sentence less than 240 months, and 137 received a sentence of at least 300 months or greater.




Of course, these data do not include any sentences imposed in the age of COVID-19. Preliminary indications are that federal sentences are dropping dramatically both in frequency and severity. *See* Prof. Douglas Berman, "US Sentencing Commission Releases Data Revealing COVID's Impact on Federal Sentencings," Sentencing Law and Policy Blog, Oct. 27, 2020 ("latest USSC data show that the number of sentences imposed in the first COVID quarter (April to June 2020) dropped about 40% and the length of the sentences imposed in this period drop over 20%"), at

[4] While Mr. Yoder is in Criminal History Category (CHC) V, *see* PSR at 15, ¶ 70, it does not affect his Guideline sentence, which is the same for all those with a TOL of 43 regardless of CHC. Accordingly, this analysis includes offenders of all CHCs.

https://sentencing.typepad.com/sentencing_law_ and_policy/2020/10/us-sentencing-commission-releases-data-revealing-covids-impact-on-federal-sentencings.html.

Reinforcing the seriousness of the sentence is the fact that, per the Commission's latest Quarterly Data Report covering the period from October 1, 2019 through June 30, 2020, a sentence of 240 months is over twice the average sentence imposed on child pornography offenses generally (102 months), is significantly greater than the average (200 months) and median (180 months) sentences for sexual abuse, and is even greater than the median sentence imposed for murder (238 months). *See* U.S. Sentencing Comm'n, Quarterly Data Report-3rd Quarter, tbl. 6 (Oct. 2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_ Report_3rd_FY20.pdf.

Finally, given the deleterious effects of extended incarceration on life expectancy, there is a high likelihood Mr. Yoder will die in prison if not from the coronavirus,[5] then as a result of a reduced life expectancy. According to a published, peer-reviewed study by Dr. Evelyn J. Patterson, there is, on average, "a 2-year decline in life expectancy for each year served in prison."[6] Dr. Patterson's findings, to be sure, are consistent with findings by the U.S. Department of Justice itself.[7]

Mr. Yoder is currently 49.7 years of age. According to the Social Security Administration, he has 32.1 years of life left, i.e., he is expected to live to 81.8 years of age.[8] This estimate, of course, does

---

[5] See Evelyn J. Patterson, *The Dose Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 Am. J. Pub. Health 523 (2013), available online, https://ajph.aphapublications.org/doi/abs/10.2105/AJPH.2012.301148 (cited favorably in *United States v. Jenkins*, 854 F.3d 181, 186 n.2 (2d Cir. 2017); *People v. Contrearas*, 4 Cal. 5th 349,362-63 (Cal. 2018); *People v. Wines*, 323 Mich. App. 343, 351 n.6 (Mich. 2018)).

[6] *Id.* at 523.

[7] U.S. Dept. of Justice, Nat. Inst. of Corrections, *Correctional Health Care: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates* 9-10 (2004), https://s3.amazonaws.com/static.nicic.gov/Library/018735.pdf (stressing that incarceration intensifies health problems of elderly inmates and accelerates aging processes).

[8] *See* Social Security Administration, *Retirements & Survivors Benefits: Life Expectancy*

not take into consideration the extended term of incarceration facing Mr. Yoder. Accordingly, the chart below applies Dr. Patterson's finding that two years of life expectancy are lost for every year of imprisonment to Mr. Yoder. Assuming a life expectancy of 81.8 years in 2020 and reducing it by two years for every year of incarceration, ***Mr. Yoder likely will not survive a 20-year sentence.*** And this is without taking into consideration the additional, deleterious effects of COVID-19.




*Calculator*, https://www.ssa.gov/cgi-bin/longevity.cgi (last visited July 23, 2020).

Defense Counsel requests that the Court take into consideration several factors regarding Mr. Yoder's background and behavior prior to final sentencing.

Mr. Yoder has <u>no criminal record</u> prior to his convictions in state court for the charges related to the instant case. He accepts responsibility for his actions and is hopeful to have the opportunity to participate in a federal prison sex offender treatment program. He acknowledges that while he himself did not participate in the production of child pornography, nor was any pornography found on any of his digital devices, his association towards and actions with his co-defendants rightfully resulted in the charges he pleads guilty to in the negotiated agreement before this Court.

During his over five years of incarceration thus far, Mr. Yoder has had no disciplinary actions against him. He has been a model inmate and there is no reason to believe that this behavior will change in the future. He has completed several programs while in federal custody **(EXHIBIT "A")**. He is anxious to participate in every program he is eligible for while in the custody of the Bureau of Prisons in order to better himself, ensure that there will be no inappropriate or illegal behavior upon his release and to prepare for his life outside of prison. The AUSA has agreed that they will not oppose a judicial recommendation that Mr. Yoder be housed in a federal prison to serve his concurrent sentences.

Mr. Yoder has strong family support which is shown in the attached letters of support from his uncle and his now deceased mother. He has also drafted a letter to the Court to provide a brief background and explanation of his involvement in the case at hand. **(EXHIBIT "B")**

It is of important note that Mr. Yoder was scored for a Static-99R test on March 17, 2016 and the results placed him in the low-moderate risk assessment level for reoccurrence. **He was given a 6.6 percent chance of reoffending within 5 years**. **(EXHIBIT 'C')**

In addition, Mr. Milt Sheetz, a former 26 year probation officer with the San Bernardino County Probation Department, prepared a psycho-social report. He determined that *"...It is not believed that the defendant's character is of a predatory nature or that he is a danger to the community."*

Mr. Sheetz referenced a report by clinical and forensic psychologist, Dr. Michael Kania. Dr. Kania completed an evaluation of Mr. Yoder on December 23, 2016, to determine his potential danger to the community and likelihood to reoffend and stated *"I am of the opinion that the likelihood that he would have been involved in inappropriate sexual behavior such as that charged, or that he would offend in the future, is extremely low. Certainly, his involvement with Boylover.org and his subsequent association with the other men charged, raise questions with regard to judgment."* **(EXHIBIT "D")**

WHEREFORE, in light of the above, Mr. Yoder respectfully requests that this honorable Court impose a sentence of no more than 240 months imprisonment as calculated with the variance credits, lifetime supervised release as agreed upon by the parties in the binding Rule 11(c)(1)(C) Plea Agreement; restitution as agreed upon in the Plea Agreement, and no fine. Mr. Yoder further requests that the sentence be ordered to run concurrently with his state sentence as also agreed upon in the Plea Agreement.

Dated: January 7, 2021

JOHN PATRICK DOLAN

JOHN PATRICK DOLAN
Attorney for Defendant
JOHN DAVID YODER

# EXHIBIT “A”

CoreCivic

# Certificate of Participation

*This is to certify that*

*John David Yoder*

*has satisfactorily completed the requirements prescribed for*

*Building Self Esteem*

*Given on this, the* 29th *day of* April *, Two Thousand and* Twenty

Warden

Authorizing Person

Certificate printed in blue, red, and black on security paper; security feature on face and back

Certificate printed in blue, red, and black on security paper; security feature on face and back

8040-H

CoreCivic

# Certificate of Participation

*This is to certify that*

*David Yoder*

*has satisfactorily completed the requirements prescribed for*

*Victim Impact*

*Given on this, the* 8th *day of* June *, Two Thousand and* Twenty

Warden

Authorizing Person

Certificate printed in blue, red, and black on security paper; security feature on face and back

Certificate printed in blue, red, and black on security paper; security feature on face and back

8040-H

# EXHIBIT "B"

December 13, 2019

Hon. Jennifer A. Dorsey
U.S. District Court , District of Nevada
Courtroom 6D
333 Las Vegas Blvd.
Las Vegas, NV 89101

Re: USA v Thompson et al
2:13-cr-00368-JA-VCF-2

Your Honor,

I am writing you regarding the plea that is before you in my case. I hope that I can adequately express my remorse as well as to put into context my participation in these crimes.

I was raised in a good family by most standards. My grandfather was an Administrative Law Judge in Washington, DC. My father was head of electronic research for the Naval Department and my mother a concert pianist and piano teacher. I was not physically abused as a child; however, I did suffer almost a complete lack of affection from both parents, especially my father. I have always felt a bit of an outcast and became determined to try to help children who had challenging circumstances such as my own, or worse.

As a gay man, I have always been involved with adult, long term relationships. I was vetted for the foster care of difficult children along with my partner, Stan Snider, and sixteen years ago adopted my now 23 year old son Cody. I also adopted my son Daniel after the court found that even with multiple eligible family members, not one of Daniel's birth family would agree to take this troubled boy in. I continued to help the "throw away" children that no one wanted as a foster parent from 2007-2015 in Riverside County. I have been vetted and carefully monitored as a foster parent from 2002-2015. In addition, I worked with children in special education services as an aide in Desert Hot Springs.

I came to know William Thompson through a friend who sold him custom shoes for modeling shoots. I was only aware that the photo shoots were "shirtless" but not child erotica or pornographic. I was invited to go to Mr. Thompson's beach house with my entire household including my son Cody, his friend Anthony (16) and younger brother Gabriel (14). This is the first time I met Mr. Thompson. I was wined and dined, and the boys were taken to arcades and given souvenirs and surfing clothes. I must admit that I did not have many friends and my life revolved around parenting my boys. The idea that a "big time" photographer was interested in me and my family was very flattering and a break from our ordinary routine. Anthony and Gabriel started modeling for Thompson. I have never seen them model without being clothed.

Thompson later gave me a long story about being in the middle of a messy divorce and needing a place to stay anonymously so that his wife could not locate him. He had decided to

stay in Desert Hot Springs, CA. In September of 2013, I rented an apartment in my own name for Mr. Thompson, on a six month lease. I also registered a car for him in my own name, again under the guise that he was hiding out from his wife who was trying to ruin him. He told people his name was Jason Brock, that I was his brother, and that he was from Florida. He represented himself to the parents of the children he met as a legitimate photographer who works with sports sponsors and advertisers. He seemed legitimate to them and to me as well. Only much later did I find out that his request to me to rent the apartment came only two days before his first federal indictment. He never personally shared this with me.

Thompson never showed me his pornographic photos or videos. The only time that I saw any pornography was during my state trial when the prosecutor showed photos and a video of some of Thompson's victims that *I had never seen before and was not present for the shooting of.* Please note that no child pornography was found on any of my digital devices and I have no search history of such.

My greatest mistake was what I did upon learning of Mr. Thompson's secret. When I found that his modeling gig was a ruse and in fact, he was a child molester and pornographer, I did nothing. It is inexcusable as a twice mandated reporter (foster parent and educator) that I failed to report Thompson and Harper's activities the moment I became aware of them. I am filled with shame and remorse that I did not act. I think about this daily and cannot believe that I allowed my own fear to control me. I simply allowed Thompson to bolt out of town as a fugitive and I wanted to put the horrors of what I now knew behind me, like a coward. I am deeply regretful and remorseful that I did this.

Your honor, I accept responsibility for my transgressions that clearly were an aid and benefit to Thompson and allowed him to exploit and harm children. I pledge to you that I will never in my lifetime fail to act to protect a child and will never harm a child myself.

I pray that you will consider my request to be placed in a Federal Prison with a sex offender program, should I be deemed appropriate by the proper persons in the Bureau of Prisons.

In addition, it has been brought to my attention that the Court has received several letters, allegedly on my behalf. I assure you that these letters from both Phil Neri and Attorney's Carter & Bashoff are not endorsed by me and in no way reflect my opinion. I have contacted Mr. Neri and told him never to send the Court another letter "on my behalf". It is my desire for the Court to accept my plea, unlike the opinions expressed in the letters.

Thank you for your consideration and time in reviewing this letter and the additional materials I have submitted to the pre-sentencing officer.

Respectfully,

John "David" Yoder

GATEWAY SEMINARY

Biblical - Missional - Global

December 26, 2020

Honorable Jennifer A. Dorsey, Judge
US District Court
District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

Judge Dorsey,

I am writing on behalf of John David Yoder as his Uncle with a plea from his family for your help in obtaining equity, justice and fairness in David's sentencing in the matter of case no 2:13-CR-000368-JAD-VCF.

David's father, who was in charge of electronic research for the U.S. Navy for over thirty years, passed away this May. His mother, my sister, Carol Yoder is in a care facility and not in a position to make this request. David's grandfather – a Federal Administrative Law Judge – has also passed away. Consequently, I am writing on behalf of David's family to ask for your considered review of the charges and consequent time of incarceration for David – that it be fair, equitable, proportional and constructive.

I ask for equity, fairness, proportionality and justice in David's sentencing and physical incarceration. David understood that in agreeing to the current plea he would be receiving a sentence concurrent with his state sentence and that he would be given credit for his pretrial incarceration. He has served much of that time in protective custody which has essentially been solitary confinement.

I am asking that your charges and recommendations reflect the agreement as it was understood, and that David be allowed to serve out his Federal sentence coterminous with the state sentence. I understand that the Federal Bureau of Prisons may interpret the plea agreement contrary to the spirit entered into by the parties - namely that David's 24 year sentence include six years variance credit for time already served.

Furthermore, in light of the severity and horror of David's co-defendant's crimes, and the more peripheral involvement that David engaged in, David's penalty should certainly not exceed theirs (I understand that co-defendant Harper – an active perpetrator and culpable of exponentially greater harm - was sentenced to only one count and 24 years.)

In light of these circumstances, David's family is asking for fairness, equity, proportionality and justice. We are confident you will stand with us in this. We are asking that what David understood to be the spirit and goal of the plea – what he tells me is clearly stipulated and written into the plea itself - namely, that David's federal sentence by served concurrently with the State's in order to achieve a similar exit date with his state sentence – be honored in his final sentencing.

David's family is particularly hopeful that David be allowed to serve his time in Federal custody where his safety can be more effectively assured and where he will have access to greater remedial help and programs.

Thank you, in advance, for your consideration and for the difficult work you do in pursuing justice and equity for all parties involved.

Sincerely,

John Shouse, M.Div., S.T.M., Ph.D.
Senior Professor of Christian Theology
Gateway Seminary
JohnShouse@aya.yale.edu
415-419-7611 (cell phone)

*Carol Yoder*
*Arbor Terrace of Johns Creek*
*3180 Karen White Drive*
*Suwanee, GA 30023*

January 7, 2020

The Honorable Jennifer A. Dorsey
United States District Judge
333 Las Vegas Boulevard South
Las Vegas, Nevada 89191
Reference Case : USA versus Thompson et al

Dear Judge Dorsey

I am writing to ask your consideration to recommend that my son, John David Yoder, serve out his sentence in Federal custody where he can receive therapy and have access to remedial programs.

I know David has a caring heart. He is generous, sensitive, thoughtful, and freely gives to others. When I was recovering from a back injury David took over the cooking in our home and became a very, very good cook. Years later, I went to a school with him and it was obvious that others on the staff admired his dedication to be a good teacher and his bringing out the best in students. David has worked long and tirelessly to help others. He has been a dedicated teacher and foster parent. He has worked to allow students to achieve their full potential.

As his Mother, I ask you to recommend that my son serve his sentence in Federal custody with the remedial and therapeutic resources that custody there would afford him. I ask that you render a sentence that will allow David a constructive environment. In a situation where so much harm has occurred, I pray that you may find it in your wisdom now to recommend a path that would allow for constructive resources and programs for my son that are available in federal custody.

I grieve for the sorrow that has happened and mistakes that were made. With all my heart, as a mother, I ask you to allow for David to have access to resources for help and counseling that would be part of federal incarceration.

Sincerely,

Carol Yoder

CJY/jws (dictated by Carol Yoder but editing help and help in preparation given in her presence by Carol Yoder's brother, John Shouse)

# EXHIBIT "C"

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
MAR 25 2016
Maria Lujan

BW
MAR 29 2016
BA

# MEMORANDUM TO THE SUPERIOR COURT OF CALIFORNIA COUNTY OF RIVERSIDE

| | | | |
|---|---|---|---|
| TO: | THE HONORABLE W. CHARLES MORGAN<br>JUDGE OF THE SUPERIOR COURT | REGARDING: | JOHN DAVID YODER<br>A498898 |
| DEPT: | B301 | ATTORNEY: | W. ROBINSON (DDA)<br>J. DOLAN (PVT) |
| FROM: | GEORG FREITAG<br>SENIOR PROBATION OFFICER | COURT NO.: | RIF1501674 |
| COURT DATE: | APRIL 29, 2016, 8:30 A.M. | SUBJECT: | STATIC 99-R |

On February 17, 2016, the defendant was convicted of four counts of 288(a) PC (Lewd Act on Minor under 14 Years of Age), two counts of 266j PC (Transport Minor under 16 Years of Age for Lewd or Lascivious Act) a felony, two counts of 236.1(c) PC (Human Trafficking of Minor), one count of 32 PC (Accessory to Crime), and one count of 182(a)(1) PC (Conspiracy to Commit Felony), all felonies. The matter was referred to the Probation Department for the completion of a Static-99R assessment pursuant to Penal Code Sections 1203e and 290.06.

The required information needed to score the Static-99R was gleaned from District Attorney's Office Report #DAI2015027009 and supplemental reports, as well as a personal interview with the defendant on March 1, 2016.

Accurate prediction of the risk of reoffense requires use of a risk assessment instrument based on research studies which followed released sex offenders and identified factors associated with those who reoffended. Predictions of which sex offenders will reoffend are improved significantly when validated actuarial instruments are used to estimate risk. An actuarial instrument is a list of risk factors that when present increase the risk of sexual reoffense. Each item is statistically weighted for its contribution to overall risk. A total score, level of risk and probabilities of risk for offenders five and ten years after release can be determined. The Static-99R is the most widely used such instrument. Many research studies have proven its predictive accuracy. Research shows that the opinion of a professional after interviewing an offender (known as unstructured clinical judgment) is not an accurate way to predict whether a sex offender will reoffend.

There have been a large number of studies examining the sexual recidivism rates associated with Static-99 scores. Helmus, Hanson & Thornton (2009) summarized the results of 23 samples of sexual offenders (number of offenders in studies = 8,139) drawn from different countries including Canada, the United States, New Zealand,

ORIGINAL

United Kingdom and Western Europe. Sexual re-offense on the Static-99R should be considered a measure of reconviction. These recent studies found that the ability of Static-99R to rank relative risk is reasonably consistent across samples and settings, but the observed recidivism rates vary across samples. Specifically, the average recidivism rates associated with each score are lower in contemporary samples (1990's and more recent) than in the samples used in the development of Static-99, which involved offenders who were primarily released during the 1970's and 1980's. Consequently, the developers of the Static-99 recommended that the original norms be replaced by new norms based on samples that are more recent, more representative, and larger than the original samples. This was completed in a 2009 update of the recidivism rates that now applies to scores from -3 to 10+.

The defendant, **John David Yoder**, was scored on the Static-99R, which is an actuarial measure of risk for sexual offense recidivism. This instrument has been shown to be a moderate predictor of sexual reoffense potential. The defendant received a total score of **3**, which places him in the **Low-Moderate** Risk Category for being convicted of another sexual offense, if he is released on probation. His risk on release from a prison sentence cannot be calculated until his age on release on parole is known, so the risk score stated herein is predictive of risk based on his age on the date of this pre-sentencing report. If the defendant has a prior conviction for a registerable sex offense, his risk score was calculated based on his age at release on the most recent registerable sex offense, or his age today if he had no prior registerable sex offense. There was a 2009 update of the recidivism rates that now applies to scores from -3 to 10+. The defendant scored a **3** on the Static-99R. The estimated risk for this score on the Static-99R is **6.6%** over five years.

Risk factors which are not measured by the Static-99R can raise or lower risk. These include things like substance abuse, personality disorder, deviant sexual interests, emotional identification with children, and self-regulation problems. A sex offender in a mandated treatment program will be assessed by a certified treatment provider using dynamic and violence risk assessment instruments designated by the SARATSO Committee. The combined risk will be used to determine appropriate levels of supervision and treatment.

///

**CREDIT FOR TIME SERVED:**

| | | |
|---|---|---|
| Local Time | 456 | days |
| PC 4019 Time | 0 | days |
| PC 2933.1 Time | 68 | days |
| Total Time Credited | 524 | days |

| Date(s) of Arrest | Date(s) of Release | Booking #(s) |
|---|---|---|
| 01/30/2015 | 04/29/2016 (Sentencing) | 201504272 |

DATED THIS 17TH DAY OF MARCH 2016.
GDF/gdf

**I HAVE REVIEWED THE ABOVE REPORT.**

BY: ______________________
MELISSA A. GUZMAN
SUPERVISING PROBATION OFFICER
951-358-4374

Respectfully submitted,

MARK A. HAKE
CHIEF PROBATION OFFICER

BY: ______________________
GEORG FREITAG
SENIOR PROBATION OFFICER
951-358-7809

**ORDER**

☐ It is so ordered.

☐ Denied.

☐ Other: ______________________

______________________

**JUDGE OF THE SUPERIOR COURT** DATED:

(Rev: 6/00)

# EXHIBIT “D”

RECEIVED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
MAY 17 2016
K. Boler

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
MAY 17 2016
L. Walker

AM MAY 17 2016 BA

**John Patrick Dolan CA Bar #79969**
**Dolan Law Offices**
45-290 Fargo Street
Indio, CA 92201
Telephone: 760-775-3739
Facsimile: 760-347-9413
Attorney for Defendant
**JOHN DAVID YODER**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF RIVERSIDE - BANNING BRANCH**

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff,<br>vs.<br>JOHN DAVID YODER<br>Defendant | Case No.: RIF1501674<br>**SENTENCING MEMORANDUM**<br>DATE: May 18, 2016<br>TIME: 8:30 a.m.<br>DEPT: B301 |

Attached is a sentencing report prepared by Milton Sheetz, a twenty six year veteran of the San Bernardino Probation Department.

In preparing his report, Mr. Sheetz interviewed Mr. Yoder, his family members and significant others. An extensive review of the case file, trial transcripts, psychological and employment reports contributed to his report and recommendations.

In addition, exposure calculations are attached showing the minimum, maximum and mid-range sentencing exposures.

Dated: May 17, 2016

Respectfully submitted,

John Patrick Dolan
Attorney at Law

April 17, 2016

PSYCHO-SOCIAL REPORT AND SENTENCING CONSIDERATIONS
JOHN DAVID YODER
DOB 4-24-71

Referred by John Patrick Dolan, Attorney for the defendant

| | |
|---|---|
| Case: | RIF1501674 |
| Date of Arrest: | 1-31-15 |
| Date of Conviction: | 2-17-16 |

| | | | |
|---|---|---|---|
| Convicted Charges: | Count 10 | PC 288(a) | felony |
| | Count 11 | PC 288(a) | felony |
| | Count 12 | PC 288(a) | felony |
| | Count 13 | PC 288(a) | felony |
| | Count 14 | PC 266j | felony |
| | Count 15 | PC 266j | felony |
| | Count 17 | PC 236.1(c) | felony |
| | Count 19 | PC 236.1(c) | felony |
| | Count 20 | PC 32 | felony |
| | Count 59 | PC 182(a) | |
| | | PC311.4(c) | |

| | | | | |
|---|---|---|---|---|
| Date of Offenses: | November 2014 | ----- | December 2014 | Counts 10,11,12 |
| | November 2013 | ----- | January 2015 | Count 13 |
| | June 2013 | ----- | December 2014 | Counts 14,15,17,19,20 |
| | January 2013 | ----- | January 2015 | Count 59 |

The Offenses:

The defendant was arrested on 1-31-16 in connection with charges of Lewd Acts upon a child under the age of 14 and numerous charges surrounding the investigation of a child pornography ring. There were three co-defendants also charged in the offense. The defendant was convicted by a jury on 2-17-16 on the above counts.

Note: A motion for retrial has been filed and a federal indictment relating to these charges is pending. Therefore the defendant did not make a statement regarding the offenses for purposes of this report.

Sources Considered:

1. Transcripts from trial and investigator's interrogation
2. Work performance evaluation from employer
3. Interviews with defendant, defendant's family members and significant others
4. Psychologist's Report

Family History as Reported by the Defendant on April 14, 2016

The defendant was interviewed on two separate occasions on 4-14- 16 and 4-18-16. The defendant, who goes by his middle name David, was born on 4-24-71 in Washington DC to Max and Carolyn Yoder. He has an older brother Paul, born in 1968. David describes his childhood as fairly normal. His brother achieved a higher degree of academic success, but David still maintained good grades throughout his elementary, junior high and high school years. His father earned a Master of Science Degree in electrical engineering from Purdue University and worked as the head of the Electronics Division of the Office of Naval Research in Arlington, Va. David's mother is a piano teacher and has taught music from home throughout her adult life. He describes her as a very loving parent. There was no physical, emotional or sexual abuse by either parent in the home. Between his father's inordinately demanding work schedule and high family expectations, there were times when he and his father were not terribly close in their relationship. In addition, the defendant's brother was often touted as the more successful child. His father, now in his late 70's suffers from Parkinson's Disease and has early stages of dementia. His mother suffered a fall down a flight of stairs four years ago and sustained serious brain injury. She now functions at a much lower level but is making a slow recovery. The parents are able to remain in their home with the assistance of a home care nurse and housekeeper. There was no alcohol or drug abuse in the home. The older brother earned a Ph.D in electrical engineering from Cornell University and is currently a professor at Georgia Tech University. He is married with a 17 year-old son and a set of 15 year-old twins. David reports that his brother often bullied him as achild but they enjoy a good relationship today.

Statement of Defendant's Father and Mother

The defendant's parents, Max and Carolyn Yoder were interviewed by phone from their home in Virginia on April 15, 2016. Mrs. Yoder was present but was only able to communicate through her husband. The parents characterize the defendant's childhood as being normal. The family was always active in their local Baptist Church. David converted to Catholicism during college. There was no use of drugs or alcohol by either parent or either of their children. There was always consistent discipline in the home. Their older son had a great deal of success academically and graduated as valedictorian of his class in high school. Although the parents made every effort to treat the boys equally, Mr. Yoder believes that David may have felt that he couldn't match his brother's successes. David was never a behavior problem nor did he act out in ways that caused relational issues within the family. He was still a good student and pursued a college education. It was not until he revealed that he was gay that their hearts were broken for a time. Since then, they have accepted his lifestyle and he has visited them as frequently as possible. Dave last spent time with them immediately following his mother's accident and hospitalization. Mr. Yoder has always considered David to be quite kindhearted and

very passionate about his career helping troubled youth. David has never given them any indication that he could be responsible for what has happened. Although David may have stepped out of their expectations when he spent two years in Italy learning Italian and revealed his alternate lifestyle, they never considered him to be anything but a positive influence on those who have known him.

Mr. Yoder noted that they own the home where David lived. It was following media coverage outside the home of the search that vandals virtually destroyed the home.

Statement of Defendant's Uncle

The defendant's maternal uncle, John S. was interviewed by phone from his home in Northern California on April 16, 2016. He describes the defendant as having many interests as a child. The family was quite close when the children were young, often times gathering together with extended family several times per year. Mr. Shouse recalls that David had interests in studying various kinds of animals and loved gourmet cooking. It was when the David revealed that he was gay, that it was difficult for the entire family because of their faith as Christians. Mr. Shouse is currently a professor at a college of theology and he and David had conversations around this very subject. However, none of these discussions put a wedge between them and it was a learning experience for the entire family in many ways. Mr. Shouse reports that he was present at much of the trial. He was surprised at the verdict having not heard any evidence that David was directly involved in any pornography and that a police search of David's home and computer failed to reveal anything.

Education

The defendant attended elementary school in Virginia with the exception of sixth grade which was spent in England due to his father's brief assignment there for the government. He returned to finish school in Virginia, graduating from Mclean High school in 1989. He considered himself an individualist of sorts, not choosing to mingle with any particular peer group. He did not participate in competitive sports and was not interested in the arts. He was a member of the high school Latin Club and enjoyed studying about animals. His grades were not such that he qualified for a scholarship but did do well enough to be accepted into four high ranking colleges. He elected to attend Virginia Tech with an interest in biology/pre-veterinarian studies. In 1991 through 1994, he attended University of Maryland (College Park) where he changed his major, graduating with a degree in Languages, specifically Italian and French. He studied abroad in Italy for two years, becoming fluent in Italian. Subsequent to his return to the states, he attended various programs in education and developed an interest in teaching children with behavioral disorders from dysfunctional families.

Sexual Orientation and Relationships

The defendant reports that he has always known that he was gay as far back as he can remember. He never discussed these feelings with friends or family members for fear of not being understood or being judged. It was not until he met another gay student in Italy at age 21 that he was able to talk about it with anyone. Although this person was never an actual partner, the defendant loved him as a dear and trusted friend. It was difficult to reveal this information to his family and there were members of his family that were troubled by his revelation. He has been in three significant domestic partner relationships over the years. The first was from 1993 to 1997 with Richard, the second from 1998 to 2005 with Stanley and the third from 2008 to 2012 with Scott.

Statement of Defendant's Former Domestic Partner

Stanley S. was interviewed by phone on April 17, 2016. STanley reports that his relationship with David began around late 1997or early 1998. In 2002, they began the process of becoming adoptive parents to Cody, now 19 years old. At the time, Cody was a challenge as he had come from a very dysfunctional home and had severe behavioral disorders. He had spent a considerable amount of time in an institution. This put a strain on the domestic partnership in that Cody required so much time and patience, plus the arduous process of taking the necessary classes required to become adoptive parents. It came down to Stanley asking David to choose between his commitment to Cody or to him. In 2005, David and Cody moved to David's parents' home in Virginia where David continued his training to become specialized in teaching troubled youth. Stanley never observed any inappropriate contact or behavior between David and any other boys in his care during the time they were together. He describes David as being totally committed to helping troubled kids.

Employment History

Shortly after graduation from college, David took a job as an office manager/legal secretary for a law firm in Washington D.C. He held that position for nearly four years during which time he met his first partner, Richard. They decided to move to Southern California in 1995 where the defendant became employed at Fed Ex in the Customer Relations Department of the company's Same Day Service Division. From 1998 through 2005 he worked as a specifications consultant for a high-end furniture manufacturer, Therien Inc. in Los Angeles. In 1998, his partner left for New York and the defendant became involved with his second partner, Stanley.

David returned to Virginia to live with his parents in 2005 in order to pursue a degree in Special Education. He did not graduate but returned to California with his then adopted

Son, Cody. He became a Special Education Aide and Substitute teacher with the Palm Springs Unified School District in 2007, transferring to an alternative school for children with emotionally disturbed children called "the Center for Learning Development". The program eventually closed and he was offered a job as an aide at the high school working one-on-one with autistic children. He held that position until his arrest in these matters.

History of Substance Abuse

David reports that he has never used illicit drugs and was rarely exposed to that element as a child or young adult. However, in 2013 he began experiencing problems in his relationship with his partner, Scott and experienced financial problems. The overwhelming responsibility of caring for the 4 boys placed in his home was beginning to take a toll. In 2014, after the raid on his home, he started drinking whiskey on a daily basis to calm his nerves. The authorities were looking for one of his codefendants. Most of the boys, abandoned by their respective families were acting out verbally and physically. His drinking was rarely to intoxication but frequently and consistent enough to maintain his ability to cope. He concedes that his drinking soon accelerated to a physical and psychological dependence. He was beginning to have "the shakes." David hopes that wherever this case leads him, he will be offered a treatment program.

Collateral Information

A work performance evaluation from the Palm Springs unified School District dated 2-25-14 reflects satisfactory to outstanding performance in several areas as a one-on-one aide to autistic students. His job title was classified as "paraprofessional Health". Outstanding areas included work quality, productivity, safety, ability to work with others and supervisory ability. He was "commended for his calm demeanor and his ability to hold students accountable without overreacting".

Michael E. Kania Ph.D, clinical and forensic psychologist evaluated the defendant as to whether or not he posed a danger to the community, or should he be convicted, a danger of reoffending. It was Dr. Kania's statement dated December 23, 2015 that "based on the information gathered from Mr. Yoder (e.g. the absence of prior contacts with law enforcement, the absence of substance abuse problems and the fact that he has maintained long-term sexual relationships with adult partners), I am of the opinion that the likelihood that he would have been involved in inappropriate sexual behavior such as that charged, or that he would offend in the future, is extremely low. Certainly, his involvement with Boylove.org and his subsequent association with the other men charged, raise questions with regard to his judgment"

The defendant has no known prior contacts with law enforcement.

SENTENCING CONSIDERATIONS:

Probation Eligibility (Rule 4.421):

Statutory provisions limiting or prohibiting a grant of probation do exist. The defendant is statutorily ineligible for probation for a conviction of PC 266j. Therefore he is ineligible for probation on all counts.

Circumstances in Aggravation:

(a) Facts relating to the crime include:

The victims were particularly vulnerable

(b) Facts relating to the defendant:

There are no facts relating to the defendant

Circumstances in Mitigation: Rule 4.423

(a) Facts relating to the crime include:

1. The defendant was a passive participant or played a minor role in the crime.

(b) Facts relating to the defendant include:

1. The defendant has no prior criminal record

2. The defendant was suffering from a mental/physical condition that significantly reduced his culpability for the crimes.

Criteria Affecting Concurrent or Consecutive Sentences (Rule 4.425)

None of the defendant's convicted offenses fall under mandatory consecutive Sentencing as pursuant to PC667. As to all other crimes subject to section PC 667.61, the Court has discretion to impose consecutive or concurrent sentence.

Summary:

The defendant faces sentencing on multiple counts involving sexual crimes against minor children and child pornography. The defendant denies all charges for which he has been convicted and did not make any statement pending a motion for retrial recently filed and a pending federal indictment.

By all accounts, the defendant comes from a good and decent Christian family background. There is no reported history or evidence to suggest that the defendant has ever been abused in any way. Family members have been supportive throughout this entire period and have not allowed their frustrations to cloud the issues at hand or to interfere in the process. Most members of the family (including the defendant himself) have held esteemed positions within their communities and are highly educated.

Based on my interview with the defendant, phone interviews with family members and a review of collateral information, including a report from Michael E. Kania Ph.D and a work performance evaluation from the defendant's prior employer, it is not believed that the defendant's character is of a predatory nature or that he is a danger to the community. This is a 45 year old man who has no prior record of any kind with law enforcement and has been in long term intimate adult relationships. He was involved in helping troubled children as a foster care provider, an educator and an adoptive parent for well over ten years without incident. There is nothing in his background that points to a high risk of reoffending. I was not able to find any direct information that shows that the defendant was involved in or benefitted financially from the production any child pornography or that he was a leader of any kind of child pornography "ring". There is no information to suggest that he groomed the victims leading up to his arrest in these matters. I also failed to find any information that shows that the defendant personally or willfully placed the victims under duress or that he used force or violence against them. I do believe that his association with the co-defendants and his increasing dependence upon alcohol led him to a dark world after which he failed to do anything to stop it before it was too late.

Therefore it is respectfully recommended that based on the lack of any prior type of criminal history, lack of any prior acts or history of violent behavior, lack of violence in the current offenses, lack of indication of grooming behavior, and the fact that the defendant was involved in long term adult intimate relationships, that the defendant has a low risk of recidivism and that the defendant should be punished according to the low term of state prison.

Respectfully Submitted,
Milt Sheetz M.S.

**MILT SHEETZ**
**ALTERNATIVE SENTENCING**
**Assessment & Referral**
3800 Orange St., Suite 220
Riverside, CA 92501
Cell: (909) 855-7540
Office: (951) 683-2297
Fax: (866) 702-4011

EDUCATION:

| | | | |
|---|---|---|---|
| B.S. | Psychology | 1974 | Eastern Illinois University |
| M.S. | Counseling Psychology | 1979 | Eastern Illinois University |

SPECIALIZED TRAINING National Drug Court Institute

RELATED EXPERIENCE

November 1985 - - 2011 (Retired) San Bernardino County Probation Department

1985 - 1997 Varied assignments within the juvenile division to include investigations , field supervision and Community Service Team (diversion) unit.

1997 - 2001 Adult supervision

2001 - 2011 Adult Specialty Courts Unit as probation officer for the collaborative Treatment Court program. Onsite court officer in Drug Court. Daily networking with community based treatment providers. Close interfacing with the Public Defender's Office, private attorneys and District Attorney's Office. Assessment of client needs and development of treatment plans for defendants struggling with addiction to drugs/alcohol and other associated addictive disorders.

1982- - - 1985 Inland Empire Job Corps San Bernardino, Ca

Vocational and residential counseling staff

1979- - - - 1981 Winnebago County Probation Department Rockford, Ill.

Juvenile intake probation officer/ supervision of informal probation caseload/referral of non-delinquent status offenders to community based resources.

1978- - - -1979 Internship/ Champaign County Probation Department Urbana, Ill.

Adult and Juvenile Investigation and Supervision / Juvenile Detention Counselor

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I, Kelli McDowell, declare:

I am over the age of 18, not a party to this action, and am employed in Riverside County at 45-290 Fargo St., Indio, CA 92201.

On January 8, 2021, I delivered a true copy of the **Defendant's Memorandum in Aid of Sentencing** to the following interested parties:

**AUSA Christopher Burton**
**AUSA Elham Roohani**
**501 Las Vegas Boulevard South**
**Suite 1100**
**Las Vegas, NV 89101**

**Attorney Jennifer Waldo**
**Gregory & Waldo**
**321 S. Casino Center Blvd.**
**Suite 112**
**Las Vegas, NV 89101**

______X_____**(BY EMAIL)** I sent by EMAIL the above-referenced document on the date noted below to the appropriate email address.

____________**(BY HAND)** I served a copy of the above-referenced document on the date noted below to the appropriate party.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 8, 2021.

[signature]
Kelli McDowell

NICHOLAS A. TRUTANICH
United States Attorney
Nevada Bar No. 13644
CHRISTOPHER BURTON
Nevada Bar No. 12940
ELHAM ROOHANI
Nevada Bar No. 12080
Assistant United States Attorney
501 Las Vegas Boulevard South; Suite 1100
Las Vegas, Nevada 89101
Phone: 702-388-6336
christopher.burton4@usdoj.gov
elham.roohani@usdoj.gov

____FILED ____RECEIVED
____ENTERED ____SERVED ON
COUNSEL/PARTIES OF RECORD

OCT 28 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:____________________DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>John David Yoder,<br>Defendant. | Case No: 2:13-cr-00368-JAD-VCF<br><br>**BINDING PLEA AGREEMENT UNDER FED. R. CRIM. P. 11 (c)(1)(A) and (C)** |

Plaintiff United States of America, by and through NICHOLAS A. TRUTANICH, United States Attorney, Christopher Burton and Elham Roohani, Assistant United States Attorneys, the defendant JOHN DAVID YODER, and the defendant's attorney, John Patrick Dolan, Esq., submit this Binding Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (C).

## I. SCOPE OF AGREEMENT

The parties to this Plea Agreement are the United States of America and JOHN DAVID YODER (the defendant). This Plea Agreement, if accepted, binds the defendant, the United States Attorney's Office for the District of Nevada, and the Court. It does not bind any other prosecuting, administrative, or regulatory authority, or the United States Probation Office.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II. DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A. Guilty Plea. The defendant knowingly and voluntarily agrees to plead guilty to the following charges in the Superseding Indictment:

- **Count One:** *Child Exploitation Enterprise*, in violation of Title 18, United States Code, Section 2252A(g); and
- **Count Five:** *Conspiracy to Distribute Child Pornography*, in violation of Title 18, United States Code, Sections 2252A(a)(3) and (b)(1).

The defendant also agrees that he has no claim to, and agrees to the forfeiture of, the property and the imposition of the forfeiture of the property as set forth in this Plea Agreement, the Bill of Particulars, and the Forfeiture Allegations of the Superseding Indictment.

B. Waiver of Trial Rights. The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

1. The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;
2. The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;
3. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4. The right to testify in his own defense at such a trial if he so chooses;

5. The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6. The right to have the assistance of an attorney at all stages of such proceedings.

C. <u>Withdrawal of Guilty Plea</u>. The defendant will not seek to withdraw his guilty pleas after he has entered them in court.

D. <u>Additional Charges</u>. The United States agrees not to bring any additional charges against the defendant arising out of the investigations in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States, except that the United States reserves the right to prosecute the defendant for any crime of violence as defined by 18 U.S.C. § 16.

## III. ELEMENTS OF THE OFFENSES

The elements of the offenses to which the defendant is pleading guilty are as follows:

*<u>Child Exploitation Enterprise</u>*, 18 U.S.C. § 2252A(g)

1. The defendant engaged in a series of felony violations of Title 18, United States Code, Sections 2252(a)(2) and (a)(4)(B), constituting three or more separate incidents;
2. Each incident involved one or more minor victim(s); and
3. The defendant committed those incidents in concert with three or more people.

*<u>Conspiracy to Distribute Child Pornography</u>*, 18 U.S.C. § 2252A(a)(3) and (b)(1)

1. The defendant conspired to violate Title 18, United States Code, Section 2252A(a)(3) and (b)(1); specifically,
2. The defendant knowingly conspired to distribute child pornography, as defined by 18 U.S.C. § 2256(8), or material which contained such child pornography;

3. Such items of child pornography or material containing such child pornography had been mailed, shipped or transported in interstate or foreign commerce, by any means, including by computer; and,

4. The defendant knew that such item(s) or material constituted or contained child pornography as defined in 18 U.S.C. § 2256(8).

## IV. FACTS SUPPORTING GUILTY PLEA

A. The defendant will plead guilty because he is, in fact and under the law, guilty of the crimes charged.

B. The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt and establish its right to forfeit the items listed in the Superseding Indictment and the accompanying Bill of Particulars.

The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offenses.

C. The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offenses.

D. The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

In the spring of 2014, the defendant met co-defendants William Clyde Thompson, Eric Monsivais, and Nolan Harper. Co-defendants Thompson, Monsivais, and Harper conspired to contact at least six minor males (N.C., B.S., M.B., D.A., J.R., B.S.) at the Tedesco Skate Park in Desert Hot Springs, CA, for the purpose of sexually exploiting them. During the course of this conspiracy, the defendant became aware of and provided material aid to it intending to further the conspiracy. The six minor males were friends and met Thompson, Monsivais, and

Harper at different times throughout the summer. Although the defendant knew Thompson's true name, Thompson identified himself as "Tony Bailor" and "Jason Brock" to the minor children and told the boys he was a "scooter sponsor."

Thompson, Harper, and Monsivais asked some of the boys, including the defendant's minor child, to recruit other minor boys to be part of a "team" Thompson claimed he wanted to sponsor, but with the intention of sexually exploiting them. The defendant was present during at least some of these recruitment efforts. The defendant also transported Thompson to the skate park on several occasions to meet young boys and registered a car in his name for Thompson to use. After transporting Thompson on some instances and initially registering the vehicle, and during the course of the conspiracy, the defendant became aware of Thompson's intent to sexually exploit the minor boys and continued to assist Thompson with transportation intending to further the enterprise. Thompson, Harper, and Monsivais provided the boys gifts such as cell phones, scooters, skateboards, and clothing to induce their compliance. Thompson also met many of the parents and guardians for the boys and identified himself as a scooter sponsor and professional photographer to reduce their suspicions.

Eventually, the defendant rented a residence in Desert Hot Springs, California at Thompson's request. Thompson used the residence rented in the defendant's name for the production of child pornography. After initially renting the property, and during the course of the conspiracy, the defendant became aware of Thompson's exploitative purpose for the residence and continued to allow it to be rented in the defendant's name intending to further the enterprise. The minor boys would typically go to Thompson's residence in groups, but without their guardians, and spend significant time with Thompson, Monsivais, and Harper. Thompson told the boys that they would be paid for the photos he took of them and that he would re-sell the photos online through a website. Initially, Thompson provided the boys with

clothing to wear and took photos of them in various stages of undress, while directing them on how to pose. Thompson then encouraged the boys to take photos in the same poses while nude and exposing their genitalia. When the boys expressed hesitation, Thompson would tell them they could not be paid unless they took the photos. Thompson then took nude photos of the minor boys and directed the boys to masturbate for photos and videos. Thompson had some of the boys take pornographic pictures of each other. In other instances, Thompson told the boys that prospective buyers had requested specific boys, poses, and clothing in the creation of the pornographic depictions. The boys complied with Thompson's requests because of the money, alcohol, and marijuana he provided them, as well as because of the similar items Monsivais and Harper provided them.

In the span of approximately six months, Thompson produced in excess of 20,000 images and videos depicting minors. The videos and images ranged from what would be classified as child erotica to what constitutes child pornography under federal law. During the enterprise, the defendant, Monsivais, and Harper were all aware Thompson was using minors in the production of pornographic materials. The defendant, Harper, and Monsivais conspired with, provided for, and benefited from Thompson's criminal actions, and the overall conspiracy to exploit the children, produce the child pornography, and distribute it. On at least one occasion, the defendant transported one of the victims to meet with Thompson after becoming aware of the conspiracy to sexually exploit the victim, produce child pornography, and distribute it. This, too, furthered the enterprise and conspiracy.

After the photo shoots, Thompson and Harper distributed the child pornography Thompson produced to each other, Monsivais, and online through various paid websites. This distribution was done with the knowledge of the defendant as an object of the conspiracy and after he had joined the conspiracy. Thompson provided money to the defendant for his

assistance as described above. Thompson, together with Harper, created multiple websites to distribute the child pornography produced to others outside the conspiracy and to profit from the conspiracy. The websites were created by Thompson but were in Harper's name, who handled any taxes for the websites and received a cut of the profits. Thompson would send Harper hyperlinks to sets of child pornography photos and videos he had produced via email. Harper would download the files to his computer and then upload them to a cloud-based service. Thompson would then post sample photos on one of the websites he and Harper owned and, when someone purchased the photos based on the sample, Thompson would send the purchaser a hyperlink to the files on the cloud-based service. This was done with the knowledge and acquiescence of the defendant as an object of the conspiracy.

On January 27, 2015, Thompson was arrested pursuant to an ongoing investigation and was found in possession of numerous electronic storage devices, containing well over one million images that ranged from child erotica to child pornography of several victims. Law enforcement also recovered numerous personal items belonging to Thompson, including a list of names, addresses, phone numbers, and email addresses. The physical addresses included on the list spanned the United States and foreign countries. This "client list" included the defendant, Harper, and Monsivais.

In February 2016, the defendant was convicted in Riverside Superior Court case no. RIF1501674 of four counts of lewd acts on a child under 14, two counts each of human trafficking of a child and procuring a child for sex, one count of conspiracy to commit child pornography, and one count of harboring a fugitive. There are no double jeopardy concerns.

The defendant admits he engaged in a series of felony violations of Title 18, United States Code, Sections 2252(a)(2) and (a)(4)(B), constituting three or more separate incidents.

The defendant admits that each incident involved one or more minor victim(s); and that he committed the violations in concert with Thompson, Harper, and Monsivais.

The defendant admits he knowingly conspired with Thompson, Harper, and Monsivais to distribute child pornography, as defined by 18 U.S.C. § 2256(8), or material which contained such child pornography. The defendant admits such items of child pornography or material containing such child pornography had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer. The defendant admits he knew that such items or material constituted or contained child pornography as defined in 18 U.S.C. § 2256(8).

The defendant admits the property listed in Section X, which he has no claim to, is (1) any visual depiction described in Title 18, United States Code, Sections 2251 and 2252A, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Sections 2251(a) and 2251(e), 2252A(a)(3) and 2252A(b)(1), 2252A(a)(5)(B), and 2252A(g); (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from violations of Title 18, United States Code, Sections 2251(a) and 2251(e), 2252A(a)(3) and 2252A(b)(1), 2252A(a)(5)(B) and 2252A(g); and (3) any property, real or personal, used or intended to be used to commit or to promote the commission of Title 18, United States Code, Sections 2251(a) and 2251(e), 2252A(a)(3) and 2252A(b)(1), 2252A(a)(5)(B) and 2252A(g) or any property traceable to such property, and is subject to forfeiture pursuant to Title 18, United States Code, Section 2253(a)(1), 2253(a)(2), and 2253(a)(3).

## V. COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the

defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant does not plead guilty or withdraws his guilty pleas, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf. The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A. Discretionary Nature of Sentencing Guidelines. The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B. Offense Level Calculations. The parties stipulate to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions:

**Group 1:**

**Count One – Child Exploitation Enterprise, 18 U.S.C. § 2252A(g)**

| | |
|---|---|
| U.S.S.G. § 2G2.6(a)<br>Base Offense Level | 35 |
| U.S.S.G. § 2G2.6(b)(1)(A)<br>Minor under 12 years | +4 |
| U.S.S.G. § 2G2.6(b)(4)<br>Use of a Computer | +2 |
| **Total Offense Level** | **41** |

**Group 2:**

**Count Five – Conspiracy to Distribute Child Pornography, 18 U.S.C. § 2252A(a)(3) and (b)(1)**

| | |
|---|---|
| U.S.S.G. § 2G2.2(a)(2)<br>Base Offense Level | 22 |
| U.S.S.G. § 2G2.2(b)(2)<br>Prepubescent Minor | +2 |
| U.S.S.G. § 2G2.2(b)(3)(A)<br>Distribution for Pecuniary Gain | +5 |
| U.S.S.G. § 2G2.2(b)(5)<br>Pattern of Sexual Abuse | +5 |
| U.S.S.G. § 2G2.2(b)(6)<br>Use of Computer | +2 |
| U.S.S.G.§ 2G2.2(b)(7)(D)<br>600+ Images | +5 |
| **Total Offense Level** | **41** |
| **Highest Offense Level:** | **41** |
| U.S.S.G. § 3D1.4<br>Grouping Enhancement: | +2 |
| **Combined Offense Level:** | **43** |
| U.S.S.G. § 4B1.5(b)(1)<br>Repeat and Dangerous Sex Offender Against Minors | +5 |
| **Adjusted Combined Offense Level:** | **48** |
| **Reductions:**<br>Contingent Reduction for<br>Acceptance of Responsibility<br>U.S.S.G. §3E1.1(a): | - 2 |
| Contingent Reduction for<br>Government Motion for Timeliness of Plea<br>U.S.S.G. §3E1.1(b): | - 1 |
| **Total Offense Level:** | **45** |

C. Reduction of Offense Level for Acceptance of Responsibility. Under U.S.S.G. § 3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under U.S.S.G. § 3E1.1(b), if the Court determines that the defendant's total offense level, before operation of § 3E1.1(a), is 16 or higher, and if the United States recommends a two-level downward adjustment pursuant to the preceding paragraph, the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

D. Criminal History Category. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

E. Relevant Conduct. The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F. Additional Sentencing Information. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

## VII. APPLICATION OF SENTENCING STATUTES

A. Maximum Penalties. The maximum penalty for a violation of Title 18, United States Code, Section 2252A(g), Child Exploitation Enterprise, is life imprisonment, a $250,000 fine, or both. *See* 18 U.S.C. § 2252A(g); 18 U.S.C. § 3571(b)(3). The maximum penalty for a violation of Title 18, United States Code, Section 2252A(a)(3), Conspiracy to Distribute Child Pornography, is 20 years, a $250,000 fine, or both. *See* 18 U.S.C. § 2252A(b)(1); 18 U.S.C. § 3571(b)(3).

B. Mandatory Minimum Sentencing Provisions. The statutory mandatory minimum sentence for Child Exploitation Enterprise, 18 U.S.C. § 2252A(g), is a 20-year prison sentence. The statutory mandatory minimum sentence for Conspiracy to Distribute Child Pornography, 18 U.S.C. § 2252A(a)(2), is a 5-year prison sentence. **The defendant understands that he cannot and will not receive a sentence that is lower than 20 years in prison.**

C. Factors Under 18 U.S.C. § 3553. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

D. Parole Abolished. The defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

E.. Supervised Release. In addition to imprisonment and a fine, the defendant will be subject to a minimum term of supervised release of five years up to a maximum term of life. 18 U.S.C. § 3583(k). Supervised release is a period of time after release from prison during which the defendant will be subject to various restrictions and requirements. If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment up to and including the statutory maximum prison sentence of life imprisonment.

F. Special Assessment. The defendant will pay a $100.00 special assessment per count of conviction at the time of sentencing for a total of $200.00.

## VIII. POSITIONS REGARDING SENTENCE

In setting forth the following sentencing recommendations, the parties have taken into consideration all of the factors set forth in 18 U.S.C. § 3553(a), including:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed—
  A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  B. To afford adequate deterrence to criminal conduct;
  C. To protect the public from further crimes of the defendant; and
  D. To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;
(4) The kinds of sentences and the sentencing range established for—
   A. The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
(5) Any pertinent policy statement . . . .
(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) The need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). In particular, the parties have already considered the defendant's lack of substantial criminal history and age, and the fact that he is currently serving a sentence of 24 years in Riverside Superior Court case no. RIF1501674 (*People v. David Yoder*) for relevant conduct, and have balanced those factors against the need for the recommended sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Moreover, the parties have given the defendant the benefit of his bargain by jointly recommending a sentence that is a significant downward variance from the applicable guidelines range of life.

The United States and the defendant agree that they will jointly recommend that the Court sentence the defendant to 288 months custody with a lifetime term of supervised release to follow. The parties anticipate that the defendant's guideline range will be life. Notwithstanding the fact that the guideline range under this plea agreement would be life, the parties make a binding recommendation that the defendant be sentenced to 288 months in custody. The parties also agree to recommend this sentence be served concurrently with the sentence the defendant is currently serving in *People v. David Yoder*, Riverside Superior Court case no. RIF1501674. Additionally, the parties agree to jointly recommend that the defendant be given credit for the time he has been in custody starting from April 14, 2015, and that any credit be accounted for pursuant to a variance. The USAO agrees to not oppose the defendant's request to serve both his state and federal sentences in federal prison. The USAO agrees to not

oppose the potential placement of the defendant in an appropriate Sex Offender Treatment Program within the Bureau of Prisons, should he qualify. The parties agree that the abovementioned sentence is reasonable under 18 U.S.C. § 3553(a). The defendant acknowledges that this sentence will be binding on the Court pursuant to Fed. R. Crim. Pro. 11(c)(1)(A) and (C). Either party may withdraw from this plea agreement if the Court does not sentence the defendant according to the aforementioned calculations and recommendation. This Plea Agreement does not require that United States file any pre- or post-sentence downward departure motion under U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35. The United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

The defendant will not directly or indirectly request a sentence below 288 months in custody or less than a life term of supervised release.

## IX. RESTITUTION

The defendant acknowledges that the conduct to which he is entering a plea is gives rise to mandatory restitution to the victims under 18 U.S.C. § 2259. The defendant agrees that for the purpose of assessing such restitution, the Court may consider losses derived from the counts of conviction as well as losses caused from dismissed counts and uncharged conduct in which the defendant has been involved. The United States will prove the "full amount of the victim's losses" reasonably calculated and foreseeable to the defendant's actions of sexually exploiting children, producing child pornography, and distributing child pornography at the time of sentencing. The defendant agrees that because he conspired to produce and distribute images and videos of N.C., B.S., M.B., D.A., J.R., and B.S., he will pay the "full amount of the victim's loss" without requiring the United States to disaggregate the loss attributed to production, distribution, and the underlying sexual exploitation offenses.

The United States and the defendant stipulate and agree that the other child pornography images distributed or possessed by the defendant depicted images of victims being sexually abused and further agree that a victim's knowledge that images of his or her abuse is being disseminated and possessed by others and caused certain victims to be re-victimized and has resulted in harm that is distinct from that suffered from the actual contact physical sexual abuse, thus such victims are harmed by the actions of the defendant. In consequence of these factors, if the Government meets its burden under 18 U.S.C. § 2259 and pursuant to *Paroline v. United States*, 134 S. Ct. 1710 (2014), the defendant agrees to pay restitution in the amount of $5,000.00 per victim, for any victim who may be identified through the Child Victim Identification Program (CVIP) and/or Child Recognition and Identification System (CRIS) and who requests restitution prior to sentencing.

The defendant acknowledges that if his offense conduct occurred after May 29, 2015, and unless the Sentencing Court finds the defendant to be indigent, an additional mandatory special assessment of $5,000.00 per count must be imposed pursuant to the Justice for Victims of Trafficking Act of 2015 which amends 18 U.S.C. § 3014.

**X. FORFEITURE**

The defendant knowingly and voluntarily:

A. Agrees to the District Court imposing the civil judicial forfeiture or the criminal forfeiture of and acknowledges no legal claim to:

1. Dell computer tower, model no. Vostro 400, serial no. D2CXRF1, containing a Seagate 1TB SATA hard drive, model no. ST1000DM003, serial no. S1D0MRJQ;
2. Hitachi 2TB external hard drive, model no. HT0LDNB20001BBB, serial no. F31G2NXD;

3. Western Digital 1TB hard drive, model no. WD10EADS, serial no. WCAV5M930266;
4. SanDisk card reader;
5. SanDisk 16GB compact flash card;
6. Panasonic video camera, model no. SDR-H85P, serial no. J01A18002;
7. Two micro video cassettes;
8. Proof of residence documents;
9. Compaq Presario laptop computer, model no. CQ57, serial no. 5CB2174R1P, containing a Seagate 320GB SATA hard drive, model no. ST9320325AS, serial no. 6VDFR10V;
10. Canon Mark II digital camera, serial no. 4252102526;
11. Emachines desktop computer, model no. EL1850, serial no. PTNBK02012040038589600, containing a 500GB SATA hard drive, model no. HDS721050CLA362, serial no. HE1BIMMT;
12. Gateway desktop computer, model no. DX4860-UB33P, serial no. PTGCPP200420400EF66300, containing a Western Digital 1TB SATA hard drive, model no. WD10EARX, serial no. WMC0T0032462;
13. Compaq Presario desktop computer, model no. SR5034X, serial no. MXX71406PP, containing a Samsung 160GB SATA hard drive, model no. HD160JJ/P, serial no. S0DFJ1GP107611;
14. Apple iPhone 4S, model no. A1387, serial no. CBPH20MGDTDW, IMEI no. 99000110136386, containing a Sprint mini SIM card, no. 89010100088311266638F;
15. 100 CDs and DVDs;
16. 13 CDs and DVDs;

17. Hitachi DVD Cam, serial no. 50320241;

18. Sony digital camera, model no. MVC-FD100, serial no. 500023, containing a 3.5 inch floppy diskette with 128MB of memory;

19. Kodak digital camera, model no. Easyshare Z710, serial no. KCXGG64336528;

20. Kodak digital camera, model no. Z981, serial no. KVYMN02061276;

21. Black HP laptop, model no. G6-2237US, serial no. 5CD2490UMC;

22. Toshiba Satellite C655D-S5209 laptop, serial no. 7B231863Q;

23. Toshiba Satellite C55D-A5304 laptop, serial no. YD280824Q;

24. Black Seagate Expansion Desktop drive, P/N 1D7AP3-500, serial no. NA4K688Y;

25. Apple iPhone in black case, model no. A1332;

26. Apple iPhone without a case, model no. A1387;

27. Black Samsung cellular flip phone, model SPH-M270;

28. Black digital Canon EOS camera, model no. DS126201, serial no. 3211600699;

29. Canon Rebel XSi camera, model no. DS126181, serial no. 0670215963, containing 2GB SD card;

30. Nikon D700 digital camera, serial no. 3114091, containing an 8GB SD card and a 16GB SD card;

31. Apple iPhone 4, FCC ID BCG-E2422A;

32. Apple iPhone 4S, FCC ID BCG-E2430A;

33. Toshiba external drive, serial no. 23EAPV0ZTRE8;

34. HP Pavilion Computer, serial no. 5CD249WMC;

35. Kodak 2GB SD card;

36. PNY 16GB SD card;

37. 2 SanDisk 8GB Compact Flash cards

38. SanDisk 8GB SD card; and

39. iPhone, FCC ID: BCG-E23808

(all of which constitutes property);

B. Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property;

C. Abandons or forfeits the property to the United States;

D. Relinquishes all possessory rights, ownership rights, and all rights, titles, and interests in the property;

E. Waives his right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings of the property (proceedings);

F. Waives service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

G. Waives any further notice to him, his agents, or his attorney regarding the abandonment or the forfeiture and disposition of the property;

H. Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property;

I. Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, and 32.2, all constitutional requirements, including but not limited to, the constitutional due process requirements of any proceedings concerning the property;

J. Waives his right to a jury trial on the forfeiture of the property;

K. Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings, including, but not limited to, (1) constitutional or

statutory double jeopardy defenses and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

L. Agrees to the entry of an Order of Forfeiture of the property to the United States;

M. Waives the right to appeal any Order of Forfeiture;

N. Agrees the property is forfeited to the United States;

O. Agrees and understands the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the abandonment or the forfeiture;

P. Acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than or less than, the amount of restitution; and

Q. Agrees to take all steps as requested by the United States to pass clear title of the property to the United States and to testify truthfully in any judicial forfeiture proceedings. The defendant understands and agrees that the property represents proceeds and/or facilitating property of illegal conduct and is forfeitable. The defendant acknowledges that failing to cooperate in full in the forfeiture of the property constitutes a breach of this Plea Agreement.

## XI. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay. The defendant will surrender assets he obtained directly or indirectly as a result

of his crimes, and will release funds and property under his control in order to pay any fine, forfeiture, or restitution ordered by the Court.

## XII. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A. Plea Agreement and Decision to Plead Guilty. The defendant acknowledges that:

(1) He has read this Plea Agreement and understands its terms and conditions;

(2) He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

(3) He has discussed the terms of this Plea Agreement with his attorney;

(4) The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

(5) He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

B. Waiver of Appeal and Post-Conviction Proceedings. The defendant knowingly and expressly waives: (a) the right to appeal any sentence lower than 288 months in custody; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is in excess of 288 months in custody.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. Sex Offender Requirements (SORNA)

The defendant understands and agrees that under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 et. seq., he must register as a sex offender and keep the registration current in each of the following jurisdictions: (1) where the defendant resides; (2) where the defendant is an employee; and (3) where the defendant is a student. The defendant understands that he must comply with all the registration requirements contained in SORNA. 42 U.S.C. § 16901 et. seq. The defendant further understands that the requirements for registration include, but are not limited to, providing defendant's name, residence address, and the names and addresses of any places where the defendant is or will be an employee or a student.

The defendant further understands that the requirement to keep the registration current includes, but is not limited to, informing at least one jurisdiction in which the defendant resides, is an employee, or is a student no later than three business days after any change of defendant's name, residence, employment, or student status. The defendant has been advised, and understands, that failure to comply with these obligations subjects the defendant to an additional prosecution for failure to register as a sex offender under 18 U.S.C. § 2250(a).

D. Removal/Deportation Consequences. The defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that he will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless

///

///

///

///

///

///

///

set forth in writing and signed by all parties or confirmed on the record before the Court.

NICHOLAS A. TRUTANICH,
United States Attorney

DATE 10/25/19 ______________________ CHRISTOPHER BURTON
Assistant United States Attorney

DATE 10/28/19 ______________________ JOHN PATRICK DOLAN
Counsel for Defendant YODER

DATE 24 October 2019 ______________________ JOHN DAVID YODER
Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JOHN DAVID YODER (2),<br>Defendant. | ) Case No. 2:13-cr-00368-JAD-VCF<br>) Las Vegas, Nevada<br>) October 28, 2019<br>) 2:26 p.m. - 3:10 p.m.<br>) Courtroom 6D<br>) CHANGE OF PLEA |

***CERTIFIED COPY***

REPORTER'S TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JENNIFER A. DORSEY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government: ***CHRISTOPHER BURTON, AUSA***
*UNITED STATES ATTORNEY'S OFFICE*
*501 Las Vegas Boulevard South, Suite 1100*
*Las Vegas, Nevada 89101*
*(702) 388-6336*

(Appearances continued on page 2.)

Court Reporter: Amber M. McClane, RPR, CRR, CCR #914
United States District Court
333 Las Vegas Boulevard South, Room 1334
Las Vegas, Nevada 89101
(702) 384-0429 or AM@nvd.uscourts.gov

Proceedings reported by machine shorthand. Transcript produced by computer-aided transcription.

APPEARANCES CONTINUED:

For the Defendant:

***JOHN PATRICK DOLAN, ESQ.***
*DOLAN LAW OFFICES*
*45-290 Fargo Street*
*Indio, California 92201*
*(760) 775-3739*

* * * * *

LAS VEGAS, NEVADA; MONDAY, OCTOBER 28, 2019; 2:26 P.M.

--o0o--

P R O C E E D I N G S

**COURTROOM ADMINISTRATOR:** Now's the time set for a change of plea at calendar call in Case Number 2:13-cr-368-JAD-VCF, United States of America versus John David Yoder.

Counsel, please state your appearances.

**MR. BURTON:** Good afternoon, Your Honor. Christopher Burton on behalf of the United States.

**MR. DOLAN:** Good afternoon, Your Honor. John Patrick Dolan on behalf of Yoder. He is present before the Court.

**THE COURT:** All right. Good afternoon. Please have a seat.

Mr. Yoder, I'm Judge Jennifer Dorsey. You're here in my courtroom in the United States District Court for the District of Nevada. I understand that we're here today because you wish to change your previous plea of not guilty to a guilty plea to Counts 1 and 5 in the indictment charging you with child exploitation enterprise and conspiracy to distribute child pornography and you're not going to go to trial. Is that correct?

**THE DEFENDANT:** That is correct.

**THE COURT:** Okay. Your request to withdraw your not guilty plea on these two counts is granted. Before I can

accept your guilty plea, I have to ask you questions to ensure that you are competent and that you fully understand the consequences of pleading guilty.

You have the right to remain silent, but I'm going to ask if you wish to waive that right so that we can have a conversation about your plea today and you can provide me the information that I need to determine if your plea is knowing, intelligent, voluntary, and supported by the facts.

I advise you that, if you waive your right to remain silent, anything you say can be held against you for any purpose. But I ask you, sir, do you wish to waive your right to remain silent so we can have this conversation about your plea today?

**THE DEFENDANT:** I do not wish to waive my right to remain silent.

**THE COURT:** Okay. I'm going to let you have a conversation with your counsel here.

*(Defendant conferring with counsel.)*

**THE DEFENDANT:** Could that be rephrased? I'm not following what you mean. I'm going to speak with you, so I wish to speak to you. So how is that --

*(Defendant conferring with counsel.)*

**THE COURT:** So I'm asking you, sir, in order for me to accept your guilty plea, I have a lot of questions to ask you about the process by which you entered into this plea

agreement, what you understand your plea agreement to be. I'm going to ask you to admit the facts that comprise the elements essentially. I'll ask you if you've had conversations with your counsel, if you've consulted fully, questions like that, so that I can determine if your decision to enter this plea and to plead guilty -- or enter this plea agreement and to plead guilty today is knowing, intelligent, voluntary, and supported by the facts.

That's what I'm asking you. That's the conversation I intend to have with you today. But in order for me to have that conversation with you, you'll need to -- you'll need to waive your right to remain silent so you can answer my questions. So I'm asking you if you wish to waive your right to remain silent so we can have this conversation about your plea today.

**THE DEFENDANT:** I waive my right to remain silent.

**THE COURT:** Okay. Before we start with this conversation about your plea, my clerk will administer to you an oath where you will promise that your answers to me will be truthful and made under penalty of perjury.

Do you understand what that means?

**THE DEFENDANT:** Yes.

**THE COURT:** All right. Would you stand and raise your right hand, please.

*(Defendant sworn.)*

**THE DEFENDANT:** I so swear.

**COURTROOM ADMINISTRATOR:** Thank you.

**THE COURT:** Please have a seat.

Mr. Yoder, tell me your full and true name.

**THE DEFENDANT:** John David Yoder.

**THE COURT:** Do you understand, sir, that you just took an oath to tell the truth, and that if you don't answer my questions truthfully, your later -- your -- your answers may later be used against you in another prosecution for perjury or making a false statement?

**THE DEFENDANT:** I do.

**THE COURT:** Do you read, write, and understand the English language fluently?

**THE DEFENDANT:** Yes, I have full command of the English language.

**THE COURT:** How old are you, sir?

**THE DEFENDANT:** 48.

**THE COURT:** How far did you go in school?

**THE DEFENDANT:** Postgraduate.

**THE COURT:** Did you complete a degree?

**THE DEFENDANT:** I have a degree in Italian language and literature.

**THE COURT:** What was the last job you held?

**THE DEFENDANT:** I worked for the Palm Springs Unified School District in Palm Springs, Virginia -- California.

**THE COURT:** What did you do?

**THE DEFENDANT:** I was a special education instructor.

**THE COURT:** How long?

**THE DEFENDANT:** Well, for the -- that particular school district, approximately eight years. In education for ten but for that school district eight.

**THE COURT:** Have you taken any drugs or medicine or pills in the last 24 hours?

**THE DEFENDANT:** Prescribed for health.

**THE COURT:** Are any of the medications that you're currently taking impacting your ability to understand what's going on here?

**THE DEFENDANT:** Not at all.

**THE COURT:** Have you been treated recently for any mental illness or an addiction to drugs or alcohol?

**THE DEFENDANT:** No.

**THE COURT:** Do you feel that you fully understand everything going on in this hearing?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you feel clear-minded?

**THE DEFENDANT:** Reasonably so. I'm a little upset, but yes.

**THE COURT:** Have you had sufficient time to consult with your attorney to be fully prepared to plead guilty today?

**THE DEFENDANT:** Are you at liberty to tell me what

your definition of that is?

**THE COURT:** So what I'm trying to understand -- because I only want to take your guilty plea if it is knowing, intelligent, and voluntary. And intelligent means that you've had the opportunity to fully consult with your attorney and he's answered all of your questions about the plea and the process, and so really that's what I'm getting at.

So my question is: Have you had enough time to consult with your attorney to be prepared to plead guilty today?

**THE DEFENDANT:** I feel that there's never -- in 20/20 hindsight --

**THE COURT:** It's a serious decision.

**THE DEFENDANT:** Serious decision, yes. I think that I've had adequate time. But in retrospect, I'm going to say that I will always probably 20 years from now feel like I've not had enough time. But I think that competently, reasonably, yes. And I will say that intelligently, reasonably, yes. I will say yes, emphatically yes, but I will -- you know, Albert Einstein would argue everything's relative. I'm trying to be as honest as I can. I will probably say it's a very difficult decision, but it's a big one. Obviously it's going to be the next 14 and some months of my life that this will count for. So it's -- everything's relative. But yes. The answer is yes.

**THE COURT:** Has your attorney answered all of the questions you asked?

**THE DEFENDANT:** He has.

**THE COURT:** Are you satisfied with his representation of you?

**THE DEFENDANT:** These are profoundly difficult questions you're asking, and these are also questions of opinion. So you're putting me in a very difficult -- and you want the honest truth, and you're asking questions that also have elements of opinion here. So you want answers of honesty and you want answers of -- of black-and-white at the same time. So you're...

**THE COURT:** Sir, I --

**THE DEFENDANT:** The answer's --

**THE COURT:** -- I understand --

**THE DEFENDANT:** The answer's --

**THE COURT:** -- I understand that this is a difficult situation. I understand that this is a -- that these are serious charges against you. I understand that you have signed a binding plea agreement that contemplates a lot of prison time. I get all of that. I know that there's a lot to contemplate there.

**THE DEFENDANT:** Um-hum.

**THE COURT:** And I also understand that you would probably prefer a different outcome than you're faced with

today and that you have signed an agreement for. I get that.

**THE DEFENDANT:** I appreciate that.

**THE COURT:** So when I ask these questions, it's not to ask if you'd rather have a different situation. My questions are really geared towards have you been properly represented, have you gone through this criminal justice system with an attorney who is competently representing you. That's, in effect, what I'm getting at here. And do you feel that you've been given enough guidance to be able to make the decisions that you've made and are making today? That's really what I'm gearing this all toward.

So that's why I ask you -- and I also want to ensure that there's no conflict that you have going -- going with your attorney right now that is preventing you from being able to get advice from your attorney. It doesn't appear to me, from what I'm witnessing here in the courtroom, that that's the situation here. It doesn't seem that there -- you and your attorney are in conflict or at odds or not communicating.

And so typically, when I ask that question, if someone answers no, I haven't, no, I'm not satisfied with my representation, typically it's because there's been a break down in the relationship.

**THE DEFENDANT:** Correct.

**THE COURT:** Would you say there's been a break down in the relationship with your attorney?

**THE DEFENDANT:** No.

**THE COURT:** Okay.

**THE DEFENDANT:** My attorney is highly revered, highly respected, and he by far has years exceeding 40 in his practice. He was selected by me and my family because of that. The subject matter, of course, is profoundly sensitive, and it's a difficult one to -- to face. It's difficult to talk about.

**THE COURT:** I understand.

**THE DEFENDANT:** So have I had enough time to talk to him? I mean, he's out of state. And the answer is yes, but it's all relative, so...

**THE COURT:** The answer to what is yes? That you're satisfied with his representation?

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. All right. Mr. Dolan, in the course of your representation of this defendant, how many times would you say you have spoken with him or met with him?

**MR. DOLAN:** Your Honor, I represented him for a four-month trial on the same facts in California, and then since that we have spoken numerous times. I would say I've been at least in this courthouse six or seven times. We met in Pahrump, and we have access through e-mail and telephone calls in my office. And so, if I added all those up, I would probably say that's got to be 15 or 20 times, plus the time I

spent in California.

**THE COURT:** During your meetings and conversations with this defendant, did you observe anything that caused you to doubt his competence?

**MR. DOLAN:** I saw nothing that caused me to doubt his competence. Obviously he is very concerned about the gravity of the case, but I don't think that impacted competence.

**THE COURT:** Thank you.

Mr. Burton, is the Government aware of anything that would cause it to doubt the defendant's competence?

**MR. BURTON:** No, Your Honor.

**THE COURT:** All right. So based on counsels' representations and the conversation that I've had so far here in the courtroom with Mr. Yoder and based on my personal observations of him here in the courtroom, I do find that he is competent to plead and waive rights in this case.

Let's talk about the charges against you, sir.

Is it the superseding criminal indictment that we're going off of at this point?

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** Okay. All right, sir. So this is a -- this case is relatively old. It's a 2013 case, but we do have I think it was a 2015 superseding criminal indictment.

Mr. Burton, is -- am I looking at the right one?

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** So this superseding criminal indictment was issued by a grand jury, and it contains a number of counts -- five counts -- and a number of forfeiture allegations.

Have you read this superseding criminal indictment?

**THE DEFENDANT:** Several times.

**THE COURT:** You understand it was issued by a grand jury?

**THE DEFENDANT:** I do.

**THE COURT:** Have you thoroughly consulted with your attorney about this indictment and its contents?

**THE DEFENDANT:** I have.

**THE COURT:** Do you believe that you understand everything in this document?

**THE DEFENDANT:** I do.

**THE COURT:** Mr. Dolan, does your client waive the reading of the indictment?

**MR. DOLAN:** So waived.

**THE COURT:** All right. So there are a handful of charges in here. I understand that you are intending to plead guilty to just two of them. Count 1, child exploitation enterprise in violation of Title 18 United States Code § 2252A(g), as in George; and then Count 5, conspiracy to distribute child pornography in violation of Title 18 United States Code §§ 2252A(a)(3) and (b)(1). Is that your

understanding as well, sir?

**THE DEFENDANT:** As so written in the document, yes.

**THE COURT:** So these offenses have certain essential elements that the Government would have to prove against you beyond a reasonable doubt in order for you to be convicted at trial of these offenses that you're intending to plead guilty to. These elements are written inside your plea agreement starting on page 3, and I'm going to go over those elements with you now, if you want to follow along.

Do you have a copy of the plea agreement in front of you, sir?

**THE DEFENDANT:** I do.

**THE COURT:** All right. I'm on page 3, starting around line 13.

The elements of child exploitation enterprise as you're charged are:

First, that you engaged in a serious of -- in a series of felony violations of Title 18 United States Code §§ 2252(a)(2) and (a)(4)(B) constituting three or more separate incidents;

Second, each incident involved one or more minor victims;

And third, you committed those incidents in concert with three or more people.

The elements of conspiracy to distribute child

pornography as you're charged are:

First, that you conspired to violate Title 18 United States Code § 2252A(a)(3) and (b)(1). Specifically, you knowingly conspired to distribute child pornography as defined by Title 18 United States Code § 2256(8), or material that contained such child pornography, and such items of child pornography or material containing such child pornography had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer;

And finally, you knew that such items or material constituted or contained child pornography as defined in the statute Title 18 United States Code § 2256(8).

Do you understand that those are the essential elements of the offenses as you're charged and intend to plead guilty here today?

**THE DEFENDANT:** I do.

**THE COURT:** And do you understand that, if you took this case to trial, the Government would have to prove each of those essential elements beyond a reasonable doubt before you could be convicted of these offenses?

**THE DEFENDANT:** Yes.

**THE COURT:** And do you understand that by pleading guilty to these charges you will be admitting that each one of these essential elements is true as it applies to you?

**THE DEFENDANT:** I do.

**THE COURT:** Mr. Dolan, have you explained the essential elements of these offenses to your client, and are you confident that he understands them?

**MR. DOLAN:** Yes, I have. And I am confident.

**THE COURT:** Thank you.

While we have this plea agreement in front of us, let's talk about it in greater detail. For the record, I have in front of me a document entitled "Binding Plea Agreement under Federal Rule of Criminal Procedure 11(c)(1)(A) and (C)." It is a 24-page document that appears to be fully executed on page 24.

Mr. Yoder, did you sign this document?

**THE DEFENDANT:** I did so in the presence of a U.S. Marshal, Steven Carpenter.

**THE COURT:** Did you sign this document voluntarily?

**THE DEFENDANT:** I did.

**THE COURT:** Before you signed this document, did you read it very carefully?

**THE DEFENDANT:** I did.

**THE COURT:** Before you sign this document, did you consult thoroughly with your attorney about it?

**THE DEFENDANT:** I did.

**THE COURT:** At the time you signed it, do you feel that you fully understood it?

**THE DEFENDANT:** I did.

**THE COURT:** As you sit here today, do you feel that you fully understand all the terms of your plea agreement?

**THE DEFENDANT:** I do.

**THE COURT:** Did anyone force you to sign this agreement?

**THE DEFENDANT:** No.

**THE COURT:** At any time during the negotiations for this agreement or at the time that you signed it, were you impaired in some way that prevented you from appreciating what you were doing?

**THE DEFENDANT:** No.

**THE COURT:** What we're now going to do is I'm going to have Government counsel summarize for us briefly the terms of your plea agreement here in open court. When he's done, I'm going to ask you if what he has described sounds like the deal you entered into with the Government. I want you to listen carefully to make sure he doesn't leave out anything you thought you had agreed to and he doesn't add anything that you did not realize you had agreed to.

Does that make sense?

**THE DEFENDANT:** It does.

**THE COURT:** All right. Mr. Burton.

**MR. BURTON:** Thank you, Your Honor.

You're this is a binding plea agreement filed jointly by the parties under Federal Rule of Criminal Procedure

11(c)(1)(A) and (C). The parties to the agreement are the United States of America and John David Yoder. And the plea agreement, if accepted, binds the defendant, the United States Attorney's Office for the District of Nevada, and the Court. It does not bind any other prosecuting, administrative, or regulatory authority or the United States Probation Office.

Under the plea agreement, the defendant knowingly and voluntarily agrees to plead guilty to the charges set forth in the superseding indictment. Specifically, Count 1, child exploitation enterprise in violation of Title 18 United States Code § 2252A(g) and Count 5, conspiracy to distribute child pornography in violation of Title 18 United States Code § 2252A(a)(3) and (b)(1).

The plea agreement outlines a number of trial rights that the defendant is waiving by entering into this guilty plea agreement. And the defendant agrees that he will not seek to withdraw his guilty plea after he has entered it -- excuse me, after he's entered them in court. The United States agrees not to bring any additional charges against the defendant arising out of the investigations in the District of Nevada which culminated in this plea agreement and based on conduct known to the United States except that the United States reserves the right to prosecute the defendant for any crime of violence as defined by Title 18 United States Code § 16.

The plea agreement contains the elements of the offenses to which the defendant is pleading, as well as the facts supporting his guilty pleas. Those facts begin on line 19 of page 4 and continue to line 22 of page 8.

Under the plea agreement, the defendant acknowledges that the Court must consider the United States Sentencing Guidelines in determining his sentence but that the sentencing guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

The parties -- the plea agreement contains a -- the contemplated guidelines that the parties stipulate to. And the parties acknowledge that the stipulations do not bind the Court and agree that they will not seek to apply any other specific offense characteristics, enhancements, or reductions. Those plea -- or excuse me, guidelines calculations can be found on pages 9 and 10 of the plea agreement.

Under the plea agreement, the parties contemplate that the defendant will be eligible for a three-point reduction for acceptance of responsibility so long as the conditions listed in VI(C) of the plea agreement are found to not apply.

The defendant acknowledges that the Court may base his sentence in part on his criminal record or criminal history and that the Court will determine the defendant's

criminal history category under the sentencing guidelines. The defendant also acknowledges that the Court may consider any counts dismissed under this plea agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable sentencing guidelines range and whether to depart from that range.

The plea agreement contains the maximum penalties for both offenses to which the defendant is pleading, as well as the mandatory minimum sentencing provisions. The statutory mandatory minimum sentence for child exploitation enterprise as charged in Count 1 of the superseding criminal indictment is a 20-year prison sentence. And the statutory mandatory minimum sentence for conspiracy to distribute child pornography as charged in Count 5 of the superseding criminal indictment is a five-year prison sentence.

The defendant understands that he cannot and will not receive a sentence that is lower than 20 years in prison.

**THE COURT:** Sir, did you hear those statutory mandatory minimum sentences?

**THE DEFENDANT:** I did.

**THE COURT:** Do you understand that those are the minimum sentences that the Court could give you in this case for these charges?

**THE DEFENDANT:** I did.

**THE COURT:** And so, if I accept your guilty plea, I

can't sentence you to less than those -- those amounts. Do you understand that?

**THE DEFENDANT:** I do understand.

**THE COURT:** All right. Go ahead, Mr. Burton. Thank you.

**MR. BURTON:** Thank you.

The defendant acknowledges that the Court must consider the factors set forth in Title 18 United States Code § 3553(a) in determining his sentence and that the defendant's sentence cannot be shortened by early -- excuse me, early release on parole because parole has been abolished.

The plea agreement outlines that the defendant is eligible for a -- or subject to a minimum term of supervised release of five years up to a maximum term of life during which he will be subject to various restrictions and requirements. A violation of any condition would -- could, excuse me, order the defendant's return to prison for all or part of the term of supervised release.

The defendant also agrees that he will pay a $100 special assessment per count of conviction at the time of sentencing for a total of $200.

The plea agreement outlines the positions of the parties regarding the defendant's sentence. Specifically, the United States and the defendant agree that they will jointly recommend that the Court sentence the defendant to 288 months

of custody with a lifetime term of supervised release to follow. The parties also agree to recommend this sentence be served concurrently with the sentence the defendant is currently serving in *People versus David Yoder* in Riverside Superior Court, Case Number R1F1501674. I apologize. I misstated that. The case number is RIF1501674.

Additionally, the parties agree to jointly recommend that the defendant be given credit for the time he has been in custody starting from April 14th, 2015, and that any credit be accounted for pursuant to a variance.

The United States Attorney's Office agrees not to oppose the defendant's request to serve both his state and federal sentences in federal prison. And the United States Attorney's Office agrees to not oppose the potential placement of the defendant in an appropriate sex offender agreement program within the Bureau of Prisons should he qualify.

The defendant acknowledges that this sentence will be binding on the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (C), and the defendant agrees that he will not directly or indirectly request a sentence below 288 months in custody or less than a lifetime term of supervised release.

The plea agreement outlines that the defendant and the defendant acknowledges that the conduct to which he is entering a plea gives rise to mandatory restitution to the

victims under Title 18 United States Code § 2259, and it will be the United States who will prove the full amount of the victims' losses reasonably calculated and foreseeable to the defendant's actions of sexually exploiting children and -- excuse me, producing child pornography and distributing child pornography at the time of sentencing.

The plea agreement contains forfeiture -- or the defendant acknowledges under the plea agreement forfeiture of a number of items. To be clear, the defendant states that he has no property interest over these items but out of an abundance of caution is forfeiting his non-property interest in these items. The Government has also provided to the Court a Preliminary Order of Forfeiture that contains the same listed items as are included in the plea agreement.

The -- finally, the plea agreement contains a number of acknowledgments and waivers, and those include the waiver of various appellate and post-conviction rights with the exception of nonwaivable claims of ineffective assistance of counsel and the right to appeal any portion of his sentence that is in excess of 288 months in custody.

Additionally, the defendant acknowledges that, under SORNA, the Sex Offender Registration and Notification Act, this conviction will require him to register as a sex offender and keep the registration current in the jurisdictions where he resides, where he is an employee, and where he is a

student.

Your Honor, those are the essential terms of the plea agreement.

**THE COURT:** Mr. Yoder, did you hear that summary of your plea agreement?

**THE DEFENDANT:** I did. And that's essentially as I understood it precisely. So I am in agreement with what he said.

**THE COURT:** Would it be correct for me to say all the terms of the deal that you have with the Government are written down inside this document?

**THE DEFENDANT:** They are.

**THE COURT:** Mr. Burton, did the Government present any prior plea offers to the defendant that were more favorable to him than this one?

**MR. BURTON:** No, Your Honor.

**THE COURT:** Is that right, Mr. Dolan?

**MR. DOLAN:** That is correct.

**THE COURT:** Is that your understanding as well, Mr. Yoder?

**THE DEFENDANT:** There were quite a number of revisions.

**THE COURT:** Is this the most favorable deal?

**THE DEFENDANT:** Correct.

**MR. DOLAN:** Right.

**THE COURT:** Is this one the most favorable?

**MR. DOLAN:** Nothing that was more favorable.

**THE DEFENDANT:** Nothing that was more favorable.

**THE COURT:** Okay.

*(Defendant conferring with counsel.)*

**THE COURT:** We're going to talk about the facts that your support your guilty plea in this case. In your plea agreement, you admit to a number of facts under penalty of perjury. Those facts begin on page 4 right around line 17, and they continue onto page 8, line 22.

Do you see all those facts?

**THE DEFENDANT:** I have read them, yes.

**THE COURT:** Have you read them very carefully?

**THE DEFENDANT:** Yes.

**THE COURT:** Are all of these facts true and correct?

**THE DEFENDANT:** I intend to have my lawyer speak on those later. The facts are true. I look forward to and eagerly am going to be speaking during the presentencing investigation as to the sentiments and to the true meaning and the state of mind that these facts occurred, and I look forward to exploring the facts and how I felt.

**THE COURT:** Okay. So let me understand, though. I just -- I think my question's a little more targeted.

In this plea agreement, you admit to those pages upon pages of facts under penalty of perjury. You understand that;

right?

**THE DEFENDANT:** Yes.

**THE COURT:** And you've said in there that those facts are true and correct; right?

**THE DEFENDANT:** Yes.

**THE COURT:** And as you sit here today, do you agree that those facts are true and correct?

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. Is the Government satisfied with the factual basis for the plea?

**MR. BURTON:** Yes, Your Honor.

**THE COURT:** Do you understand, sir, by admitting to the facts in your plea agreement under penalty of perjury, those facts can later be used against you, even if you are permitted to withdraw your guilty plea?

**THE DEFENDANT:** Exactly. I agree.

**THE COURT:** By pleading guilty, you will be giving up many legal rights. I want to list them now, and after I list them I will ask you whether you understand that you have all of these rights and that you are giving them up by pleading guilty instead of going to trial. There are about eight of them. So, when I'm done, I will ask you if you understand them, that you have them, and that you're waiving them. Okay? I'm going to list them now.

You're entitled to plead not guilty and to have a

speedy and public jury trial here in this courthouse. You have the right to have the assistance of your attorney at trial and at all stages of the proceedings against you. At trial you would be presumed to be innocent, and before you could be convicted the Government would have to overcome that presumption of innocence and prove to the jury that you are guilty beyond a reasonable doubt. In order for you to be convicted at trial, all of the jurors would have to agree that you are guilty beyond a reasonable doubt. At trial the witnesses for the Government must come to court and testify in your presence, and your attorney could cross-examine those witnesses, object to any evidence he believed was objectionable, offer evidence on your behalf, and use the Court's subpoena power to compel witnesses to come to court and testify on your behalf.

At trial, while you would have a right to testify if you chose to do so, you also would have the right to remain silent and not testify. If you decided not to testify or decided not to put on any evidence at your trial, those decisions could not be used against you in any way.

Do you understand that you have all of these trial rights?

**THE DEFENDANT:** I do understand that.

**THE COURT:** Do you understand that you are waiving these rights and instead entering a guilty plea without going

to trial?

**THE DEFENDANT:** I do.

**THE COURT:** I now want to talk to you about your appeal rights that you are giving up because you're pleading out instead of taking this case to trial. Do you understand that if you were tried by a jury and found guilty, you would have the right to appeal or challenge that verdict to a court higher than this one?

**THE DEFENDANT:** I do.

**THE COURT:** By entering into this plea agreement and pleading guilty, you will be waiving and giving up all of your rights to appeal except in two very limited circumstances. The first appeal right that you keep is the right to bring a challenge based on ineffective assistance of counsel. The second is the right to challenge any sentence I give you to the extent it is higher than 288 months.

These are the only rights to appeal that you keep as a result of your plea agreement, and you're giving up and waiving all other appeal rights and arguments and post-conviction challenges. Do you understand that?

**THE DEFENDANT:** I do.

**THE COURT:** And did you make the decision to waive and give up all of these trial and appeal rights only after fully consulting with your attorney about these important rights and waivers?

**THE DEFENDANT:** I did.

**THE COURT:** Has your attorney explained to you about the federal sentencing guidelines and how he believes they may affect your sentence in this case?

**THE DEFENDANT:** He did.

**THE COURT:** Do you understand that I have to calculate the sentencing guideline range that applies to you and consider it when determining your sentence in this case, but the guidelines are only advisory and the Court can impose a sentence on you that's either within or outside of the guidelines?

**THE DEFENDANT:** Repeat that one more time.

**THE COURT:** I have to calculate the sentencing guideline range that applies to you and consider it in determining your sentence, but the guidelines are only advisory on the Court and the Court can impose a sentence on you that's either within the guidelines or outside of them?

**THE DEFENDANT:** I understand that.

**THE COURT:** Do you understand that regardless of what your plea agreement -- actually, if I accept your -- you've signed a binding plea agreement. So if I accept your binding plea agreement, I have to sentence you to the sentence that is agreed upon by the parties --

**THE DEFENDANT:** Right.

**THE COURT:** -- do you understand that?

**THE DEFENDANT:** That was -- that was what was confusing.

**THE COURT:** And if I don't accept your binding plea agreement, you understand you can withdraw it?

**THE DEFENDANT:** Right.

**THE COURT:** Okay. Do you understand -- let's see. So we talked about the statutory mandatory minimum sentences for these offenses. I want to talk about the maximums, though.

Do you understand that the maximum penalty for the child exploitation enterprise count is life, and the maximum penalty for the conspiracy to distribute child pornography count is 20 years?

**THE DEFENDANT:** I do.

**THE COURT:** Do you understand that a federal prison sentence cannot be shortened by parole because there's no parole in the federal system?

**THE DEFENDANT:** I understand that. I don't know when that went into effect, but I -- I have heard that.

**THE COURT:** Okay. After completing a term in prison, you may be required to serve a term of supervised release of up to life, and there would be terms and conditions that would apply to your supervised release and, if you violated them, your supervised release could be revoked and you could be imprisoned for the full term of supervised release without

credit for good time served while you were out on supervised release? Do you understand that?

**THE DEFENDANT:** I understand that in principle. I believe that I could be brought back and theoretically put back to serve a life term; is that my understanding?

**THE COURT:** Up to, for a violation of supervised release. So if you violated the terms and conditions of your supervised release once you got released -- I mean, obviously there are a number of considerations. There are guidelines. There are statutory provisions that would apply. But ultimately you could have your supervised release revoked and be sent back to prison. Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you understand that if I accept your guilty plea in this case, you will be subject to the terms of the Sex Offender Registration and Notification Act -- we call that SORNA -- and you will be required to register and keep the registration current under the act, and if you fail to comply with all the obligations under SORNA, you'll be subject to prosecution for failure to register under federal law, which is punishable by a fine or imprisonment or both? Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** None of this conduct occurred after May 29th, 2015, did it?

**MR. BURTON:** That's correct, Your Honor, it did not.

**THE COURT:** It's a 2013 case. Okay. So Justice for Victims of Trafficking Act of 2015 doesn't apply?

**MR. BURTON:** Correct, Your Honor.

**THE COURT:** Do you understand the Court must impose a special assessment of $200, which is $100 per count, against you at sentencing, and the Court can impose a fine on you of up to a quarter of a million dollars per count?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you understand that the Court may require you to forfeit property to the Government, surrender assets that you obtained directly or indirectly as a result of the conduct in this case, provide accurate and complete financial information, and make restitution?

**THE DEFENDANT:** I do.

**THE COURT:** Mr. Yoder, are you a U.S. citizen?

**THE DEFENDANT:** I am.

**THE COURT:** No question about that, is that right, Mr. Burton?

**MR. BURTON:** That's correct, Your Honor.

**THE COURT:** As part of your plea agreement, sir, the Government is agreeing to dismiss other counts or not prosecute other counts or charges, but do you understand that the Court may consider any relevant conduct concerning those other counts or charges when determining your sentence in this

case?

**THE DEFENDANT:** I do.

**THE COURT:** We're almost done. In just a minute I'm going to ask you to stand and tell me how you wish to plead, but before I do that are there any remaining questions that you would like to ask your attorney about privately as you sit at the table with him or any questions for Government counsel or the Court?

*(Defendant conferring with counsel.)*

**MR. DOLAN:** Your Honor, I don't believe it's in the form of a question, but Mr. Yoder would like to emphasize to the Court that, in the forfeiture area of the plea agreement, the People -- or the Government has made it clear, but he wanted to emphasize he did not own, possess, or have any purchase of any of the items that are listed in the forfeiture. He makes no claims to them.

And the second thing he wanted to emphasize to the Court is that he was anxious to make sure that he gave a full accounting in the presentence report to the details of everything that surrounds the case.

Those are the two things he's very concerned about.

**THE COURT:** All right. Thank you.

All right. Counsel, is there anything that I missed in the plea canvass?

**MR. BURTON:** No, Your Honor. Thank you.

**THE COURT:** All right. All right. Mr. Yoder, would you please stand for me, sir.

With regard to Count 1 of the indictment charging you with child exploitation enterprise, how do you plead, sir?

**THE DEFENDANT:** Guilty.

**THE COURT:** With regard to Count 5 of the indictment charging you with conspiracy to distribute child pornography, how do you plead, sir?

**THE DEFENDANT:** Guilty.

**THE COURT:** Are you pleading guilty because in truth and in fact you are guilty and for no other reason?

**THE DEFENDANT:** Truth and fact; no other reason.

**THE COURT:** All right. You can have a seat then.

It is the finding of the Court that Mr. Yoder is fully competent and capable of entering an informed plea and that he is aware of the nature of charges and the consequences of his guilty plea and that his plea of guilty to these crimes is a knowing, intelligent, and voluntary plea supported by an independent factual basis containing each one of the essential elements of these offenses. Whether his plea will be accepted and his plea agreement approved are matters I will defer until -- I will defer deciding until I've studied the presentence report.

Do I have consent for -- to review the PSR before accepting the plea?

**MR. BURTON:** Yes from the Government.

**MR. DOLAN:** Yes on behalf of the defense.

**THE COURT:** Is it in the plea agreement? Is that a provision of the plea agreement? Often it is in binding pleas, and I just didn't notice it.

**MR. BURTON:** I don't believe I put it in the plea agreement, Your Honor, but to the extent that there needs to be a record made, I would certainly consent at this time. To the extent that Your Honor wishes to have it in writing, we can prepare some formal document and I can --

**THE COURT:** Yes. If you could please provide and have Mr. Yoder sign a written consent to allow me to review the PSR before I accept the plea.

So when we return here for sentencing, which will be on January 27th at 2:00 p.m., at that time I will also decide whether I will accept the binding plea.

So, Mr. Yoder, the Court will -- once I get that waiver, the written waiver, I will order a Presentence Investigation Report to be prepared by Probation. Obviously you've already indicated that you intend to participate in that discussion with -- with Probation. If -- once that report has been completed, your attorney will, of course, review it with you, and if there are any mistakes or anything has been omitted, that can all be brought to the attention of both Probation and the Court before your sentencing hearing.

At your sentencing hearing your attorney will obviously argue on your behalf, and you'll also have an opportunity that day to tell me anything that you think I should consider in deciding what sentence to give you in this case. I'll also hear and read anything that -- any letters or statements in support of you that are provided by your family or friends. So that's -- that all will happen at sentencing. Okay? Do you understand that?

**THE DEFENDANT:** I do.

**THE COURT:** All right. I have a Preliminary Order of Forfeiture. Mr. Dolan, have you reviewed this Preliminary Order of Forfeiture?

**MR. DOLAN:** We have, and I would emphasize to the Court that Mr. Yoder had not purchased, possessed, or owned any of the items and makes no claim on any.

**THE COURT:** All right. Any objection to the form of the Preliminary Order of Forfeiture?

**MR. DOLAN:** Not at all.

**THE COURT:** All right. Having reviewed it, it appears to be in order and consistent with the terms of the binding plea agreement. So I'm signing the Preliminary Order of Forfeiture here in open court and handing it to Danielle for filing. Thank you, Danielle. Here's the plea agreement as well.

All right. So we will return here for sentencing

January 27th at 2:00 p.m.

I also see that I have a motion in limine pending at Number 90. Any objection to me denying that without prejudice as moot in light of the plea?

**MR. BURTON:** No, Your Honor.

**MR. DOLAN:** No such objection.

**THE COURT:** All right. So I will deny motion in limine Number 90 without prejudice as moot in light of the plea, and we will all return here on January 27th at 2:00 p.m.

Is there anything else that I need to address today?

**MR. BURTON:** Not from the Government, Your Honor.

**MR. DOLAN:** Not on behalf of the defense at this time. I would thank the Court for the understanding and taking the time we had to in order to arrange this plea agreement.

**THE COURT:** All right. So, Mr. Yoder, we'll see you in January.

**THE DEFENDANT:** Thank you.

**THE COURT:** All right. We're adjourned. Defendant is remanded to the custody of the Marshal to await sentencing on January 27th.

*(Proceedings adjourned at 3:10 p.m.)*

--o0o--

COURT REPORTER'S CERTIFICATE

I, AMBER M. McCLANE, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, do hereby certify that pursuant to 28 U.S.C. § 753 the foregoing is a true, complete, and correct transcript of the proceedings had in connection with the above-entitled matter.

DATED: 6/2/2021

/s/ Amber M. McClane
AMBER McCLANE, RPR, CRR, CCR #914

FILED RECEIVED
ENTERED SERVED ON
COUNSEL/PARTIES OF RECORD
FEB 11 2015
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

DANIEL G. BOGDEN
United States Attorney
District of Nevada
LISA C. CARTIER GIROUX
Assistant United States Attorney
333 Las Vegas Boulevard South
Suite 5000
Las Vegas, Nevada 89101
702-388-6336

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM C. THOMPSON,<br>DAVID YODER, and<br>ERIC MONSIVAIS,<br><br>Defendants. | SUPERSEDING CRIMINAL INDICTMENT<br><br>2:13-cr-00368-JAD-VCF<br><br>**VIOLATIONS:**<br>18 U.S.C. §2252A(g), Child Exploitation Enterprise (Count One);18 U.S.C. §2251(a); Sexual Exploitation of a Child (Count Two); 18 U.S.C. §2252A(a)(3)(B), Conspiracy to Produce of Child Pornography (Count Three); 18 U.S.C. §2252A(A)(3)(B), Distribution of Child Pornography (Count Four); 18 U.S.C. §2252A(a)(1), Conspiracy to Transport Child Pornography (Count Five); 18 U.S.C. §2253 Criminal Forfeiture |

**THE GRAND JURY CHARGES THAT:**

## COUNT ONE

Child Exploitation Enterprise

Beginning on a date unknown, but in no event later than November of 2011, and continuing up to on or about January 28, 2015, in the State and Federal District of Nevada and elsewhere,

**WILLIAM C. THOMPSON,**
**DAVID YODER, and**
**ERIC MONSIVAIS,**

the defendants herein, in concert with others known and unknown to the Grand Jury, engaged in a child exploitation enterprise, that is, the above defendants violated Title 18 U.S.C. § 2252(a)(2) and (a)(4)(B), as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and committed those offenses in concert with three or more persons, in violation of Title 18, United States Code, Section 2252A(g).

**COUNT TWO**
Sexual Exploitation of a Child

From on or about November of 2011, to on or about November 20, 2012, in the State and Federal District of Nevada, and elsewhere,

**WILLIAM C. THOMPSON,**

defendant herein, did employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Section 2251(a) and 2251(e).

**COUNT THREE**
Conspiracy to Produce Child Pornography

Beginning on a date unknown, but in no event later than November of 2011, and continuing up to on or about January 28, 2015, in the State and Federal District of Nevada and elsewhere,

**WILLIAM C. THOMPSON,**
**DAVID YODER, and**
**ERIC MONSIVAIS,**

the defendants herein, together and with others known and unknown to the Grand Jury, knowingly agreed and conspired to violate Title 18, United States Code, Section 2251(a), in violation of Title 18, United States Code, Section 2251(e).

Case: 21-10038, 12/13/2021, ID: 12314703, DktEntry: 21, Page 175 of 214

**COUNT FOUR**
Distribution of Child Pornography

From an unknown date to on or about November 20, 2012, in the State and Federal District of Nevada,

**WILLIAM C. THOMPSON,**

defendant herein, did knowingly reproduce any child pornography, as defined in Title 18, United States Code, Section 2256(8), using any means and facility of interstate and foreign commerce; and in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(3) and (b)(1).

**COUNT FIVE**
Conspiracy to Distribute Child Pornography

Beginning on a date unknown but in no event later than November of 2011, and continuing up to on or about January 28, 2015, in the State and Federal District of Nevada and elsewhere,

**WILLIAM C. THOMPSON,**
**DAVID YODER, and**
**ERIC MONSIVAIS,**

defendants herein, together, and with others known and unknown to the Grand Jury, knowingly agreed and conspired to violate Title 18, United States Code, Section 2252A(a)(3) and (b)(1).

**FORFEITURE ALLEGATION ONE**
Child Exploitation Enterprise; Conspiracy to Produce Child Pornography;
Conspiracy to Distribute Child Pornography

1. The allegations contained in Counts One, Three, and Five of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 2253(a)(1).

2. Upon conviction of any of the felony offenses charged in Counts One, Three, and Five of this Superseding Criminal Indictment,

**WILLIAM C. THOMPSON,**
**DAVID YODER, and**
**ERIC MONSIVAIS,**

defendants herein, shall forfeit to the United States of America, any visual depiction described in Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), and 2252A(a)(3) and (b)(1), or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), and 2252A(a)(3) and (b)(1):

1. Dell computer tower. Model No. Vostro 400. Serial No. D2CXRF1. This computer contained a Seagate 1 TB SATA hard drive. Model No. ST1000DM003. Serial No. SIDOMRJQ.

2. Hitachi 2TB external hard drive. Model No. HTOLDNB20001BBB. Serial No. F31G2NXD.

3. Western Digitall TB hard drive. Model No. WDIOEADS. Serial No.WCAV5M930266.

4. San Disk Card Reader.

5. San Disk 16GB Compact Flash Card.

6. Panasonic Video Camera. Model No. SDR-H85P. Serial No. J01A18002.

7. 2 micro video cassettes.

8. Proof of residence documents.

9. Compaq Presario laptop computer. Model No. CQ57. Serial No. 5CB2174R1P. This laptop contained a Seagate 320GB SATA hard drive. Model No. ST9320325AS. Serial No. 6VDFR10V.

10. Canon Mark II digital camera. Serial No. 4252102526.

11. Emachines desktop computer. Model No. EL1850. Serial No. PTNBK02012040038589600. This computer contained a 500GB SATA hard drive. Model No. HDS721050CLA362. Serial No. HEIBIMMT.

12. Gateway desktop computer. Model No. DX4860-UB33P. Serial No. PTGCPP200420400EF66300. This computer contained a Western Digital 1TB SATA hard drive. Model No. WD10EARX. Serial No.WMCOT0032462.

Case: 21-10038, 12/13/2021, ID: 12314703, DktEntry: 21, Page 177 of 227

13. Compaq Presario desktop computer. Model No. SR5034X. Serial No. MXX71406PP. This computer contained a Samsung 160GB SATA hard drive. Model No. HD160JJ/P. Serial No. SODFJ1GP107611.

14. Apple IPhone 4S. Model No. A1387. Serial No. CBPH20MGDTDW. IME No. 99000110136386. Sprint mini SIM card. No. 8901010008831126638F.

15. 100 CD's and DVD's.

16. 13 CD's and DVD's.

17. Hitachi DVD Cam. Serial No. 50320241.

18. Sony Digital Camera. Model No. MVC-FDlOO. Serial No. 500023. This device has no internal memory, but has media card and a 3.5 inch floppy diskette. The media card has 128MB of memory.

19. Kodak digital camera. Model No. Easyshare Z710. Serial No. KCXGG64336528.

20. Kodak digital camera. Model No. Z981. Serial No. KVYMN02061276.

21. A Black HP laptop model, g6-2237us. Serial#5CD2490UMC.

22. A Toshiba Satellite C655D-S5209 laptop, serial #7B231863Q.

23. A Toshiba Satellite C55D-A5304 laptop, serial #YDZ808Z4Q.

24. A Black Seagate Expansion Desktop Drive, P/N 1D7AP3-500, serial #NA4K688Y.

25. An Apple iPhone in black case, model number A1332.

26. An Apple iPhone without a case, model number A1387.

27. A black Samsung cellular flip phone, model SPH-M270.

28. A black digital Canon EOS camera, serial #3211600699 model DS126201.

29. A Cannon Rebel XST camera, model number DS126181, serial #0670215963, containing one 2 GB SD card.

30. A Nikon D700 digital camera, serial #3114091, containing 2 SD cards, (1) 8 GB, (1) 16 GB.

31. An Apple iPhone, FCC ID: BCG-E2422A.

32. An Apple iPhone, FCC ID: BCG-E2430A.

33. A Toshiba External Drive, Serial number: 23EAPV0ZTRE8.

34. Any visual depiction or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A.

All pursuant to Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), 2252A(a)(3) and (b)(1), and 2253(a)(1).

**FORFEITURE ALLEGATION TWO**
Child Exploitation Enterprise; Conspiracy to Produce Child Pornography;
Conspiracy to Distribute Child Pornography

1. The allegations contained in Counts One, Three, and Five of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 2253(a)(2).

2. Upon conviction of any of the felony offenses charged in Counts One, Three, and Five of this Superseding Criminal Indictment,

**WILLIAM C. THOMPSON,**
**DAVID YODER, and**
**ERIC MONSIVAIS,**

defendants herein, shall forfeit to the United States of America, any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from violations of Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), and 2252A(a)(3) and (b)(1) ("property").

3. If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 2253(a)(2), as a result of any act or omission of the defendant(s) –

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendants for the property listed above.

All pursuant to Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), 2252A(a)(3) and (b)(1), and 2253(a)(2).

**FORFEITURE ALLEGATION THREE**
Child Exploitation Enterprise; Conspiracy to Produce Child Pornography;
Conspiracy to Distribute Child Pornography

1. The allegations contained in Counts One, Three, and Five of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 2253(a)(3).

2. Upon conviction of any of the felony offenses charged in Counts One, Three, and Five of this Superseding Criminal Indictment,

**WILLIAM C. THOMPSON,**
**DAVID YODER, and**
**ERIC MONSIVAIS,**

defendants herein, shall forfeit to the United States of America, any property, real or personal, used or intended to be used to commit or to promote the commission of Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), and 2252A(a)(3) and (b)(1) or any property traceable to such property:

1. Dell computer tower. Model No. Vostro 400. Serial No. D2CXRF1. This computer contained a Seagate 1 TB SATA hard drive. Model No. ST1000DM003. Serial No. SIDOMRJQ.

2. Hitachi 2TB external hard drive. Model No. HTOLDNB20001BBB. Serial No. F31G2NXD.

3. Western Digitall TB hard drive. Model No. WDIOEADS. Serial No.WCAV5M930266.

4. San Disk Card Reader.

5. San Disk 16GB Compact Flash Card.

6. Panasonic Video Camera. Model No. SDR-H85P. Serial No. J01A18002.

7. 2 micro video cassettes.

8. Proof of residence documents.

9. Compaq Presario laptop computer. Model No. CQ57. Serial No. 5CB2174R1P. This laptop contained a Seagate 320GB SATA hard drive. Model No. ST9320325AS. Serial No. 6VDFR10V.

10. Canon Mark II digital camera. Serial No. 4252102526.

11. Emachines desktop computer. Model No. EL1850. Serial No. PTNBK02012040038589600. This computer contained a 500GB SATA hard drive. Model No. HDS721050CLA362. Serial No. HElBIMMT.

12. Gateway desktop computer. Model No. DX4860-UB33P. Serial No. PTGCPP200420400EF66300. This computer contained a Western Digital 1TB SATA hard drive. Model No. WD10EARX. Serial No.WMCOT0032462.

13. Compaq Presario desktop computer. Model No. SR5034X. Serial No. MXX71406PP. This computer contained a Samsung 160GB SATA hard drive. Model No. HD160JJ/P. Serial No. SODFJ1GP107611.

14. Apple IPhone 4S. Model No. A1387. Serial No. CBPH20MGDTDW. IME No. 99000110136386. Sprint mini SIM card. No. 8901010008831126638F.

15. 100 CD's and DVD's.

16. 13 CD's and DVD's.

17. Hitachi DVD Cam. Serial No. 50320241.

18. Sony Digital Camera. Model No. MVC-FDlOO. Serial No. 500023. This device has no internal memory, but has media card and a 3.5 inch floppy diskette. The media card has 128MB of memory.

19. Kodak digital camera. Model No. Easyshare Z710. Serial No. KCXGG64336528.

20. Kodak digital camera. Model No. Z981. Serial No. KVYMN02061276.

21. A Black HP laptop model, g6-2237us. Serial#5CD2490UMC.

22. A Toshiba Satellite C655D-S5209 laptop, serial #7B231863Q.

23. A Toshiba Satellite C55D-A5304 laptop, serial #YDZ808Z4Q.

24. A Black Seagate Expansion Desktop Drive, P/N 1D7AP3-500, serial #NA4K688Y.

25. An Apple iPhone in black case, model number A1332.

26. An Apple iPhone without a case, model number A1387.

27. A black Samsung cellular flip phone, model SPH-M270.

28. A black digital Canon EOS camera, serial #3211600699 model DS126201.

29. A Cannon Rebel XST camera, model number DS126181, serial #0670215963, containing one 2 GB SD card.

30. A Nikon D700 digital camera, serial #3114091, containing 2 SD cards, (1) 8 GB, (1) 16 GB.

31. An Apple iPhone, FCC ID: BCG-E2422A.

32. An Apple iPhone, FCC ID: BCG-E2430A.

33. A Toshiba External Drive, Serial number: 23EAPV0ZTRE8.

34. Any visual depiction or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Sections 2251 and 2252A.

All pursuant to Title 18, United States Code, Sections 2251(a) and (e), 2252(a)(2) and (a)(4)(B), 2252A(a)(3) and (b)(1), and 2253(a)(3).

**FORFEITURE ALLEGATION FOUR**
Sexual Exploitation of a Child and Distribution of Child Pornography

1. The allegations contained in Counts Two and Four of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 2253(a)(1).

2. Upon conviction of any of the felony offenses charged in Counts Two and Four of this Superseding Criminal Indictment,

**WILLIAM C. THOMPSON,**

defendant herein, shall forfeit to the United States of America, any visual depiction described in Title 18, United States Code, Sections 2251(a) and 2252A(a)(3)(A) and (B), or any book, magazine,

periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Sections 2251(a) and 2252A(a)(3)(A) and (B):

1. Dell computer tower. Model No. Vostro 400. Serial No. D2CXRF1. This computer contained a Seagate 1 TB SATA hard drive. Model No. ST1000DM003. Serial No. SlDOMRJQ.

2. Hitachi 2TB external hard drive. Model No. HTOLDNB20001BBB. Serial No. F31G2NXD.

3. Western Digitall TB hard drive. Model No. WDlOEADS. Serial No.WCAV5M930266.

4. San Disk Card Reader.

5. San Disk 16GB Compact Flash Card.

6. Panasonic Video Camera. Model No. SDR-H85P. Serial No. J01A18002.

7. 2 micro video cassettes.

8. Proof of residence documents.

9. Compaq Presario laptop computer. Model No. CQ57. Serial No. 5CB2174R1P. This laptop contained a Seagate 320GB SATA hard drive. Model No. ST9320325AS. Serial No. 6VDFR10V.

10. Canon Mark II digital camera. Serial No. 4252102526.

11. Emachines desktop computer. Model No. EL1850. Serial No. PTNBK02012040038589600. This computer contained a 500GB SATA hard drive. Model No. HDS721050CLA362. Serial No. HElBIMMT.

12. Gateway desktop computer. Model No. DX4860-UB33P. Serial No. PTGCPP200420400EF66300. This computer contained a Western Digital 1TB SATA hard drive. Model No. WD10EARX. Serial No.WMCOT0032462.

13. Compaq Presario desktop computer. Model No. SR5034X. Serial No. MXX71406PP. This computer contained a Samsung 160GB SATA hard drive. Model No. HD160JJ/P. Serial No. SODFJ1GP107611.

14. Apple IPhone 4S. Model No. Al387. Serial No. CBPH20MGDTDW. IME No. 99000110136386. Sprint mini SIM card. No. 89010100088311266638F.

15. 100 CD's and DVD's.

16. 13 CD's and DVD's.

17. Hitachi DVD Cam. Serial No. 50320241.

18. Sony Digital Camera. Model No. MVC-FDIOO. Serial No. 500023. This device has no internal memory, but has media card and a 3.5 inch floppy diskette. The media card has 128MB of memory.

19. Kodak digital camera. Model No. Easyshare Z710. Serial No. KCXGG64336528.

20. Kodak digital camera. Model No. Z981. Serial No. KVYMN02061276.

21. A Black HP laptop model, g6-2237us. Serial#5CD2490UMC.

22. A Toshiba Satellite C655D-S5209 laptop, serial #7B231863Q.

23. A Toshiba Satellite C55D-A5304 laptop, serial #YDZ808Z4Q.

24. A Black Seagate Expansion Desktop Drive, P/N 1D7AP3-500, serial #NA4K688Y.

25. An Apple iPhone in black case, model number A1332.

26. An Apple iPhone without a case, model number A1387.

27. A black Samsung cellular flip phone, model SPH-M270.

28. A black digital Canon EOS camera, serial #3211600699 model DS126201.

29. A Cannon Rebel XST camera, model number DS126181, serial #0670215963, containing one 2 GB SD card.

30. A Nikon D700 digital camera, serial #3114091, containing 2 SD cards, (1) 8 GB, (1) 16 GB.

31. An Apple iPhone, FCC ID: BCG-E2422A.

32. An Apple iPhone, FCC ID: BCG-E2430A.

33. A Toshiba External Drive, Serial number: 23EAPV0ZTRE8.

34. Any visual depiction or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A.

All pursuant to Title 18, United States Code, Sections 2251(a), 2252A(a)(3)(A) and (B), and 2253(a)(1).

**FORFEITURE ALLEGATION FIVE**

Sexual Exploitation of a Child and Distribution of Child Pornography

1. The allegations contained in Counts Two and Four of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 2253(a)(3).

2. Upon conviction of any of the felony offenses charged in Counts Two and Four of this Superseding Criminal Indictment,

**WILLIAM C. THOMPSON,**

defendant herein, shall forfeit to the United States of America, any property, real or personal, used or intended to be used to commit or to promote the commission of Title 18, United States Code, Sections 2251(a) and 2252A(a)(3)(A) and (B) or any property traceable to such property:

1. Dell computer tower. Model No. Vostro 400. Serial No. D2CXRF1. This computer contained a Seagate 1 TB SATA hard drive. Model No. ST1000DM003. Serial No. SIDOMRJQ.

2. Hitachi 2TB external hard drive. Model No. HTOLDNB20001BBB. Serial No. F31G2NXD.

3. Western Digitall TB hard drive. Model No. WDIOEADS. Serial No.WCAV5M930266.

4. San Disk Card Reader.

5. San Disk 16GB Compact Flash Card.

6. Panasonic Video Camera. Model No. SDR-H85P. Serial No. J01Al8002.

7. 2 micro video cassettes.

8. Proof of residence documents.

9. Compaq Presario laptop computer. Model No. CQ57. Serial No. 5CB2174R1P. This laptop contained a Seagate 320GB SATA hard drive. Model No. ST9320325AS. Serial No. 6VDFR10V.

10. Canon Mark II digital camera. Serial No. 4252102526.

11. Emachines desktop computer. Model No. EL1850. Serial No. PTNBK02012040038589600. This computer contained a 500GB SATA hard drive. Model No. HDS721050CLA362. Serial No. HElBIMMT.

12. Gateway desktop computer. Model No. DX4860-UB33P. Serial No. PTGCPP200420400EF66300. This computer contained a Western Digital 1TB SATA hard drive. Model No. WD10EARX. Serial No.WMCOT0032462.

13. Compaq Presario desktop computer. Model No. SR5034X. Serial No. MXX71406PP. This computer contained a Samsung 160GB SATA hard drive. Model No. HD160JJ/P. Serial No. SODFJ1GP107611.

14. Apple IPhone 4S. Model No. Al387. Serial No. CBPH20MGDTDW. IME No. 99000110136386. Sprint mini SIM card. No. 8901010008831126638F.

15. 100 CD's and DVD's.

16. 13 CD's and DVD's.

17. Hitachi DVD Cam. Serial No. 50320241.

18. Sony Digital Camera. Model No. MVC-FDlOO. Serial No. 500023. This device has no internal memory, but has media card and a 3.5 inch floppy diskette. The media card has 128MB of memory.

19. Kodak digital camera. Model No. Easyshare Z710. Serial No. KCXGG64336528.

20. Kodak digital camera. Model No. Z981. Serial No. KVYMN02061276.

21. A Black HP laptop model, g6-2237us. Serial#5CD2490UMC.

22. A Toshiba Satellite C655D-S5209 laptop, serial #7B231863Q.

23. A Toshiba Satellite C55D-A5304 laptop, serial #YDZ808Z4Q.

24. A Black Seagate Expansion Desktop Drive, P/N 1D7AP3-500, serial #NA4K688Y.

25. An Apple iPhone in black case, model number A1332.

26. An Apple iPhone without a case, model number A1387.

27. A black Samsung cellular flip phone, model SPH-M270.

28. A black digital Canon EOS camera, serial #3211600699 model DS126201.

29. A Cannon Rebel XST camera, model number DS126181, serial #0670215963, containing one 2 GB SD card.

30. A Nikon D700 digital camera, serial #3114091, containing 2 SD cards, (1) 8 GB, (1) 16 GB.

31. An Apple iPhone, FCC ID: BCG-E2422A.

32. An Apple iPhone, FCC ID: BCG-E2430A.

33. A Toshiba External Drive, Serial number: 23EAPV0ZTRE8.

34. Any visual depiction or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Sections 2251 and 2252A.

All pursuant to Title 18, United States Code, Sections 2251(a), 2252A(a)(3)(A) and (B), and 2253(a)(3).

**DATED:** this 11th day of February, 2015.

**A TRUE BILL:**

/S/
FOREPERSON OF THE GRAND JURY

DANIEL G. BOGDEN
United States Attorney

LISA C. CARTIER GIROUX
Assistant United States Attorney

FILED ENTERED
COUNSEL/PARTIES OF RECORD
FEB - 4 2021
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

JOHN DAVID YODER
Attorney *pro se et in forma pauperis*
Federal Number 53352048, G4 48 B
Nevada Southern Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060-3427

**UNITED STATES DISTRICT COURT
FOR THE NINTH CIRCUIT
DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,
Plaintiff,

vs.

JOHN DAVID YODER,
Defendant.

**Case No.: 2:13-cr-00368-JAD-VCF**
**NOTICE OF APPEAL**

Notice is hereby given that John David Yoder, defendant in the above named case, hereby appeals to the United States Court of Appeals for the 9th Circuit from the final judgement and sentencing entered in this action on the 26th day of January, 2021.[1]

Respectfully Submitted,
John David Yoder
John David Yoder
Dated: 1 February 2021

1 As it departs in concern to superlative Lifetime Supervised Release and in regards to factors and proposed terms contained therein above "standard" guideline terms provably, sustainably, affirmably, Constitutionally Defective, and/or in consideration of being "PLAINFULLY UNREASONABLE," and in violation of Plea Agreement Clause VIII 2(D)(6) comparing co-defendant Mr. Harper's release (given his exponentially more nefarious conduct), tried under Rule 20 by a different presiding judge, in a different Circuit (Virginia), and any relief not considered by Ineffective Assistance of Counsel (see attached letter to Dolan Law Offices, dated 1 February 2021). Respectfully, humbly, and honourably noticed.

John David Yoder
53352048, G4 48 B
Nevada Detention Center
2190 East Mesquite Avenue
Pahrump, NV 89060-3427

1 February 2021

Dolan Law Offices
John Dolan
45290 Fargo Street
Indio, CA 92201

Re: Ethical Obligation to File Notice of Appeal
Case No.: 2:13-cr-00368-JAD-VCF
United States vs. John David Yoder

Dear John:

Under advisement from the Federal Defender's Office, I firmly believe you are (or should be) ethically compelled to File a "Notice of Appeal" at my request. I hereby issue said request unambiguously unto you of sound mind with resounding clarity and affirmation.

Pursuant to permissions granted by 18 USC § 3742 (e) 3)(C) where [paraphrasing] judgement in supervised release terms departs to a degree

received no reply, page 1, I quote

"[...] I was counselled [by you] that we risked breaching the plea agreement if we were to raise ongoing objections. [...] Because my defense did not object in open court in sentencing, does in no way reflect that Dolan Law Offices did indeed make every effort to resolve and object over the course of preparing for sentencing.

Unfortunately, no new evidence shall be presented during an appeal and despite [YEARS] of pleading with you to file a 720 motion to admit Probate Court Record and to contact my Guardianship Lawyer, Stella Raffei you did not. The (false) claim the (PSR) makes about Desert Hot Springs police investigations in page 14 of Thompson and Yoder luring boys and any other "police" activity were quashed and available in transcript and Judicial Opinion, so much so that [State] prosecutor William Robinson subpoenaed them and did not use them at trial (I was noticed). All five victims Officer Remmer's perjured himself about, recall were 1) not audio or video recorded, and 2)

3

in regards or other factors so dispro-portionate to other parties in the case that are "PLAINLY UNREASONABLE," e.g. Mr Harper only got 5 years supervised release, does not have 154 polygraphs a year; is not USA vs. Wolff Child excluded from any contact with natural (as yet) unborn children (case law unconstitutional and homophobic); et cetera

I (am) entitled to an appellate REVIEW of excessive and unreasonable above standard supervision guideline terms (especially) when considering the undisputed FACT I had ZERO criminal history and was vetted by two counties of Social Services and Community Care Licensing with my home buzzing with professionals 2002-2015.

A defendant always has the right to competant and effective counsel and this right shall not be disprovable by his counsel's failure to object or make "uncontested presentence report statements" in open court.[1]

Furthermore, as in my letter, dated 13 January 2021 to you, as yet I have

[1] Non-waivable claim of ineffective assistance of counsel (Plea Agreement, Page 22)

[Arresting] Officer Remmers admitted he made the police reports (oddly verbatim dialogue interview responses) some 14 days after he spoke with them and from "memory" and on the ... says called me "Dave Yoder" ... "students" would (never) call me, let alone "Dave", a name I've never been called. Furthermore, Raffel records ZERO police substantiations GUARDIANSHIP GRANTED ???

WHERE IS THE LOGIC? POLICE ... With all the excessive ... I DO find it ... the Government ... continuing "no response, nor Dolan Law Offices "failure to present a defense" point(s) out to the honourable court there is ZERO EVIDENCE I ever had child pornography to distribute

(USA vs. ...) → No Gov. Mental Health Evaluation to Counter our Reports

ZERO TESTIMONY any co-defendant had ever ... or given me any child pornography

ZERO TESTIMONY I was present during child pornography production

ZERO police reports pre-arrest January 30, 2015

NEVER arrested for DUI, charged or cited as "implied" on PSR

ADOPTED sons testified never seeing any inappropriate behaviour, only Anthony Ruiz (highly susp...)

Signed this 1st day of February, 2021 at Pahrump, NV

John David Yoder

John David Yoder

4

Davide Yoder
53352048, G4 48 B
NSDC, il cappannone
2190 East Mesquite Avenue

LAS VEGAS NV 890
2 FEB 2021 PM 3 L

FILED
ENTERED

STAYED U.S. MARSHALS SERVICE

FEB - 4 2021

CLERK US DISTRICT

Legal-Mail-
La posta legale

This correspondence originated from a detention facility. The facility is not responsible for the contents herein.

Clerk, U.S. District Court
District of Nevada
Lloyd D. George U.S. Courthouse
333 Las Vegas Blvd. So. - Rm 1334
LAS VEGAS, NV 89101

89101-706934

NOTICE OF APPEAL

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

Name of U.S. District Court: District of Nevada

U.S. District Court case number: 2:13-cr-00368-JAD-VCF

Date case was first filed in U.S. District Court: 02/11/2015

Date of judgment or order you are appealing: 01/22/2021

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

○ Yes ○ No ◉ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

John David Yoder

Is this a cross-appeal? ○ Yes ◉ No

If Yes, what is the first appeal case number?

Was there a previous appeal in this case? ○ Yes ◉ No

If Yes, what is the prior appeal case number?

Your mailing address:

Dolan Law Offices

45-290 Fargo Street

City: Indio State: CA Zip Code: 92201

Prisoner Inmate or A Number (if applicable): 53352048

**Signature** John Dolan **Date** Feb 3, 2021

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 6. Representation Statement**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

John David Yoder

Name(s) of counsel (if any):

John Patrick Dolan

Address: 45-290 Fargo Street, Indio, CA 92201

Telephone number(s): 760-775-3739

Email(s): JPD@Dolanlawoffices.com

Is counsel registered for Electronic Filing in the 9th Circuit? (•) Yes ( ) No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

United States of America

Name(s) of counsel (if any):

Christopher Burton
Elham Roohani

Address: 501 Las Vegas Blvd. South, Suite 1100, Las Vegas, NV 89101

Telephone number(s): 702-388-6336

Email(s): christopher.burton4@usdoj.gov & elham.roohani@usdoj.gov

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit? ◯ Yes ◯ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

CLOSED,APPEAL,Restraint_Legs

# United States District Court
# District of Nevada (Las Vegas)
# CRIMINAL DOCKET FOR CASE #: 2:13-cr-00368-JAD-VCF All Defendants

Case title: USA v. Thompson et al

Date Filed: 09/25/2013
Date Terminated: 03/30/2021

---

Assigned to: Judge Jennifer A. Dorsey
Referred to: Magistrate Judge Cam Ferenbach

**Defendant (1)**

**William C. Thompson**
*TERMINATED: 05/29/2019*

represented by

**Heidi A Ojeda**
Federal Public Defender
411 E. Bonneville Avenue
Las Vegas, Nv 89101
702-388-6577
Fax: 702-388-6261
Email: heidi_ojeda@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: FPD*

**Shari L. Kaufman**
Federal Public Defender
411 E Bonneville
Suite 250
Las Vegas, NV 89101-
Email: Shari_Kaufman@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: FPD*

**Brenda Weksler**
Federal Public Defender
411 E Bonneville
Suite 250
Las Vegas, NV 89101-
702-388-6577
Fax: 702-388-6261
Email: brenda_weksler@fd.org
*TERMINATED: 05/29/2019*
*Designation: FPD*

**Elisa Vasquez**
Federal Public Defender
411 E. Bonneville Ave.
Las Vegas, NV 89101

702-388-6577
Fax: 702-388-5819
Email: ecf_vegas@fd.org
*TERMINATED: 02/03/2015*
*Designation: FPD*

| Pending Counts | Disposition |
|---|---|
| 18:2252A(g) - Child Exploitation Enterprise (1s) | Sentenced 5/20/2019 |
| 18:2251(a) and 2251(e) - Sexual Exploitation of a Child (2s) | Sentenced 5/20/2019 |
| 18:2251(e) - Conspiracy to Produce Child Pornography (3s) | Sentenced 5/20/2019 |
| 18:2252A(a)(3)and (b)(1) - Distribution of Child Pornography (4s) | Sentenced 5/20/2019 |
| 18:2252A(a)(3)and (b)(1) - Conspiracy to Distribute of Child Pornography (5s) | Sentenced 5/20/2019 |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| 18:2251(a) and 2251(e) - Sexual Exploitation of a Child (1) | Dismissed 5/20/2019 |
| 18:2251(d)(1)(A) - Advertising Child Pornography (2) | Dismissed 5/20/2019 |
| 18:2252A(a)(3)(A) and (B) - Distribution of Child Pornography (3) | Dismissed 5/20/2019 |

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
|---|---|
| None | |

---

Assigned to: Judge Jennifer A. Dorsey
Referred to: Magistrate Judge Cam Ferenbach

Appeals court case numbers: 21-10038 Ninth Circuit, 21-10038 Ninth Circuit

**Defendant (2)**

**John David Yoder**
53352048
Nevada Southern Detention Center
2190 East Mesquite Ave
Pahrump, NV 89060
*TERMINATED: 01/22/2021*

represented by

**Alan Ellis**
Law Offices of Alan Ellis
35501 South Highway 1
Unit 150
Gualala, CA 95445
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Christopher R Oram**
Christopher R. Oram
520 South 4th Street
2nd Floor
Las Vegas, NV 89101
702-598-1471
Fax: 702-974-0623
Email: contact@christopheroramlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**John Patrick Dolan**
Dolan Law Offices
45-290 Fargo Street
Indio, CA 92201
760-775-3739
Fax: 760-347-9413
Email: dolanlawoffices@gmail.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Alan Ellis**
(See above for address)
*TERMINATED: 01/22/2021*
*Designation: Retained*

**Jennifer Waldo**
Waldo Law, LLC
10161 West Park Run Drive
Suite 150
Las Vegas, NV 89145
702-908-2431
Fax: 702-901-6192
Email: jmw@jwaldolaw.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**William H Gamage**

The Law Office of William Gamage
7626 Hope Valley Street
Las Vegas, NV 89139
9072276522
Email: wgamage@gamagelaw.com
*TERMINATED: 11/26/2018*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2252A(g) - Child Exploitation Enterprise (1) | Sentenced 1/11/2021 |
| 18:2251(e) - Conspiracy to Produce Child Pornography (3) | Dismissed 1/11/2021 |
| 18:2252A(a)(3)and (b)(1) - Conspiracy to Distribute of Child Pornography (5) | Sentenced 1/11/2021 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: Judge Jennifer A. Dorsey
Referred to: Magistrate Judge Cam Ferenbach

**Defendant (3)**

**Eric Monsivais**
*TERMINATED: 03/30/2021*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|

| | |
|---|---|
| 18:2252A(g) - Child Exploitation Enterprise (1) | Dismissed 3/29/2021 |
| 18:2251(e) - Conspiracy to Produce Child Pornography (3) | Dismissed 3/29/2021 |
| 18:2252A(a)(3)and (b)(1) - Conspiracy to Distribute of Child Pornography (5) | Dismissed 3/29/2021 |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

**USA** represented by

**Christopher Burton**
U.S. Attorney's Office
501 Las Vegas Blvd. So., Ste. 1100
Las Vegas, NV 89101
702-388-6336
Email: Christopher.Burton4@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Daniel D. Hollingsworth**
U.S. Attorney's Office
501 Las Vegas Blvd So
Suite 1100
Las Vegas, NV 89101-
Email: Daniel.Hollingsworth@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Elham Roohani**
501 Las Vegas Blvd., South
Suite 1100
Las Vegas, NV 89101
702-388-6336
Email: Elham.Roohani@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Lisa Cartier-Giroux**
U.S. Attorneys Office
501 Las Vegas Blvd South
Suite 1100

Las Vegas, NV 89101
702-388-6336
Email: Lisa.Cartier-Giroux@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Michael A Humphreys - US Atty**
United States Attorneys Office
501 Las Vegas Blvd. South
Suite 1100
Las Vegas, NV 89101
702-388-6336
Fax: 702-388-6787
Email: Michael.Humphreys@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Cristina D Silva**
U.S. Attorneys Office
501 Las Vegas Blvd., So., Ste 1100
Las Vegas, NV 89101
702-388-6336
Email: cristina.silva@usdoj.gov
*TERMINATED: 08/12/2020*
*Designation: USA*

**Roger Yang**
U.S. Attorney's Office
333 Las Vegas Blvd. South
Las Vegas, NV 89101
(702) 388-6336
Email: Roger.Yang@usdoj.gov
*TERMINATED: 01/28/2015*
*Designation: USA*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2013 | | Case assigned to Judge Jennifer A. Dorsey and Magistrate Judge Cam Ferenbach. (MMM) (Entered: 09/25/2013) |
| 09/25/2013 | 1 | INDICTMENT as to William C. Thompson (1), Counts 1-3. (MMM) (Entered: 09/25/2013) |
| 09/25/2013 | 2 | AO 257 to 1 Indictment as to William C. Thompson. (MMM) (Entered: 09/25/2013) |
| 09/25/2013 | 3 | MINUTES OF PROCEEDINGS - Grand Jury Return as to William C. Thompson held on 9/25/2013 before Magistrate Judge Cam Ferenbach. Crtrm Administrator: *Araceli Bareng*; AUSA: *Adam Flake*; Court Reporter/FTR #: *Phyllis Wright*; Time of Hearing: *11:00 am - 11:01 am*; Courtroom: *3D*; Warrant to issue. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 09/25/2013) |
| 01/28/2015 | 5 | NOTICE OF ATTORNEY APPEARANCE Lisa Cartier-Giroux appearing for USA. (DKJ) (Entered: 01/28/2015) |

| | | |
|---|---|---|
| 01/28/2015 | 6 | Arrest Warrant Returned Executed on 1/28/2015 in case as to William C. Thompson re 4 Warrant Issued. (DKJ) (Entered: 01/29/2015) |
| 01/28/2015 | 7 | MINUTES OF PROCEEDINGS - Initial Appearance/Arraignment & Plea as to William C. Thompson held on 1/28/2015 before Magistrate Judge Cam Ferenbach. Crtrm Administrator: *J. Ries*; AUSA: *Lisa Cartier-Giroux*; Def Counsel: *Elisa Vasquez*; Court Reporter/FTR #: *3:44 - 3:54*; Courtroom: *3D*; Defendant is present in custody. ORDERED that this case is UNSEALED. Financial Affidavit filed. The Federal Public Defenders Office is appointed as defense counsel. Defendant is arraigned on Indictment. Defendant pleads NOT GUILTY to count(s) 1-3. Order regarding Pretrial Procedure is entered and copies will be served on counsel at a later date. Government seeks detention and the defendant submits. ORDERED that the defendant is DETAINED. The U.S. Probation Office is directed to prepare a report detailing the defendant's criminal history, if any. Defendant is remanded to custody. Calendar Call set for 3/9/2015 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Jury Trial set for 3/17/2015 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey.**(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 01/29/2015) |
| 01/28/2015 | 9 | ORDER APPOINTING COUNSEL as to William C. Thompson. FPD appointed as counsel for Defendant, subpoenas issued upon request with exception to out of state subpoenas which will require court approval. Signed by Magistrate Judge Cam Ferenbach on 1/28/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 01/29/2015) |
| 01/28/2015 | 10 | ORDER REGARDING PRETRIAL PROCEDURE as to William C. Thompson. Responses to motions to be filed and served within fourteen (14) calendar days from the date of service of the motion; and reply brief to be served within seven (7) calendar days from the date of service of the response. Motions due by 2/27/2015. Signed by Magistrate Judge Cam Ferenbach on 1/28/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 01/29/2015) |
| 02/03/2015 | 11 | NOTICE OF ATTORNEY APPEARANCE: Brenda Weksler appearing for William C. Thompson (Weksler, Brenda) (Entered: 02/03/2015) |
| 02/03/2015 | | Attorney update in case as to William C. Thompson: Attorney Elisa Vasquez withdrawn. (Weksler, Brenda) (Entered: 02/03/2015) |
| 02/03/2015 | 12 | ORDER OF DETENTION as to William C. Thompson. Defendant shall be detained pending trial. Signed by Magistrate Judge Cam Ferenbach on 2/3/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 02/03/2015) |
| 02/06/2015 | 13 | Government's Disclosure Statement filed by USA as to William C. Thompson.. (Cartier-Giroux, Lisa) (Entered: 02/06/2015) |
| 02/11/2015 | 14 | SUPERSEDING INDICTMENT as to William C. Thompson (1) Counts 1s-5s, David Yoder (2) Counts 1, 3, 5, Eric Monsivais (3) Counts 1, 3, 5. (SLR) (Entered: 02/11/2015) |
| 02/11/2015 | 15 | AO 257 to 14 Superseding Indictment as to William C. Thompson. (SLR) (Entered: 02/11/2015) |
| 02/11/2015 | 16 | AO 257 to 14 Superseding Indictment as to David Yoder. (SLR) (Entered: 02/11/2015) |
| 02/11/2015 | 17 | AO 257 to 14 Superseding Indictment as to Eric Monsivais. (SLR) (Entered: 02/11/2015) |
| 02/11/2015 | 18 | MINUTES OF PROCEEDINGS - Grand Jury Return as to David Yoder, Eric Monsivais, William C. Thompson held on 2/11/2015 before Magistrate Judge Carl W. Hoffman. Crtrm Administrator: *Alana Kamaka*; AUSA: *Robert Knief*; Court Reporter/FTR #: *Glorious Fealing*; Time of Hearing: *1:37 pm - 1:39 pm*; Courtroom: *3C*; Warrant to issue as to Defendant Yoder and Monsivais.Defendant Thompson is in local federal custody. |

| | | |
|---|---|---|
| | | Arraignment and Plea as to Defendant Thompson set for 2/19/2015 03:00 PM in LV Courtroom 3A before Magistrate Judge George Foley Jr. (Copies have been distributed pursuant to the NEF - SLR) (Entered: 02/11/2015) |
| 02/17/2015 | 21 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge George Foley, Jr, as to William C. Thompson on 2/17/2015. By Deputy Clerk: E. Garcia. Arraignment/Plea **advanced** to **Thursday, February 19, 2015 at 2:15 PM** in LV Courtroom 3A before Magistrate Judge George Foley Jr. **(no image attached)** (Copies have been distributed pursuant to the NEF - EMG) (Entered: 02/17/2015) |
| 02/19/2015 | 22 | MINUTES OF PROCEEDINGS - Arraignment/Plea as to William C. Thompson held on 2/19/2015 before Magistrate Judge George Foley, Jr. Crtrm Administrator: *E. Garcia*; AUSA: *Lisa Cartier-Giroux*; Def Counsel: *Elisa Vasquez for Brenda Weksler*; Court Reporter/FTR #: *2:18p.m. - 2:24p.m.*; Courtroom: *3A*; Defendant is present in custody with counsel. Defendant is advised of his rights/charges. Defendant is arraigned on Superseding Indictment. Defendant waives reading of the Superseding Indictment and pleads NOT GUILTY to Counts 1-5. Case governed by Joint Discovery Agreement. Government's counsel advises the Court that discovery pertaining to the first Indictment has been provided. The remaining discovery will be provided. The U.S. Probation Office is directed to prepare a report detailing the defendant's criminal history, if any. Defendant is remanded to custody.<br><br>**Calendar Call set for Monday, March 9, 2015 at 1:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Jury Trial set for Tuesday, March 17, 2015 at 9:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey.**<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - EMG) (Entered: 02/19/2015) |
| 02/27/2015 | 23 | STIPULATION *to Continue Motion and Trial Dates (First)* by William C. Thompson. (Weksler, Brenda) (Entered: 02/27/2015) |
| 02/27/2015 | 24 | ORDER TO CONTINUE - Ends of Justice - granting 23 STIPULATION to Continue Motion and Trial Dates as to William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 7/14/2015 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 7/6/2015 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 4/10/2015. Responses due by 4/24/2015. Replies due by 5/1/2015. Proposed Voir Dire due by 7/6/2015. Proposed Jury Instructions due by 7/6/2015. Trial Briefs due by 7/6/2015. Signed by Judge Jennifer A. Dorsey on 2/27/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 02/27/2015) |
| 03/03/2015 | 25 | NOTICE OF ATTORNEY APPEARANCE Cristina D Silva appearing for USA. (Silva, Cristina) (Entered: 03/03/2015) |
| 03/06/2015 | 26 | PETITION for Writ of Habeas Corpus ad Prosequendum by USA as to David Yoder. (Cartier-Giroux, Lisa) (Entered: 03/06/2015) |
| 03/06/2015 | 27 | PETITION for Writ of Habeas Corpus ad Prosequendum by USA as to Eric Monsivais. (Cartier-Giroux, Lisa) (Entered: 03/06/2015) |
| 03/06/2015 | 28 | ORDER granting 27 Petition for Writ of Habeas Corpus ad Prosequendum as to Eric Monsivais (3). Signed by Magistrate Judge Cam Ferenbach on 3/6/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 03/09/2015) |
| 03/06/2015 | 30 | ORDER granting 26 Petition for Writ of Habeas Corpus ad Prosequendum as to David Yoder (2). Signed by Magistrate Judge Cam Ferenbach on 3/6/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 03/09/2015) |

| | | |
|---|---|---|
| 03/09/2015 | 29 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant Eric Monsivais by Magistrate Judge Cam Ferenbach. Status Conference set for 3/20/2015 09:00 AM in LV Courtroom 3D before Magistrate Judge Cam Ferenbach. (DKJ) (Entered: 03/09/2015) |
| 03/09/2015 | 31 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant David Yoder by Magistrate Judge Cam Ferenbach. Status Conference set for 3/20/2015 09:00 AM in LV Courtroom 3D before Magistrate Judge Cam Ferenbach. (DKJ) (Entered: 03/09/2015) |
| 03/09/2015 | 32 | PETITION for Writ of Habeas Corpus ad Prosequendum by USA as to David Yoder. (Cartier-Giroux, Lisa) (Entered: 03/09/2015) |
| 03/09/2015 | 33 | PETITION for Writ of Habeas Corpus ad Prosequendum by USA as to Eric Monsivais. (Cartier-Giroux, Lisa) (Entered: 03/09/2015) |
| 03/09/2015 | 34 | BILL OF PARTICULARS filed by USA as to William C. Thompson, David Yoder, Eric Monsivais . (Humphreys, Michael) (Entered: 03/09/2015) |
| 03/09/2015 | 35 | ORDER granting 32 Petition for Writ of Habeas Corpus ad Prosequendum as to David Yoder (2). Signed by Magistrate Judge Cam Ferenbach on 3/9/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 03/10/2015) |
| 03/09/2015 | 37 | ORDER granting 33 Petition for Writ of Habeas Corpus ad Prosequendum as to Eric Monsivais (3). Signed by Magistrate Judge Cam Ferenbach on 3/9/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Main Document 37 replaced on 3/10/2015) (DKJ). (Entered: 03/10/2015) |
| 03/10/2015 | 36 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant David Yoder by Magistrate Judge Cam Ferenbach. Initial Appearance set for 3/20/2015 03:00 PM in LV Courtroom 3C before Magistrate Judge Carl W. Hoffman. (DKJ) (Entered: 03/10/2015) |
| 03/10/2015 | 38 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant Eric Monsivais by Magistrate Judge Cam Ferenbach. Initial Appearance set for 3/20/2015 03:00 PM in LV Courtroom 3C before Magistrate Judge Carl W. Hoffman. (DKJ) (Entered: 03/10/2015) |
| 04/07/2015 | 40 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Cam Ferenbach, as to William C. Thompson on 4/7/2015. RE: 39 **SEALED** EX PARTE MOTION for Status Check to Determine Whether New Counsel Should Be Appointed filed by William C. Thompson. Motion Hearing set for 4/16/2015 03:00 PM in LV Courtroom 3D before Magistrate Judge Cam Ferenbach. U.S. Marshal, Steven Carpenter, or another officer from the U.S. Marshal is directed to attend this hearing at 3:00 p.m., April 16, 2015, in courtroom 3D. The U.S. Marshal is directed to transport defendant to and from the hearing. The Clerk of Court is directed to deliver a copy of this order to the U.S. Marshal. (Copies have been distributed pursuant to the NEF - cc USM and AUSA DKJ) (Entered: 04/08/2015) |
| 04/13/2015 | 41 | STIPULATION FOR EXTENSION OF TIME (Second Request) *for Motion Deadlines* by William C. Thompson. (Weksler, Brenda) (Entered: 04/13/2015) |
| 04/13/2015 | 42 | ORDER ON STIPULATION granting 41 STIPULATION to extend Motion Deadlines as to William C. Thompson. Motions due by 4/17/2015 by 4:00 p.m. Responses due by 5/1/2015 by 4:00 p.m. Replies due by 5/8/2015 by 4:00 p.m. Signed by Magistrate Judge Cam Ferenbach on 4/13/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 04/14/2015) |
| 04/15/2015 | 43 | Unopposed MOTION to Withdraw Motion; filed by William C. Thompson. (Weksler, Brenda) (Entered: 04/15/2015) |
| 04/15/2015 | 44 | ORDER Granting 43 Motion to Withdraw re 39 Ex Parte Motion as to William C. Thompson (1). Hearing scheduled for 4/16/15 at 3:00 p.m. has been vacated. Signed by |

| | | |
|---|---|---|
| | | Magistrate Judge Cam Ferenbach on 4/15/15. (Copies have been distributed pursuant to the NEF - TR) (Entered: 04/15/2015) |
| 04/17/2015 | 45 | STIPULATION FOR EXTENSION OF TIME (Third Request) *to File Motions* by William C. Thompson. (Weksler, Brenda) (Entered: 04/17/2015) |
| 04/20/2015 | 46 | ORDER ON STIPULATION granting 45 STIPULATION FOR EXTENSION OF TIME to File Motions as to William C. Thompson. Motions due by 5/1/2015. Responses due by 5/15/2015. Replies due by 5/22/2015. Signed by Magistrate Judge Cam Ferenbach on 4/20/2015. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 04/20/2015) |
| 05/01/2015 | 47 | FOURTH STIPULATION FOR EXTENSION OF TIME to Respond and file Motions; filed by William C. Thompson. (Weksler, Brenda) (Entered: 05/01/2015) |
| 05/04/2015 | 48 | ORDER ON STIPULATION Granting 47 FOURTH STIPULATION FOR EXTENSION OF TIME to Respond and file Motions as to William C. Thompson. Motions due by 5/21/2015. Replies due by 6/11/2015. Responses due by 6/4/2015. Signed by Magistrate Judge Cam Ferenbach on 5/4/15. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 05/04/2015) |
| 05/21/2015 | 49 | SECOND STIPULATION to Continue filed by William C. Thompson. (Weksler, Brenda) (Entered: 05/21/2015) |
| 05/26/2015 | 50 | ORDER TO CONTINUE - Ends of Justice - Granting 49 Stipulation to Continue as to William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial continued to 10/20/2015 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call continued to 10/13/2015 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 7/9/2015. Responses due by 7/23/2015. Replies due by 7/30/2015. Proposed Voir Dire due by 10/13/2015. Proposed Jury Instructions due by 10/13/2015. Trial Briefs due by 10/13/2015. Signed by Judge Jennifer A. Dorsey on 5/26/15. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 05/26/2015) |
| 09/17/2015 | 51 | NOTICE *OF EXPERT TESTIMONY* by USA as to William C. Thompson. (Attachments: # 1 Exhibit A)(Cartier-Giroux, Lisa) (Entered: 09/17/2015) |
| 09/23/2015 | 52 | ORDER REGARDING TRIAL as to William C. Thompson: Jury Trial set for 10/20/2015 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 10/13/2015 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 10/13/2015. Proposed Voir Dire due by 10/13/2015. Proposed Jury Instructions due by 10/13/2015. Trial Briefs due by 10/13/2015. Signed by Judge Jennifer A. Dorsey on 9/23/2015. (Copies have been distributed pursuant to the NEF - DMS) (Entered: 09/23/2015) |
| 09/23/2015 | 53 | STIPULATION *to Continue Motion and Trial Dates (Third)* by William C. Thompson. (Weksler, Brenda) (Entered: 09/23/2015) |
| 09/24/2015 | 54 | ORDER TO CONTINUE - Ends of Justice - Granting 53 Stipulation to Continue Motion Deadlines and Trial Dates (Third Request) as to William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial continued to 2/23/2016 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call continued to 2/16/2016 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 11/9/2015., Responses due by 11/23/2015. Replies due by 11/30/2015. Trial Briefs, Proposed Voir Dire, Proposed Jury Instructions, and a list of the Government's prospective witnesses due by 2/16/2016. Signed by Judge Jennifer A. Dorsey on 9/24/2015. (Copies have been distributed pursuant to the NEF - SLD) (Entered: 09/24/2015) |

| | | |
|---|---|---|
| 11/10/2015 | 55 | STIPULATION *to Continue Motion Deadlines and Trial Dates (Fourth Request)* by William C. Thompson. (Weksler, Brenda) (Entered: 11/10/2015) |
| 11/10/2015 | 56 | ORDER TO CONTINUE - Ends of Justice - Granting 55 Stipulation to Continue as to William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial continued to 5/17/2016 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call continued to 5/9/2016 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 1/8/2016. Responses due by 1/22/2016. Replies due by 1/29/2016. Trial briefs, proposed voir dire questions, proposed jury instructions, and a list of the Government's prospective witnesses must be electronically submitted to the Court by 5/9/16. Signed by Judge Jennifer A. Dorsey on 11/10/15. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 11/12/2015) |
| 11/25/2015 | 57 | NOTICE OF ATTORNEY APPEARANCE: Shari L. Kaufman appearing for William C. Thompson (Kaufman, Shari) (Entered: 11/25/2015) |
| 01/07/2016 | 58 | FIFTH STIPULATION to Continue Motion Deadlines and Trial; filed by William C. Thompson. (Weksler, Brenda) (Entered: 01/07/2016) |
| 01/08/2016 | 59 | ORDER TO CONTINUE - Ends of Justice - Granting 55 Stipulation to Continue Motion Deadlines and Trial (Fifth Request) as to William C. Thompson (1). This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 7/26/2016 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 7/18/2016 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 3/8/2016. Responses due by 3/22/2016. Replies due by 3/29/2016. Trial Briefs, Proposed Voir Dire, Proposed Jury Instructions, and a list of the Government's prospective witnesses due by 7/18/2016. Signed by Judge Jennifer A. Dorsey on 01/08/2016. (Copies have been distributed pursuant to the NEF - NEV) (Entered: 01/08/2016) |
| 03/24/2016 | 60 | LETTER from William Clyde Thompson regarding current counsel. (Attachments: # 1 Letter) (PS) (Entered: 03/28/2016) |
| 03/29/2016 | 61 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge George Foley, Jr, as to William C. Thompson on 3/29/2016. By Judicial Assistant: Julia Wright.<br><br>RE: 60 Letter requesting new counsel filed by William C. Thompson<br><br>Status Conference set for **Thursday, March 31, 2016, at 1:30 PM** in LV Courtroom 3A before Magistrate Judge George Foley Jr. (Copies have been distributed pursuant to the NEF - JBW) (Entered: 03/29/2016) |
| 03/31/2016 | 62 | MINUTES OF PROCEEDINGS - Status Conference as to William C. Thompson held on 3/31/2016 before Magistrate Judge George Foley, Jr. Crtrm Administrator: *E. Garcia*; AUSA: *Lisa Cartier-Giroux and Steven Carpenter, Deputy U.S. Marshal*; Def Counsel: *Brenda Weksler*; Court Reporter/FTR #: *1:30p.m. - 1:31p.m./**SEALED**: 1:32p.m. - 1:51p.m./1:52p.m.-1:53p.m.*; Courtroom: *3A*;<br><br>Defendant is present in custody with counsel. The Court makes preliminary remarks and hears representations of counsel, Deputy U.S. Marshal and defendant regarding 60 Defendant's letter requesting new counsel. Government's counsel exits and the courtroom is cleared. The Court conducts an *in camera hearing* with Ms. Weksler and the defendant. Government's counsel returns to the courtroom, and this hearing continues on the record. The Court denies without prejudice 60 Defendant's letter requesting new counsel. Defense counsel is to meet with the defendant at her earliest possible convenience. Any further matters that were raised in Mr. Thompson's letter or which were discussed in the |

| | | |
|---|---|---|
| | | closed session today, to the extent it requires any further court action. This Court will leave to the assigned Judge's in this case. Defendant is remanded to custody.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - EMG) Modified text on 3/31/2016 (EMG). (Entered: 03/31/2016) |
| 04/15/2016 | 63 | NOTICE of Change of Address by USA as to William C. Thompson, David Yoder, Eric Monsivais (Cartier-Giroux, Lisa) (Entered: 04/15/2016) |
| 04/18/2016 | 64 | MOTION for Hearing to Evaluate Conditions of Incarceration (Expedited Treatment Requested) by William C. Thompson. (Weksler, Brenda) (Entered: 04/18/2016) |
| 04/18/2016 | 65 | STIPULATION *to Continue Motion and Trial Dates (Sixth)* by William C. Thompson. (Weksler, Brenda) (Entered: 04/18/2016) |
| 04/19/2016 | 66 | ORDER regarding 64 Motion for Hearing. IT IS HEREBY ORDERED that any opposition to Defendant's Motion for Hearing to Evaluate Conditions of Incarceration 64 must be filed on or before 4/27/16. No reply necessary.<br><br>IT IS FURTHER ORDERED that a hearing on Defendant's Motion for Hearing to Evaluate Conditions of Incarceration 64 is scheduled for 3:00 p.m., 5/2/16, in courtroom 3D.<br><br>Signed by Magistrate Judge Cam Ferenbach on 4/18/16. (Copies have been distributed pursuant to the NEF - PS) (Entered: 04/19/2016) |
| 04/19/2016 | 67 | ORDER TO CONTINUE - Ends of Justice - as to William C. Thompson Granting 65 Stipulation filed by William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 12/6/2016 at 9:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 11/28/2016 at 1:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 6/9/2016. Responses due by 6/23/2016. Replies due by 6/30/2016. Exhibit List due by 11/28/2016. Proposed Voir Dire, Proposed Jury Instructions, and Trial Briefs due by 11/28/2016. Signed by Judge Jennifer A. Dorsey on 4/19/16. (Copies have been distributed pursuant to the NEF - PS) (Entered: 04/19/2016) |
| 04/27/2016 | 68 | RESPONSE to 64 Motion for Hearing ; filed by USA as to ~~David Yoder, Eric Monsivais,~~ William C. Thompson. Replies due by 5/3/2016. (Cartier-Giroux, Lisa) Modified on 3/14/2017 to reflect entry applies ONLY to defendant Thompson (EDS). (Entered: 04/27/2016) |
| 05/02/2016 | 69 | MINUTES OF PROCEEDINGS - Hearing re motion to evaluate conditions of incarceration 64 as to William C. Thompson held on 5/2/2016 before Magistrate Judge Cam Ferenbach. Crtrm Administrator: *J. Ries*; AUSA: *Lisa Cartier-Giroux*; Def Counsel: *Brenda Weksler*; Court Reporter/FTR #: *3:03 - 3:21*; Courtroom: *3D*; Defendant is present in custody. The court canvasses and hears representations from the parties. Ms. Weksler withdraws the motion to evaluate conditions of incarceration 64 except for the relief sought regarding prescription glasses needed by the defendant. The court hears representation from Deputy Marshal Carpenter. Mr. Carpenter will follow up with Henderson Detention Center in getting the defendant evaluated for prescription glasses. Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 05/02/2016) |
| 06/09/2016 | 70 | STIPULATION *to Continue Motion Deadlines and Trial Dates (Seventh Request)* by William C. Thompson. (Weksler, Brenda) (Entered: 06/09/2016) |
| 06/09/2016 | 71 | ORDER TO CONTINUE - Ends of Justice - as to William C. Thompson re ECF No. 70 Stipulation. This continuance is excludable under the Speedy Trial Act and the time has |

| | | |
|---|---|---|
| | | been excluded.<br>Jury Trial **continued to 4/11/2017 at 9:00 AM** in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call **continued to 4/3/2017 at 1:30 PM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br>Motions due by 9/9/2016. Responses due by 9/23/2016. Replies due by 9/30/2016.<br>Trial briefs, proposed voir dire questions, proposed jury instructions, and list of Government's prospective witnesses due by 4/3/2017.<br>Signed by Judge Jennifer A. Dorsey on 6/9/16. (Copies have been distributed pursuant to the NEF - JC) (Entered: 06/09/2016) |
| 08/12/2016 | 72 | PETITION for Writ of Habeas Corpus ad Prosequendum *for John Yoder* by USA as to David Yoder. (Silva, Cristina) (Entered: 08/12/2016) |
| 08/12/2016 | 73 | ORDER Granting 72 Petition for Writ of Habeas Corpus ad Prosequendum as to David Yoder (2). Signed by Magistrate Judge Cam Ferenbach on 8/12/16. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 08/15/2016) |
| 08/12/2016 | 74 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant David Yoder by Magistrate Judge Cam Ferenbach. Initial Appearance/ Arraignment and Plea set for 9/1/2016 03:00 PM in LV Courtroom 3A before Magistrate Judge George Foley Jr.(cc: USM, AUSA, PTS - ADR) (Entered: 08/15/2016) |
| 09/01/2016 | 75 | MINUTES OF PROCEEDINGS - Initial Appearance/Arraignment & Plea as to David Yoder held on 9/1/2016 before Magistrate Judge George Foley, Jr. Crtrm Administrator: *E. Garcia*; AUSA: *Kathryn Newman for Lisa Cartier-Giroux*; Def Counsel: *John Dolan and William Gamage*; PTS: *Emily McKillip and Jessie Moorehead*; Court Reporter/FTR #: *3:29p.m. - 3:41p.m.*; Courtroom: *3A*;<br><br>Defendant is present in custody with counsel. Defendant advises the Court of his **TRUE NAME: JOHN DAVID YODER**. Defense counsel retained. Attorney John Dolan files a Designation of Retained Counsel in open Court. Defendant is advised of his rights/charges. Defendant is arraigned on Indictment. Defendant waives reading of the Indictment and pleads NOT GUILTY to Count's 1, 3 and 5. Case governed by Joint Discovery Agreement and is not complex. Order regarding Pretrial Procedure is entered. The U.S. Probation Office is directed to prepare a report detailing the defendant's criminal history, if any. Government moves for detention. Detention hearing proceeds. Defense submits. Defendant is ordered detained pending trial and is remanded to custody.<br><br>Government's counsel requests that this defendant not be housed with his co-defendant. The Court hears for counsel and U.S. Marshal Office regarding custodial placement of this defendant. Defendant David Yoder is to be segregated in the Pahrump Facility from co-defendant William Thompson. If needed, a motion can be brought to the Court's attention, as discussed in open court. Defendant is joined with co-defendant's trial pursuant to the provisions of the Speed Trial Act.<br><br>**Calendar Call set for Monday, April 3, 2017 at 1:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Jury Trial set for Tuesday, April 11, 2017 at 9:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey.**<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - EMG) (Entered: 09/01/2016) |
| 09/01/2016 | 78 | ORDER REGARDING PRETRIAL PROCEDURE as to David Yoder. Responses to motions to be filed and served within 14 calendar days from the date of service of the motion, and reply brief to be served within 7 calendar days from the date of service of the |

| | | |
|---|---|---|
| | | response. Motions due by 10/1/2016. Signed by Magistrate Judge George Foley, Jr. on 9/1/16. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 09/07/2016) |
| 09/01/2016 | 79 | DESIGNATION of Retained Counsel by John Patrick Dolan as to John Yoder. (ADR) (Entered: 09/07/2016) |
| 09/02/2016 | 76 | ORDER OF DETENTION as to David Yoder. Defendant shall be detained pending trial. Signed by Magistrate Judge George Foley, Jr on 9/1/16. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 09/02/2016) |
| 09/02/2016 | 77 | Arrest Warrant Returned Executed on 9/1/16 in case as to David Yoder re 19 Warrant Issued. (ADR) (Entered: 09/07/2016) |
| 09/07/2016 | 80 | NOTICE TO COUNSEL PURSUANT TO LOCAL RULE IA 11-2. Counsel John Patrick Dolan to comply with completion and electronic filing of the Designation of Local Counsel and Verified Petition. For your convenience, click on the following link to obtain the form from the Court's website - www.nvd.uscourts.gov/Forms.aspx.<br><br>Upon approval of the Verified Petition, counsel is required to register for the Court's Case Management and Electronic Case Filing (CM/ECF) system and the electronic service of pleadings. Please visit the Court's website **www.nvd.uscourts.gov** to register Attorney(s). Verified Petition due by 9/21/2016. **(no image attached)** (ADR) Modified on 9/7/2016 (ADR). (Entered: 09/07/2016) |
| 09/09/2016 | 81 | STIPULATION *to Continue Motion Deadlines and Trial Dates (Eighth Request)* by William C. Thompson as to William C. Thompson, David Yoder. (Weksler, Brenda) (Entered: 09/09/2016) |
| 09/09/2016 | 82 | AMENDED STIPULATION to Continue (Ninth Request) by William C. Thompson as to William C. Thompson, David Yoder. (Weksler, Brenda) (Entered: 09/09/2016) |
| 09/13/2016 | 83 | Government's Disclosure Statement filed by USA as to David Yoder.. (Cartier-Giroux, Lisa) (Entered: 09/13/2016) |
| 09/14/2016 | 84 | ORDER Granting 82 Stipulation to Continue Motion Deadlines as to William C. Thompson (1), David Yoder (2). Motions due by 11/9/2016. Responses due by 11/23/2016. Replies due by 11/30/2016. Signed by Judge Jennifer A. Dorsey on 9/14/2016. (Copies have been distributed pursuant to the NEF - DC) (Entered: 09/14/2016) |
| 09/14/2016 | 85 | VERIFIED PETITION for Permission to Practice Pro Hac Vice by John Patrick Dolan and DESIGNATION of Local Counsel William Gamage (Filing fee $ 250 receipt number 0978-4283043) filed by David Yoder . (Gamage, William) (Entered: 09/14/2016) |
| 09/16/2016 | 86 | ORDER Granting 85 Verified Petition for Permission to Practice Pro Hac Vice for Attorney John Patrick Dolan for Defendant John David Yoder and approving Designation of Local Counsel William Gamage. Signed by Judge Jennifer A. Dorsey on 09/16/2016. Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - NEV) (Entered: 09/16/2016) |
| 09/27/2016 | 87 | NOTICE OF ATTORNEY APPEARANCE: Heidi A Ojeda appearing for William C. Thompson (Ojeda, Heidi) (Entered: 09/27/2016) |
| 09/27/2016 | | Attorney update in case as to William C. Thompson: Attorney Brenda Weksler is no longer associated. (Ojeda, Heidi) (Entered: 09/27/2016) |
| 11/09/2016 | 88 | MOTION *to Continue Motion Deadlines* by William C. Thompson. Responses due by 11/26/2016. (Ojeda, Heidi) (Entered: 11/09/2016) |

| | | |
|---|---|---|
| 11/14/2016 | 89 | ORDER Granting 88 Motion to Continue Deadlines as to William C. Thompson (1). Motions due by 12/9/2016. Responses due by 12/23/2016. Replies due by 12/30/2016. Signed by Judge Jennifer A. Dorsey on 11/14/2016. (Copies have been distributed pursuant to the NEF - DC) (Entered: 11/14/2016) |
| 03/09/2017 | 90 | MOTION in Limine; filed by David Yoder. Responses due by 3/23/2017. (Dolan, John) (Entered: 03/09/2017) |
| 03/09/2017 | 91 | PROPOSED Voir Dire by David Yoder (Dolan, John) (Entered: 03/09/2017) |
| 03/10/2017 | 92 | STIPULATION to Continue Trial (Tenth Request) by USA as to William C. Thompson, David Yoder, ~~Eric Monsivais.~~ (Cartier-Giroux, Lisa) Modified on 3/14/2017 to correctly reflect that stipulation DOES NOT apply to Defendant Monsivais (EDS). (Entered: 03/10/2017) |
| 03/13/2017 | 93 | ORDER TO CONTINUE - Ends of Justice - granting 92 Stipulation as to David Yoder, William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 8/22/2017 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 8/14/2017 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Motions due by 6/22/2017. Responses due by 7/6/2017. Replies due by 7/13/2017. Exhibit List due by 8/14/2017. Proposed Voir Dire due by 8/14/2017. Proposed Jury Instructions due by 8/14/2017. Trial Briefs due by 8/14/2017.<br><br>**IT IS FURTHER ORDERED that a status conference is set for 7/24/2017 at 10:00 AM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>Signed by Judge Jennifer A. Dorsey on 3/13/2017. (Copies have been distributed pursuant to the NEF - DC) (Entered: 03/14/2017) |
| 03/22/2017 | 94 | MOTION in Limine by USA as to David Yoder. Responses due by 4/5/2017. (Cartier-Giroux, Lisa) (Entered: 03/22/2017) |
| 03/22/2017 | 95 | WITHDRAWAL of Motion by USA as to David Yoder re 94 Motion in Limine filed by USA (Cartier-Giroux, Lisa) (Entered: 03/22/2017) |
| 03/22/2017 | 96 | STIPULATION to Continue Response to 90 Motion in Limine by USA as to David Yoder. (Cartier-Giroux, Lisa) Modified to link to motion, as required by Local Rules on 3/22/2017 (EDS). (Entered: 03/22/2017) |
| 03/23/2017 | 97 | ORDER granting 96 Stipulation to extend time to respond to 90 Motion in Limine as to David Yoder (2). Responses due by 4/3/2017. Signed by Judge Jennifer A. Dorsey on 3/23/2017. (Copies have been distributed pursuant to the NEF - DC) (Entered: 03/23/2017) |
| 03/28/2017 | 98 | Second MOTION for Hearing *to Evaluate Conditions of Incarceration (Expedited Treatment Requested)* by William C. Thompson. (Ojeda, Heidi) (Entered: 03/28/2017) |
| 04/03/2017 | 99 | STIPULATION to Continue Response Deadline re 90 Motion in Limine by USA as to David Yoder. (Cartier-Giroux, Lisa) (Entered: 04/03/2017) |
| 04/03/2017 | 100 | ORDER granting 99 Stipulation to extend time to respond to 90 Motion in Limine as to David Yoder (2). Response due by 4/17/2017. Signed by Judge Jennifer A. Dorsey on 4/3/2017. (Copies have been distributed pursuant to the NEF - DC) (Entered: 04/03/2017) |
| 04/04/2017 | 101 | RESPONSE to 98 Motion for Hearing ; filed by USA as to William C. Thompson. Replies due by 4/11/2017. (Cartier-Giroux, Lisa) (Entered: 04/04/2017) |
| 04/05/2017 | 102 | ORDER. IT IS HEREBY ORDERED that a hearing on 98 Defendant William C. |

| | | |
|---|---|---|
| | | Thompson's Second Motion for Hearing to Evaluate Conditions of Incarceration is scheduled for 1:00 PM, 4/27/17, in Courtroom 3D. The U.S. Marshal is directed to transport defendant to and from the hearing. Signed by Magistrate Judge Cam Ferenbach on 4/5/17. (Copies have been distributed pursuant to the NEF - cc: USM - ADR) (Entered: 04/05/2017) |
| 04/07/2017 | 103 | REPLY to Response to 98 Motion for Hearing filed by William C. Thompson. (Ojeda, Heidi) (Entered: 04/07/2017) |
| 04/17/2017 | 104 | RESPONSE to 90 Motion in Limine ; filed by USA as to David Yoder. Replies due by 4/24/2017. (Attachments: # 1 Exhibit Exhibit A - California Indictment)(Cartier-Giroux, Lisa) (Entered: 04/17/2017) |
| 04/24/2017 | 105 | ORDER. IT IS HEREBY ORDERED that the hearing on 98 Defendant William C. Thompson's Second Motion for Hearing to Evaluate Conditions of Incarceration scheduled for 1:00 PM, 4/27/17, is RESCHEDULED to 9:30 AM, 4/27/17 in Courtroom 3D. The U.S. Marshal is directed to transport defendant to and from the hearing. Signed by Magistrate Judge Cam Ferenbach on 4/24/17. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 04/24/2017) |
| 04/27/2017 | 106 | MINUTES OF PROCEEDINGS - Hearing re Second MOTION for Hearing to Evaluate Conditions of Incarceration 98 as to William C. Thompson held on 4/27/2017 before Magistrate Judge Cam Ferenbach. Crtrm Administrator: *J. Ries*; AUSA: *Cristina Silva*; Def Counsel: *Heidi Ojeda*; Court Reporter/Recorder: *9:38 - 9:44*; Courtroom: *3D*; Defendant is present in custody. The court canvasses and hears representations from the parties. ORDERED that the second motion for hearing to evaluate conditions of incarceration 98 is DENIED as moot. Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 04/27/2017) |
| 06/08/2017 | 107 | NOTICE *of Assertion of Right to be Present in Court Unshackled* by William C. Thompson. (Ojeda, Heidi) (Entered: 06/08/2017) |
| 06/16/2017 | 108 | MOTION to Strike 107 Notice of Assertion of Right to be Present in Court Unshackled by USA as to William C. Thompson. Responses due by 6/30/2017. (Silva, Cristina) (Entered: 06/16/2017) |
| 06/29/2017 | 109 | RESPONSE to 108 Motion to Strike ; filed by William C. Thompson. Replies due by 7/6/2017. (Ojeda, Heidi) (Entered: 06/29/2017) |
| 07/06/2017 | 110 | REPLY to Response to 108 Motion to Strike filed by USA as to William C. Thompson. (Cartier-Giroux, Lisa) (Entered: 07/06/2017) |
| 07/20/2017 | 111 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey on 7/20/2017. By Deputy Clerk: Danielle Cacciabaudo.<br><br>Based on John Patrick Dolan's telephonic request and good cause appearing, Mr. Dolan may appear by telephone for the status conference on 7/24/2017 at 10:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>Attorney John Patrick Dolan is instructed to call 888-808-6929, enter the access code 2178469 and remain on the line until the courtroom administrator joins the call. The use of a cell phone or speaker phone during the call is prohibited. The call must be made using a land line.<br><br>**All local counsel must appear in person.**<br><br>**(no image attached)** |

| | | |
|---|---|---|
| | | (Copies have been distributed pursuant to the NEF - DC) (Entered: 07/20/2017) |
| 07/24/2017 | 112 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder, William C. Thompson on 7/24/2017. By Deputy Clerk: Danielle Cacciabaudo.<br><br>RESTRAINT ORDER. The Court has been advised by the US Marshals that the defendant **WILLIAM THOMPSON** presents a threat to the safety and security of the courtroom and USMS staff if not restrained during court hearings because he has a demonstrated history of not following rules and complying with law enforcement and judicial instructions. This history includes an altercation with detention officer at facility. The court finds after an individualized inquiry that a compelling governmental purposedanger of injury to participants in the hearing and the public and the need for courtroom securityjustifies the in-court restraint of the defendant by leg restraints, which I find to be the least restrictive means of protecting this compelling governmental purpose under the individual circumstances for this defendant, and this compelling governmental purpose outweighs the infringement on the defendant's rights. IT IS HEREBY ORDERED that the defendant may be brought into the courtroom for hearings in leg restraints. The court does not find that **JOHN YODER** presents similar risks, so no restraints will be ordered for him at this time.<br><br>**(no image attached)**<br><br>(Copies have been distributed pursuant to the NEF - DC) (Entered: 07/24/2017) |
| 07/24/2017 | 113 | MINUTES OF PROCEEDINGS - Status Conference as to John David Yoder, William C. Thompson held on 7/24/2017 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Cristina Silva*; Def Counsel: *Heidi Ojeda, William Gamage, John Dolan (telephonic)*; Court Reporter/Recorder: *Felicia Zabin*; Time of Hearing: *10:22 a.m. - 10:25 a.m.*; Courtroom: *6D*;<br><br>Defendants are present in custody. The Court makes preliminary remarks and inquires if the parties are ready to proceed with the current trial date of August 22, 2017. Ms. Silva advises the Court that the case will most likely be resolved as to defendants Thompson and Yoder by plea agreements but the parties need additional time to negotiate and organize the details and will be filing a stipulation to continue. Defense counsel concurs. Court adjourns. Defendants are remanded to custody.<br><br>**(no image attached)**<br><br>(Copies have been distributed pursuant to the NEF - DC) (Entered: 07/24/2017) |
| 08/01/2017 | 114 | ORDER REGARDING TRIAL as to William C. Thompson, John David Yoder. Jury Trial set for 8/22/2017 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 8/14/2017 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 8/14/2017. Proposed Voir Dire due by 8/14/2017. Proposed Jury Instructions due by 8/14/2017. Trial Briefs due by 8/14/2017. Signed by Judge Jennifer A. Dorsey on 8/1/2017. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/01/2017) |
| 08/02/2017 | 115 | ELEVENTH STIPULATION to Continue Calendar Call and Trial; filed by USA as to William C. Thompson, John David Yoder. (Silva, Cristina) (Entered: 08/02/2017) |
| 08/03/2017 | 116 | ORDER TO CONTINUE - Ends of Justice - granting 115 Stipulation as to John David Yoder, William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 10/31/2017 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 10/23/2017 at |

| | | |
|---|---|---|
| | | 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 10/23/2017. Proposed Voir Dire due by 10/23/2017. Proposed Jury Instructions due by 10/23/2017. Trial Briefs due by 10/23/2017. Signed by Judge Jennifer A. Dorsey on 8/2/2017. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/03/2017) |
| 08/03/2017 | 117 | ORDER Denying 108 Motion to Strike as to William C. Thompson (1). Signed by Magistrate Judge Cam Ferenbach on 8/3/17. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 08/03/2017) |
| 10/04/2017 | 118 | ORDER REGARDING TRIAL as to William C. Thompson, John David Yoder. Jury Trial set for 10/31/2017 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 10/23/2017 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 10/23/2017. Proposed Voir Dire due by 10/23/2017. Proposed Jury Instructions due by 10/23/2017. Trial Briefs due by 10/23/2017. Signed by Judge Jennifer A. Dorsey on 10/4/2017. (Copies have been distributed pursuant to the NEF - DC) (Entered: 10/04/2017) |
| 10/20/2017 | 119 | TWELFTH STIPULATION to Continue Calendar Call and Trial; filed by USA as to William C. Thompson, John David Yoder. (Cartier-Giroux, Lisa) (Entered: 10/20/2017) |
| 10/23/2017 | 120 | **ERROR: Entered in error by Clerk's Office. CORRECTION: Document terminated. Please see 121 for corrected entry. (EDS)**<br><br>~~FINDINGS OF FACT as to John David Yoder, William C. Thompson Signed by Judge Jennifer A. Dorsey on 10/23/17. (Copies have been distributed pursuant to the NEF - ADR)~~ (Entered: 10/23/2017) |
| 10/23/2017 | 121 | ORDER TO CONTINUE - Ends of Justice - as to John David Yoder, William C. Thompson Granting 119 Stipulation. This continuance is excludable under the Speedy Trial Act and the time has been excluded.( Jury Trial set for 5/8/2017 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey., Calendar Call set for 4/30/2018 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey., Proposed Voir Dire due by 4/30/2018., Proposed Jury Instructions due by 4/30/2018., Trial Briefs due by 4/30/2018.) Signed by Judge Jennifer A. Dorsey on 10/23/17. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 10/23/2017) |
| 01/11/2018 | 122 | NOTICE OF ATTORNEY APPEARANCE: Brenda Weksler appearing for William C. Thompson (Weksler, Brenda) (Entered: 01/11/2018) |
| 02/05/2018 | 123 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 2/5/2018. By Deputy Clerk: Danielle Cacciabaudo.<br><br>IT IS ORDERED that Status Conference is set for 2/26/2018 at 10:30 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**ALL PARTIES MUST BE PRESENT IN PERSON.**<br><br>**(no image attached)**<br><br>(Copies have been distributed pursuant to the NEF - DC) (Entered: 02/05/2018) |
| 02/26/2018 | 124 | MINUTES OF PROCEEDINGS - Status Conference as to John David Yoder held on 2/26/2018 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Lisa Cartier-Giroux*; Def Counsel: *John Dolan*; Court Reporter/Recorder: *Felicia Zabin*; Time of Hearing: *11:00 a.m. - 11:05 a.m.*; Courtroom: *6D*;<br><br>Defendant is present in custody. The Court makes preliminary remarks and advises that this status hearing was set because the Court has had difficulties reaching Mr. Gamage on |

| | | |
|---|---|---|
| | | multiple occasions. Discussion was held regarding contacting Mr. Gamage. The Court advises Mr. Dolan that if he is unsuccessful in reaching Mr. Gamage, he should consider looking for retaining different local counsel. Ms. Cartier-Giroux advises that the parties will be filing a stipulation to continue the current trial date of 5/8/2018.<br><br>Court adjourns. Defendant is remanded to custody.<br><br>**(no image attached)**<br><br>(Copies have been distributed pursuant to the NEF - DC) (Entered: 02/26/2018) |
| 03/14/2018 | 125 | STIPULATION to Continue Trial Date (Thirteenth Request) by USA as to William C. Thompson, John David Yoder. (Cartier-Giroux, Lisa) (Entered: 03/14/2018) |
| 03/20/2018 | 126 | ORDER TO CONTINUE - Ends of Justice - granting 125 Stipulation as to John David Yoder, William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 8/28/2018 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 8/20/2018 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 8/20/2018. Proposed Voir Dire due by 8/20/2018. Proposed Jury Instructions due by 8/20/2018. Trial Briefs due by 8/20/2018. Signed by Judge Jennifer A. Dorsey on 3/20/2018. (Copies have been distributed pursuant to the NEF - DC) (Entered: 03/20/2018) |
| 07/23/2018 | 127 | NOTICE OF ATTORNEY APPEARANCE Elham Roohani appearing for USA. (Roohani, Elham) (Entered: 07/23/2018) |
| 08/10/2018 | 128 | STIPULATION to Continue Calendar Call and Trial Date Only by USA as to William C. Thompson, John David Yoder, ~~Eric Monsivais~~. (Roohani, Elham) Modified applicable parties on 8/10/2018 (TR). (Entered: 08/10/2018) |
| 08/15/2018 | 129 | ORDER TO CONTINUE - Ends of Justice - granting 128 Stipulation as to John David Yoder, William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 12/4/2018 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 11/26/2018 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 11/26/2018. Proposed Voir Dire due by 11/26/2018. Proposed Jury Instructions due by 11/26/2018. Trial Briefs due by 11/26/2018. Signed by Judge Jennifer A. Dorsey on 8/15/2018. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/15/2018) |
| 08/28/2018 | 130 | NOTICE OF ATTORNEY APPEARANCE Christopher Burton appearing for USA. (Burton, Christopher) (Entered: 08/28/2018) |
| 11/16/2018 | 131 | ORDER REGARDING TRIAL as to William C. Thompson, John David Yoder. Jury Trial set for 12/4/2018 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 11/26/2018 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 11/26/2018. Proposed Voir Dire due by 11/26/2018. Proposed Jury Instructions due by 11/26/2018. Trial Briefs due by 11/26/2018. Signed by Judge Jennifer A. Dorsey on 11/16/2018. (Copies have been distributed pursuant to the NEF - DC) (Entered: 11/16/2018) |
| 11/21/2018 | 132 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to William C. Thompson, John David Yoder on 11/21/2018. By Deputy Clerk: Danielle Cacciabaudo. |

| | | |
|---|---|---|
| | | Due to a conflict in the Court's schedule, the **Calendar Call set for 11/26/2018 is CONTINUED IN TIME ONLY to 04:00 PM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 11/21/2018) |
| 11/26/2018 | 133 | STIPULATION TO CONTINUE (Sixth or more Request) Calendar Call and Trial Date by USA as to William C. Thompson, John David Yoder, Eric Monsivais. (Burton, Christopher) (Entered: 11/26/2018) |
| 11/26/2018 | 134 | MINUTES OF PROCEEDINGS - Calendar Call as to John David Yoder, William C. Thompson held on 11/26/2018 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Christopher Burton*; Def Counsel: *John Dolan, Brenda Weksler*; Court Reporter/Recorder: *Felicia Zabin*; Time of Hearing: *4:15 p.m. - 4:20 p.m.*; Courtroom: *6D*;<br><br>Defendants are present in custody. The Court preliminary remarks. As stated on the record, the Court GRANTS the stipulation to continue trial 133 (separate order to follow).<br><br>Mr. Dolan, who is retained out-of-state counsel for defendant Yoder, requests for other local counsel to be appointed in place of William Gamage. Financial affidavit is filed by defendant Yoder. The Court GRANTS Mr. Dolan's request and appoints Jennifer Waldo as CJA local counsel (separate order to follow).<br><br>Court adjourns. Defendants are remanded to custody.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 11/27/2018) |
| 11/26/2018 | 135 | ORDER TO CONTINUE - Ends of Justice - granting 133 Stipulation as to John David Yoder, William C. Thompson. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 3/12/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 3/4/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 3/4/2019. Proposed Voir Dire due by 3/4/2019. Proposed Jury Instructions due by 3/4/2019. Trial Briefs due by 3/4/2019. Signed by Judge Jennifer A. Dorsey on 11/26/2018. (Copies have been distributed pursuant to the NEF - DC) (Entered: 11/27/2018) |
| 11/26/2018 | 137 | ORDER APPOINTING COUNSEL as to John David Yoder. Jennifer Waldo appointed as local CJA counsel for defendant in place of William Gamage. Please see LCR 17-1(c) re the issuance of subpoenas. Signed by Judge Jennifer A. Dorsey on 11/26/2018. (Copies have been distributed pursuant to the NEF - DC) (Entered: 11/27/2018) |
| 02/13/2019 | 138 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to William C. Thompson on 2/13/2019. By Deputy Clerk: Danielle Cacciabaudo.<br><br>The Court, being in receipt of a signed plea agreement, ORDERS that a Change of Plea Hearing is set for **2/25/2019 at 10:30 AM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 02/13/2019) |
| 02/19/2019 | 139 | ORDER REGARDING TRIAL as to William C. Thompson, John David Yoder. Jury Trial set for 3/12/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. |

| | | |
|---|---|---|
| | | Dorsey. Calendar Call set for 3/4/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 3/4/2019. Proposed Voir Dire due by 3/4/2019. Proposed Jury Instructions due by 3/4/2019. Trial Briefs due by 3/4/2019. Signed by Judge Jennifer A. Dorsey on 2/19/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 02/19/2019) |
| 02/25/2019 | 140 | MINUTES OF PROCEEDINGS - Change of Plea as to William C. Thompson held on 2/25/2019 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Christopher Burton and Elham Roohani*; Def Counsel: *Heidi Ojeda*; Court Reporter/Recorder: *Amber McClane*; Time of Hearing: *10:35 a.m. - 11:30 a.m.*; Courtroom: *6D*;<br><br>Defendant is present in custody. Defendant is sworn and canvassed. Defendant pleads GUILTY to counts 1-5 of the Superseding Indictment 14 and counts 1-14 of the Redacted Indictment in case no. 2:19-cr-00047-JAD-VCF (Arizona case no. CR-15-8082-PCT-SMM (JZB). Binding Plea Agreement filed. Rule 32 Waiver filed. Rule 20 Consent filed for case no. 2:19-cr-00047-JAD-VCF (Arizona case no. CR-15-8082-PCT-SMM (JZB). Preliminary Order of Forfeiture filed. The Court defers acceptance or rejection of plea agreement until the time of sentencing. This matter is referred to the probation department for investigation and report. Trial setting as to this defendant is vacated. Ms. Ojeda's request to file the plea agreement under seal is denied as stated. Court adjourns. Defendant is remanded to custody.<br><br>**Sentencing and disposition set for 5/28/2019 at 10:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey.**<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 02/25/2019) |
| 02/25/2019 | 141 | BINDING PLEA AGREEMENT as to William C. Thompson. (DC) (Entered: 02/25/2019) |
| 02/25/2019 | 142 | PRELIMINARY ORDER OF FORFEITURE as to William C. Thompson. Signed by Judge Jennifer A. Dorsey on 2/25/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 02/25/2019) |
| 02/25/2019 | 143 | RULE 32 WAIVER by William C. Thompson. (DC) (Entered: 02/25/2019) |
| 02/25/2019 | 144 | NOTICE to contact the U.S. Probation Office as to William C. Thompson. (DC) (Entered: 02/25/2019) |
| 03/01/2019 | 145 | STIPULATION TO CONTINUE (Sixth or more Request) Calendar Call and Trial Dates by USA as to John David Yoder, Eric Monsivais. (Burton, Christopher) (Entered: 03/01/2019) |
| 03/01/2019 | 146 | ORDER TO CONTINUE - Ends of Justice - granting 145 Stipulation as to John David Yoder. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 7/2/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 6/24/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 6/24/2019. Proposed Voir Dire due by 6/24/2019. Proposed Jury Instructions due by 6/24/2019. Trial Briefs due by 6/24/2019. Signed by Judge Jennifer A. Dorsey on 3/1/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 03/01/2019) |
| 04/10/2019 | 147 | SERVICE by Publication by USA as to William C. Thompson. Last publication date April 3, 2019. (Attachments: # 1 Index of Exhibits and Exhibits)(Hollingsworth, Daniel) (Entered: 04/10/2019) |

| | | |
|---|---|---|
| 04/26/2019 | 148 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to William C. Thompson on 4/26/2019. By Deputy Clerk: Danielle Cacciabaudo.<br><br>Based on the parties' joint request to expedite the sentencing hearing, the sentencing and disposition currently set for 5/28/2019 is **VACATED and ADVANCED to 5/20/2019 at 02:00 PM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 04/26/2019) |
| 05/07/2019 | 149 | SERVICE by Publication by USA as to William C. Thompson. Last publication date April 18, 2019. *Amended* (Attachments: # 1 Index of Exhibits and Exhibits) (Hollingsworth, Daniel) (Entered: 05/07/2019) |
| 05/08/2019 | 150 | Submission of PROPOSED ORDER by Plaintiff USA *Amended Preliminary Order of Forfeiture for Sentencing*. (Hollingsworth, Daniel) (Entered: 05/08/2019) |
| 05/13/2019 | 151 | OBJECTION to Presentence Investigation Report and Sentencing Memorandum; filed by William C. Thompson. (Ojeda, Heidi) (Entered: 05/13/2019) |
| 05/16/2019 | 152 | SUPPLEMENT to 151 Objection to Presentence Investigation Report by William C. Thompson *Letter in Support of Defendant for Sentencing*. (Attachments: # 1 Exhibit A) (Ojeda, Heidi) (Entered: 05/16/2019) |
| 05/20/2019 | 154 | MINUTES OF PROCEEDINGS - Sentencing and Disposition as to William C. Thompson held on 5/20/2019 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Christopher Burton and Ellie Roohani*; Def Counsel: *Heidi Ojeda*; USPO: *Daniel McCaw*; Court Reporter/Recorder: *Patty Ganci*; Time of Hearing: *2:20 p.m. - 3:50 p.m.*; Courtroom: *6D*;<br><br>Defendant is present in custody. Remaining objections to the presentence investigation report are resolved. Guideline calculations are reviewed and adopted. Sentencing arguments are presented. Victims and family members of the victims address the court. Defendant addresses the court. The Court accepts the parties' binding plea agreement and imposes sentence as to counts 1s-5s of the Superseding Indictment 14 in this case and counts 1-14 in the Redacted Indictment in case no. 2:19-cr-00047-JAD-VCF. The Court GRANTS the parties' request to continue the restitution/forfeiture issues for 90 days. Defendant waives his right to be present at the restitution/forfeiture hearing. Defendant is advised of right to file an appeal. Court adjourns. Defendant is remanded to custody.<br><br>**Restitution/Forfeiture Hearing set for 8/12/2019 at 02:00 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey.**<br><br>(see separate judgment)<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 05/29/2019) |
| 05/21/2019 | 153 | LETTERS of Support as to Defendant William C. Thompson. (ADR) **Modified on 5/21/2019 to restrict access per LR IC 6-1 (ADR). (Entered: 05/21/2019)** |
| 05/29/2019 | 155 | JUDGMENT as to William C. Thompson (1), counts 1s-5s, sentenced 5/20/2019. Defendant remanded. Custody for 354 months for counts 1s-3s, per count; 240 months for counts 4s-5s, per count; all to run concurrent. Sentence is to run concurrent to sentence in case no. 2:19-cr-00047-JAD-VCF for an aggregate total of 354 months. Lifetime supervised release with special conditions. $500.00 assessment. Restitution |

| | | |
|---|---|---|
| | | TBD. Signed by Judge Jennifer A. Dorsey on 5/29/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 05/30/2019) |
| 06/04/2019 | 156 | ORDER REGARDING TRIAL as to John David Yoder. Jury Trial set for 7/2/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 6/24/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 6/24/2019. Proposed Voir Dire due by 6/24/2019. Proposed Jury Instructions due by 6/24/2019. Trial Briefs due by 6/24/2019. Signed by Judge Jennifer A. Dorsey on 6/4/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 06/04/2019) |
| 06/21/2019 | 157 | STIPULATION TO CONTINUE (Sixth or more Request) to Continue Calendar Call and Trial Dates by USA as to John David Yoder, Eric Monsivais. (Burton, Christopher) (Entered: 06/21/2019) |
| 06/21/2019 | 158 | ORDER TO CONTINUE - Ends of Justice - granting 157 Stipulation as to John David Yoder. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 9/10/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 9/3/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 9/3/2019. Proposed Voir Dire due by 9/3/2019. Proposed Jury Instructions due by 9/3/2019. Trial Briefs due by 9/3/2019. Signed by Judge Jennifer A. Dorsey on 6/21/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 06/21/2019) |
| 08/07/2019 | 159 | MEMORANDUM re: 154 MINUTES OF PROCEEDINGS - Restitution/Forfeiture Hearing; filed by William C. Thompson. (Ojeda, Heidi) (Entered: 08/07/2019) |
| 08/09/2019 | 160 | Submission of PROPOSED ORDER by Plaintiff USA *Amended Preliminary Order of Forfeiture*. (Hollingsworth, Daniel) (Entered: 08/09/2019) |
| 08/12/2019 | 161 | MINUTES OF PROCEEDINGS - Restitution Hearing as to William Clyde Thompson held on 8/12/2019 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Christopher Burton (also at counsel table is Debra Bianco)*; Def Counsel: *Heidi Ojeda*; Court Reporter/Recorder: *Amber McClane*; Time of Hearing: *2:15 p.m. - 2:57 p.m.*; Courtroom: *6D*;<br><br>Defendant's presence is waived. The Court makes preliminary remarks and hears representations from counsel. Attorney Debra Bianco, counsel for one of the victims in this case, addresses the court. As stated on the record, the court orders restitution in the amount of $54,749.00. Restitution list filed under seal. Amended preliminary order of forfeiture filed. Court adjourns.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/14/2019) |
| 08/12/2019 | 162 | AMENDED PRELIMINARY ORDER OF FORFEITURE as to William C. Thompson. Signed by Judge Jennifer A. Dorsey on 8/12/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/14/2019) |
| 08/14/2019 | 164 | AMENDED JUDGMENT as to William C. Thompson (1), counts 1s-5s, sentenced 5/20/2019. Defendant remanded. Custody for 354 months for counts 1s-3s, per count; 240 months for counts 4s-5s, per count; all to run concurrent. Sentence is to run concurrent to sentence in case no. 2:19-cr-00047-JAD-VCF for an aggregate total of 354 months. Lifetime supervised release with special conditions. $500.00 assessment. $53,749.00 restitution. Amended preliminary order of forfeiture attached. SEALED restitution list. Signed by Judge Jennifer A. Dorsey on 8/14/2019. (Copies have been distributed pursuant to the NEF - DC) (Additional attachment(s) added on 8/14/2019: # 1 SEALED Restitution List) (DC). (Entered: 08/14/2019) |

| | | |
|---|---|---|
| 08/19/2019 | 165 | ORDER REGARDING TRIAL as to John David Yoder. Jury Trial set for 9/10/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 9/3/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 9/3/2019. Proposed Voir Dire due by 9/3/2019. Proposed Jury Instructions due by 9/3/2019. Trial Briefs due by 9/3/2019. Signed by Judge Jennifer A. Dorsey on 8/19/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/19/2019) |
| 08/27/2019 | 166 | STIPULATION TO CONTINUE (Sixth or more Request) to Continue Calendar Call and Trial Dates by USA as to John David Yoder, Eric Monsivais. (Burton, Christopher) (Entered: 08/27/2019) |
| 08/30/2019 | 167 | ORDER TO CONTINUE - Ends of Justice - granting 166 Stipulation as to John David Yoder. This continuance is excludable under the Speedy Trial Act and the time has been excluded. Jury Trial reset for 11/19/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call reset for 10/28/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 10/28/2019. Proposed Voir Dire due by 10/28/2019. Proposed Jury Instructions due by 10/28/2019. Trial Briefs due by 10/28/2019. Signed by Judge Jennifer A. Dorsey on 8/30/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/30/2019) |
| 09/24/2019 | 168 | SERVICE by Publication by USA as to William C. Thompson. Last publication date September 19, 2019. (Attachments: # 1 Index of Exhibits and Exhibits)(Hollingsworth, Daniel) (Entered: 09/24/2019) |
| 10/01/2019 | 169 | ORDER REGARDING TRIAL as to John David Yoder. Jury Trial set for 11/19/2019 at 09:00 AM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Calendar Call set for 10/28/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Exhibit List due by 10/28/2019. Proposed Voir Dire due by 10/28/2019. Proposed Jury Instructions due by 10/28/2019. Trial Briefs due by 10/28/2019. Signed by Judge Jennifer A. Dorsey on 10/1/2019. (Copies have been distributed pursuant to the NEF - DC) (Entered: 10/01/2019) |
| 10/25/2019 | 170 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 10/25/2019. By Deputy Clerk: Danielle Cacciabaudo.<br><br>The Court, being in receipt of a plea agreement, ORDERS that a Change of Plea Hearing is set for the same time as Calendar Call on 10/28/2019 at 01:30 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 10/25/2019) |
| 10/28/2019 | 171 | MINUTES OF PROCEEDINGS - Change of Plea at Calendar Call as to John David Yoder held on 10/28/2019 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Christopher Burton*; Def Counsel: *John Dolan*; Court Reporter/Recorder: *Amber McClane*; Time of Hearing: *2:26 p.m. - 3:06 p.m.*; Courtroom: *6D*;<br><br>Defendant is present in custody. Defendant is sworn and canvassed. Defendant pleads GUILTY to counts 1 and 5 of the Superseding Indictment 14 . Plea agreement filed. Preliminary order of forfeiture filed. The Court defers acceptance or rejection of plea agreement until the time of sentencing. Counsel is directed to file the appropriate waiver. This matter is referred to the probation department for investigation and report. Trial setting as to this defendant is vacated. IT IS ORDERED that the defendant's Motion in Limine 90 is DENIED as moot. Court adjourns. Defendant is remanded to custody. |

| | | |
|---|---|---|
| | | **Sentencing and disposition set for 1/27/2020 at 02:00 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey.**<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 10/29/2019) |
| 10/28/2019 | 172 | PRELIMINARY ORDER OF FORFEITURE as to John David Yoder. Signed by Judge Jennifer A. Dorsey on 10/28/19. (Copies have been distributed pursuant to the NEF - ADR) (Entered: 10/29/2019) |
| 10/28/2019 | 173 | PLEA AGREEMENT as to John David Yoder. (ADR) (Entered: 10/29/2019) |
| 10/28/2019 | 174 | NOTICE to contact the U.S. Probation Office as to John David Yoder. (DC) (Entered: 10/29/2019) |
| 11/21/2019 | 175 | LETTER dated 11/12/2019 from Carter & Bashoff to Judge Dorsey re Sentencing (JM) (Entered: 11/22/2019) |
| 11/22/2019 | 176 | LETTER of Support as to John David Yoder from Phil Neri. (ADR) Modified on 11/25/2019 to Restrict access (ADR). (Entered: 11/25/2019) |
| 12/03/2019 | 177 | Submission of PROPOSED ORDER re Consent of Defendant under Federal Rules of Criminal Procedure 32(e)(1) as to Defendant John David Yoder. (ADR) (Entered: 12/03/2019) |
| 12/06/2019 | 178 | RULE 32 Waiver as to John David Yoder. (DC) (Entered: 12/06/2019) |
| 12/19/2019 | 179 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 12/19/2019. By Deputy Clerk: Danielle Cacciabaudo.<br><br>Due to a scheduling conflict, the sentencing and disposition currently set for **1/27/2020 is VACATED and CONTINUED to 2/3/2020 at 03:00 PM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 12/19/2019) |
| 12/23/2019 | 180 | LETTER of Support as to John David Yoder to District Judge Jennifer A. Dorsey. (ADR) (Entered: 12/26/2019) |
| 12/27/2019 | 181 | PETITION for Writ of Habeas Corpus ad Prosequendum by USA as to Eric Monsivais. (Burton, Christopher) (Entered: 12/27/2019) |
| 12/27/2019 | 182 | ORDER Granting 181 Petition for Writ of Habeas Corpus ad Prosequendum as to Eric Monsivais (3).<br>Signed by Magistrate Judge Cam Ferenbach on 12/27/19. (Copies have been distributed pursuant to the NEF - cc: USM - ADR) (Entered: 12/27/2019) |
| 12/27/2019 | 183 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant Eric Monsivais by Magistrate Judge Cam Ferenbach. Initial Appearance/ Arraignment and Plea set for 1/3/2020 at 03:00 PM in LV Courtroom 3D before Magistrate Judge Cam Ferenbach. (cc: USM - ADR) (Entered: 12/27/2019) |
| 12/27/2019 | 184 | Submission of PROPOSED ORDER by Plaintiff USA *Final Order of Forfeiture*. (Hollingsworth, Daniel) (Entered: 12/27/2019) |
| 01/03/2020 | 185 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 1/3/2020. By Deputy Clerk: Danielle Cacciabaudo. |

| | | |
|---|---|---|
| | | Based on defense counsel's request and no opposition from the Government, the sentencing and disposition currently set for 2/3/2020 is VACATED and CONTINUED to **3/9/2020 at 02:30 PM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 01/03/2020) |
| 01/03/2020 | 186 | FINAL ORDER OF FORFEITURE as to William C. Thompson. Signed by Judge Jennifer A. Dorsey on 1/3/2020. (Copies have been distributed pursuant to the NEF - DC) (Entered: 01/03/2020) |
| 01/08/2020 | 187 | SERVICE by Publication by USA as to John David Yoder. Last publication date December 20, 2019. (Attachments: # 1 Index of Exhibits and Exhibits)(Hollingsworth, Daniel) (Entered: 01/08/2020) |
| 01/23/2020 | 188 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 1/23/2020. By Deputy Clerk: Danielle Cacciabaudo.<br><br>Due to a scheduling conflict in the Court's schedule, the sentencing and disposition currently set for 3/9/2020 is VACATED and CONTINUED to **3/16/2020 at 02:30 PM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 01/23/2020) |
| 03/04/2020 | 190 | Submission of PROPOSED ORDER by Plaintiff USA *Final Order of Forfeiture for Sentencing*. (Hollingsworth, Daniel) (Entered: 03/04/2020) |
| 03/10/2020 | 191 | STIPULATION TO CONTINUE (First Request) to Continue Sentencing by USA as to John David Yoder. (Burton, Christopher) (Entered: 03/10/2020) |
| 03/11/2020 | 192 | ORDER granting 191 Stipulation as to John David Yoder (2). Sentencing and disposition reset for 5/4/2020 at 02:00 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Signed by Judge Jennifer A. Dorsey on 3/11/2020. (Copies have been distributed pursuant to the NEF - DC) (Entered: 03/11/2020) |
| 04/27/2020 | 193 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 4/27/2020. By Deputy Clerk: Danielle Cacciabaudo. Re: Sentencing Hearing scheduled for 5/4/2020.<br><br>Temporary General Order 2020-05 authorizes the use of video conferencing (or telephone conferencing if video conferencing is not reasonably available) for a felony plea or sentencing with the consent of the defendant after consultation with counsel.<br><br>The parties are directed to file a Joint Status Report (1) advising whether the defendant consents to proceed with the hearing as scheduled but using video conferencing, and (2) either (a) explaining why the hearing cannot be further delayed without serious harm to the interests of justice, or (b) advising whether the parties agree to a continuance, indicating the maximum length of time for such a continuance.<br><br>**The Joint Status Report is due by 5:00 PM on 4/29/2020.**<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 04/27/2020) |
| 04/28/2020 | 194 | STIPULATION TO CONTINUE (Second Request) to Continue Sentencing by USA as to John David Yoder. (Burton, Christopher) (Entered: 04/28/2020) |

| | | |
|---|---|---|
| 04/30/2020 | 195 | ORDER granting 194 Stipulation as to John David Yoder (2). Sentencing and disposition reset for 8/24/2020 at 03:00 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Signed by Judge Jennifer A. Dorsey on 4/30/2020. (Copies have been distributed pursuant to the NEF - DC) (Entered: 04/30/2020) |
| 08/12/2020 | 196 | STIPULATION TO CONTINUE (Third Request) Sentencing Hearing by USA as to John David Yoder. (Burton, Christopher) (Entered: 08/12/2020) |
| 08/12/2020 | | Attorney update in case as to John David Yoder, Eric Monsivais, William C. Thompson: Attorney Cristina D Silva withdrawn. (Cheng, Ronald) (Entered: 08/12/2020) |
| 08/14/2020 | 197 | ORDER granting 196 Stipulation as to John David Yoder (2). Sentencing and disposition reset for 11/2/2020 at 03:00 PM in LV Courtroom 6D before Judge Jennifer A. Dorsey. Signed by Judge Jennifer A. Dorsey on 8/14/2020. (Copies have been distributed pursuant to the NEF - DC) (Entered: 08/14/2020) |
| 10/29/2020 | 198 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 10/29/2020. By Deputy Clerk: Danielle Cacciabaudo.<br><br>Due to a scheduling conflict, the sentencing and disposition currently set for **11/2/2020 is VACATED and CONTINUED to 1/11/2021 at 11:00 AM** in LV Courtroom 6D before Judge Jennifer A. Dorsey.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 10/29/2020) |
| 01/08/2021 | 199 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Jennifer A. Dorsey, as to John David Yoder on 1/8/2021. By Deputy Clerk: Danielle Cacciabaudo.<br><br>IT IS HEREBY ORDERED that the hearing scheduled for 1/11/2021 will be conducted via video.<br><br>The hearing will be conducted using Zoom video conference. The courtroom administrator will provide counsel with the Zoom link to attend the video conference. Counsel is instructed not to forward the link to others. If additional participants need to appear, counsel is directed to contact Courtroom Administrator Danielle Cacciabaudo at danielle_cacciabaudo@nvd.uscourts.gov.<br><br>**For clarity of the record and best participation, the Court strongly recommends that all participants use a headset with a microphone during the hearing.**<br><br>Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.<br><br>Members of the public may access and listen to the hearing by calling 888-808-6929 and entering access code 2178469 no later than five minutes before the scheduled hearing start time.<br><br>IT IS FURTHER ORDERED that counsel must file any necessary signed documents at least one day before the hearing as required by General Order 2020-05. Defense Counsel must also provide all necessary documents to the defendant in advance of the hearing.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) (Entered: 01/08/2021) |

| | | |
|---|---|---|
| 01/08/2021 | 200 | **ERROR: Incorrect event selected. Counsel to refile. Document terminated.** ~~PLEA AGREEMENT/MEMORANDUM *SENTENCING MEMORANDUM* as to John David Yoder. (Dolan, John)~~ (Entered: 01/08/2021) |
| 01/08/2021 | 201 | CLERK'S NOTICE. Attorney Action Required to ECF No. 200 . The wrong event was selected. Counsel is advised to refile ECF No. 200 using the appropriate docket entry title, "Sentencing Memorandum", located under the Other Documents section. Document 200 as been terminated.<br>**(no image attached)** (EDS) (Entered: 01/08/2021) |
| 01/08/2021 | 202 | SENTENCING MEMORANDUM by John David Yoder. (Dolan, John) (Entered: 01/08/2021) |
| 01/09/2021 | 203 | RESPONSE to 202 Sentencing Memorandum, by USA as to John David Yoder. . (Burton, Christopher) (Entered: 01/09/2021) |
| 01/11/2021 | 204 | MINUTES OF PROCEEDINGS - Sentencing and Disposition via videoconference as to John David Yoder held on 1/11/2021 before Judge Jennifer A. Dorsey. Crtrm Administrator: *Danielle Cacciabaudo*; AUSA: *Christopher Burton, Ellie Roohani*; Def Counsel: *John Dolan, Alan Ellis*; USPO: *Sunny Cascio*; Court Reporter/Recorder: *Amber McClane*; Time of Hearing: *11:20 a.m. - 12:35 p.m.*; Courtroom: *6D*;<br><br>Defendant is present in custody. All parties are appearing via videoconference. On inquiry by the Court, the defendant waives his right to appear in person and consent to appear via video for this hearing.<br><br>Guideline calculations are reviewed and adopted. Sentencing arguments are presented. Defendant addresses the Court. As stated, the Court accepts the binding plea agreement and imposes sentence as to counts 1 and 5 of the Superseding Indictment 14 . All remaining counts are dismissed as to this defendant. Defendant is advised of right to file an appeal. Final order of forfeiture executed. Mr. Ellis is directed to file a notice of appearance in this case **(no Verified Petition is required)**.<br><br>Court adjourns. Defendant is remanded to custody.<br><br>(see separate judgment)<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - DC) Modified on 1/22/2021 to reflect that no VP is required (DC). (Entered: 01/11/2021) |
| 01/22/2021 | 205 | FINAL ORDER OF FORFEITURE as to John David Yoder. Signed by Judge Jennifer A. Dorsey on 1/11/2021. (Copies have been distributed pursuant to the NEF - DC) (Entered: 01/22/2021) |
| 01/22/2021 | 207 | JUDGMENT as to John David Yoder (2), count(s) 1, 5, sentenced 1/11/2021; all remaining counts, dismissed 1/11/2021. Defendant remanded. Custody for 240 months, per count, concurrent; concurrent to case no. RIF1501674. Lifetime supervised release with special conditions. $200.00 assessment. $5,000.00 restitution. Final order of forfeiture attached. Restitution list sealed. Signed by Judge Jennifer A. Dorsey on 1/21/2021. (Copies have been distributed pursuant to the NEF - DC) (Additional attachment(s) added on 1/22/2021: # 1 SEALED Restitution List) (DC). (Entered: 01/22/2021) |
| 01/22/2021 | 208 | NOTICE OF ATTORNEY APPEARANCE: ~~Deborah G. Bezilla~~ Alan Elis appearing for John David Yoder (Bezilla, Deborah) Modified on 1/22/2021 (EDS). (Entered: 01/22/2021) |

| | | |
|---|---|---|
| 01/22/2021 | 209 | **ERROR: Entered in error by Clerk's Office.** NOTICE TO COUNSEL PURSUANT TO LOCAL RULE IA 11-2. Counsel Alan Ellis to comply with completion and electronic filing of the Designation of Local Counsel and Verified Petition. For your convenience, click on the following link to obtain the form from the Court's website - www.nvd.uscourts.gov.<br><br>Upon approval of the Verified Petition, counsel is required to register for the Court's Case Management and Electronic Case Filing (CM/ECF) system and the electronic service of documents. Please visit the Court's website **www.nvd.uscourts.gov** to register Attorney. Verified Petition due by 2/5/2021. **(no image attached)** (EDS) (Entered: 01/22/2021) |
| 01/22/2021 | | NOTICE of Docket Correction to 208 Notice of Attorney Appearance - Defendant as to John David Yoder: Deborah G. Bezilla removed as attorney for John David Yoder. The notice of appearance is for Attorney Alan Ellis. Attorney Ellis is advised to register for his own CM/ECF filing account. **(no image attached)**(EDS) (Entered: 01/22/2021) |
| 01/29/2021 | 210 | RESPONSE to 203 Response to Sentencing Memorandum, by John David Yoder. (HAM) (Entered: 01/29/2021) |
| 02/03/2021 | 211 | NOTICE OF APPEAL by John David Yoder re 207 Judgment,, E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (Dolan, John) (Entered: 02/03/2021) |
| 02/04/2021 | 212 | Designation of Transcripts and Transcript Order forms and instructions for 211 Notice of Appeal as to John David Yoder. The forms may also be obtained on the Court's website at www.nvd.uscourts.gov. (Attachments: # 1 transcript order form)(EDS) (Entered: 02/04/2021) |
| 02/04/2021 | 213 | USCA ORDER for Time Schedule as to John David Yoder re 211 Notice of Appeal. **USCA Case Number 21-10038**. (HAM) (Entered: 02/04/2021) |
| 02/04/2021 | 214 | NOTICE OF APPEAL by John David Yoder re 207 Judgment, E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. *(Fee NOT Paid)* (HAM) (Entered: 02/05/2021) |
| 02/05/2021 | 215 | Designation of Transcripts and Transcript Order forms and instructions for 214 Notice of Appeal as to John David Yoder. The forms may also be obtained on the Court's website at www.nvd.uscourts.gov. (Attachments: # 1 transcript order form)(EDS) (Entered: 02/05/2021) |
| 03/23/2021 | 216 | ORDER of USCA as to John David Yoder re 214 Notice of Appeal. **USCA Case Number 21-10038**. (HAM) (Entered: 03/25/2021) |
| 03/26/2021 | 217 | MOTION to Dismiss Indictment by USA as to Eric Monsivais. Responses due by 4/9/2021. (Burton, Christopher) Modified on 3/26/2021 (EDS). (Entered: 03/26/2021) |
| 03/30/2021 | 218 | ORDER granting 217 Motion to Dismiss as to Eric Monsivais (3). The indictment is dismissed without prejudice against Defendant Eric Monsivais. Signed by Judge Jennifer A. Dorsey on 3/29/2021. (Copies have been distributed pursuant to the NEF - DC) (Entered: 03/30/2021) |
| 03/30/2021 | 219 | ORDER APPOINTING COUNSEL as to John David Yoder. IT IS ORDERED THAT Christopher Oram, Esq. is appointed torepresent JOHN DAVID YODER for his appeal. Former counsel, John Dolan and Alan Ellis, are directed to forward the case file to Mr. Oram forthwith. The clerk is directed to forward a copy of this order to the Clerk of the 9th Circuit Court of Appeals at counselappointments@ca9.uscourts.gov. Signed by Judge Jennifer A. Dorsey on 3/30/21. (Copies have been distributed pursuant to the NEF and sent to the defendant manually - electronically served to Ninth Circuit - HAM) (Entered: 03/30/2021) |

| | | |
|---|---|---|
| 04/12/2021 | 221 | Mail Returned as Undeliverable re 219 Order Appointing Counsel CJA, addressed to John Yoder. Envelope stamped: not NSDC detainee. No forwarding address provided. (HAM) (Entered: 04/13/2021) |
| 05/05/2021 | 222 | TRANSCRIPT of Proceedings, 113 Status Conference [as to John David Yoder, William C. Thompson] held on 7/24/2017 before Judge Jennifer A. Dorsey. Court Reporter: Felicia Zabin, feliciazabinccr@gmail.com. Any Redaction Request is due by 5/26/2021. Redacted Transcript Deadline is set for 6/5/2021. Release of the Transcript Restriction is set for 8/3/2021. Before release date, the transcript may be viewed at the court public terminal or purchased from the Court Reporter. Transcript Order form is available on court website. After that date, the transcript may be obtained from the Court Reporter or PACER. (FRZ) (Entered: 05/05/2021) |
| 05/05/2021 | 223 | TRANSCRIPT of Proceedings, 124 Status Conference, as to John David Yoder, held on 2/26/2018 before Judge Jennifer A. Dorsey. Court Reporter: Felicia Zabin, feliciazabinccr@gmail.com Any Redaction Request is due by 5/26/2021. Redacted Transcript Deadline is set for 6/5/2021. Release of the Transcript Restriction is set for 8/3/2021. Before release date, the transcript may be viewed at the court public terminal or purchased from the Court Reporter. Transcript Order form is available on court website. After that date, the transcript may be obtained from the Court Reporter or PACER. (FRZ) (Entered: 05/05/2021) |
| 05/05/2021 | 224 | TRANSCRIPT of Proceedings, 134 Calendar Call [as to John David Yoder, William C. Thompson] held on 11/26/2018 before Judge Jennifer A. Dorsey. Court Reporter: Felicia Zabin, feliciazabinccr@gmail.com Any Redaction Request is due by 5/26/2021. Redacted Transcript Deadline is set for 6/5/2021. Release of the Transcript Restriction is set for 8/3/2021. Before release date, the transcript may be viewed at the court public terminal or purchased from the Court Reporter. Transcript Order form is available on court website. After that date, the transcript may be obtained from the Court Reporter or PACER. (FRZ) (Entered: 05/05/2021) |
| 06/02/2021 | 225 | TRANSCRIPT of Proceedings, 171 Change of Plea as to John David Yoder held on 10/28/2019 before Judge Jennifer A. Dorsey. Court Reporter: Amber McClane, AM@nvd.uscourts.gov. Any Redaction Request is due by 6/23/2021. Redacted Transcript Deadline is set for 7/3/2021. Release of the Transcript Restriction is set for 8/31/2021. Before release date, the transcript may be viewed at the court public terminal or purchased through the court reporter. The Transcript Order Form is available on the court website. After that date, the transcript may be obtained through the court reporter or PACER. (AMM) (Entered: 06/02/2021) |
| 06/02/2021 | 226 | TRANSCRIPT of Proceedings, 204 Sentencing and Disposition as to John David Yoder held on 1/11/2021 before Judge Jennifer A. Dorsey. Court Reporter: Amber McClane, AM@nvd.uscourts.gov. Any Redaction Request is due by 6/23/2021. Redacted Transcript Deadline is set for 7/3/2021. Release of the Transcript Restriction is set for 8/31/2021. Before release date, the transcript may be viewed at the court public terminal or purchased through the court reporter. The Transcript Order Form is available on the court website. After that date, the transcript may be obtained through the court reporter or PACER. (AMM) (Entered: 06/02/2021) |
| 06/03/2021 | 227 | TRANSCRIPT of Proceedings, 75 Initial/ Arraignment & Plea as to John David Yoder held on 9/1/2016 before Magistrate Judge George Foley, Jr. Court (Reporter) Transcriber: Amber McClane, AM@nvd.uscourts.gov. Any Redaction Request is due by 6/24/2021. Redacted Transcript Deadline is set for 7/4/2021. Release of the Transcript Restriction is set for 9/1/2021. Before release date, the transcript may be viewed at the court public terminal or purchased through the court reporter. The Transcript Order Form is available |

| | | |
|---|---|---|
| | | on the court website. After that date, the transcript may be obtained through the court reporter or PACER. (AMM) (Entered: 06/03/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/13/2021 12:33:55 | | | |
| **PACER Login:** | crorambusiness:3042870:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:13-cr-00368-JAD-VCF |
| **Billable Pages:** | 25 | **Cost:** | 2.50 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |

**PACER fee: Exempt CJA** Change

**COS**
CHRISTOPHER R. ORAM, ESQ.
NEVADA STATE BAR NO. 4349
520 South Fourth Street, Second Floor
Las Vegas, Nevada 89101
(702) 384-5563
Attorney for Appellant
JOHN YODER

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
****

| | |
|---|---|
| JOHN YODER<br><br>Appellant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondents. | CASE No. 21-10038<br><br>D.C. No. 2:13-CR-00368-JAD-VCF |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee of the Law Office of Christopher R. Oram, Esq., and is a person of such age and discretion as to be competent to serve papers.

That on 13th day of December, she served an electronic copy of the above and foregoing EXCERPTS OF RECORD by electronic service (ECF) to the person(s) named below:

ELIZABETH OLSON WHITE
elizabeth.o.white@usdoj.gov

By Nancy Medina____
An Employee of Christopher R. Oram